UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIRECT REPORT CORPORATION d/b/a SHAREHOLDER.COM<br>                    Plaintiff,<br><br>        v.<br><br>CCBN.COM, INC., THE THOMSON CORPORATION, JOHN DOES 1 through 5, and JANE DOES 1 through 5,<br>                    Defendants. | Civil Action No. 04-10535 PBS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STAY DISCOVERY**

**Introduction**

Plaintiff Direct Report Corporation d/b/a Shareholder.com ("Shareholder.com") hereby opposes the motion to dismiss and motion to stay discovery ("Motion") submitted by Defendants CCBN.com, Inc. ("CCBN") and the Thomson Corporation ("Thomson"). Defendants' motion fails to provide a sufficient basis for the dismissal of Shareholder.com's meritorious claims, which seek to remedy CCBN's unlawful infiltration of Shareholder.com's internal computer systems. The allegations within Shareholder.com's original complaint have been supplemented by its First Amended Complaint (attached hereto as Exhibit A), filed as of right pursuant to FED. R. CIV. P. 15(a), and provide an adequate factual underpinning for Shareholder.com's federal statutory claims within the complaint. Furthermore, the First Amended Complaint alleges sufficient facts for Shareholder.com to proceed against Thomson as a defendant in this case.

## **Summary of Relevant Factual Allegations**

Shareholder.com and CCBN are direct competitors in the shareholder communication services industry. First Amended Complaint at ¶ 10. Both companies offer a similar suite of internet-based investor relations services including customized investor relations Web sites and Webcasts for earnings and annual meetings. *Id.* at ¶¶ 8-9.

In an effort to gain a competitive edge upon its chief industry rival, CCBN unlawfully and repeatedly accessed Shareholder.com's internal computer and communication systems that housed extensive proprietary data concerning Shareholder.com's clients and business operations. *Id.* at ¶¶ 11-19. Shareholder.com's first record of CCBN illegal activity is from January, 2002 (although it was not discovered until six months later). *Id.* at ¶ 11-12, 20. The speed and precision with which CCBN accessed Shareholder.com's competitively-sensitive data in its January intrusions, however, indicates that CCBN began its activity long before then. *See id.* at ¶ 12. Using technically sophisticated techniques, CCBN repeatedly infiltrated Shareholder.com's "Management system," a computer system that maintains proprietary Shareholder.com client data and a "store and forward" communications tool where electronic messages, including messages from Shareholder.com clients, are stored and subsequently transmitted. *Id.* at ¶ 11.

Though the starting date of CCBN's activity remains unclear, the unauthorized intrusions that Shareholder.com has been able to detect spanned over four months, between January, 2002 and April, 2002. *See id.* at ¶¶ 11-13. During that time, CCBN was able to make over 20 incursions into the Management system and view, among other things, Shareholder.com's full client list, client invoices, a database of internal and client reported performance issues and electronic messages from clients. *See id.* at ¶¶ 13, 16. CCBN's access permitted it to view information concerning Shareholder.com's client development projects as well as information

2

concerning current clients. *Id.* at ¶ 16. The information CCBN viewed was confidential, proprietary and of substantial competitive value. *Id.* at ¶ 18. CCBN learned what Shareholder.com charged for its services, the names of key client contacts and the concerns that a particular client may have expressed regarding Shareholder.com's services. *Id.* Equipped with this information, CCBN was able to tailor specific proposals to Shareholder.com clients and lure them away to CCBN. *See id.* at ¶ 18, 34. CCBN's activities caused millions of dollars in losses to Shareholder.com. *Id.* at ¶ 35. Though enhanced security measures adopted in April, 2002 prevented further intrusions into the Management system, CCBN continued its attempts to infiltrate Shareholder.com's computer and communications system well into October, 2003. *Id.* at ¶¶ 26-27.

Shareholder.com learned of CCBN's intrusions in June, 2002. *See id.* at ¶ 20. When CCBN's Chairman and Chief Executive Officer, Jeffrey Parker, was made aware of the intrusions shortly thereafter, he informed a Shareholder.com director that CCBN had received an anonymous letter containing password information that permitted CCBN's access to the Management system. *See id.* at ¶¶ 22-24.

On March 12, 2004, Thomson announced that it had acquired CCBN. *Id.* at ¶ 4. At the time of the acquisition, CCBN announced that its operations would be integrated within Thomson Financial. *Id.* at ¶ 28. A Thomson representative notified of Shareholder.com's claims stated that Thomson would investigate the claims after the acquisition. *Id.* at ¶ 8. Since the acquisition, Thomson has embarked upon a systematic absorption of CCBN's operations and assets designed to render it only a shell. *See id. at* ¶¶ 30-33. CCBN personnel have begun moving their offices to Thomson owned properties while all the directors and officers of CCBN have left the company. *Id.* at ¶¶ 31-32. The principle assets of CCBN are being carved up

within Thomson.  *Id.* at ¶ 30.  When Shareholder.com's counsel asked CCBN's counsel for company capitalization data pre and post acquisition to verify CCBN's ability to satisfy a judgment in this case, CCBN refused to provide the data.  *Id.* at ¶ 33.

## Argument

**I.  THOMSON SHOULD REMAIN A NAMED DEFENDANT BECAUSE IT HAS ABSORBED CCBN'S OPERATIONS.**

Shareholder.com's First Amended Complaint has alleged facts sufficient to maintain an action versus Thomson, CCBN's parent company.  While parent corporations and their subsidiaries are typically considered separate entities for purposes of legal liability, the subsidiary's corporate shield may be pierced and liability imputed to the parent under certain circumstances.  *See United Elec., Radio & Mach. Workers* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1093 (1st Cir. 1992).  Piercing the subsidiary's corporate shield is particularly appropriate in instances where the subsidiary and parent have become a *de facto* single entity or where the parent has systematically depleted the assets of the subsidiary corporation.  *See United States* v. *Bridle Path Enterprises, Inc.*, 2001 WL 1688911 at *3 (D. Mass. Dec. 4, 2001).  Under such circumstances, continued recognition of the subsidiary as a separate entity causes a "substantial injustice" to those parties attempting to recover a judgment from the subsidiary.  *See id.*; *see also 163 Pleasant St.*, 960 F.2d at 1093.

The amended complaint alleges that Thomson has engaged in a systematic dismantling of CCBN's operations since the time of its acquisition.  *See* First Amended Complaint at ¶ 30.  The amended complaint goes on to allege that CCBN has begun to move the site of its operations into Thomson-owned offices in Boston and that all of the directors and officers of CCBN prior to the acquisition have left the company.  *See id.* at ¶ 31.  When Shareholder.com requested evidence concerning CCBN's asset holdings to confirm that the company is able to satisfy a judgment and

4

that the company continues to function as a legal entity separate and apart from Thomson, CCBN refused.  *See id.* at ¶ 33.

At this stage of the case, Shareholder.com's allegations are sufficient to state a claim versus Thomson. *See Bridle Path*, 2001 WL 1688911 at *3.  Thomson's alleged absorption of CCBN's operations have turned the two entities into a *de facto* single entity, supporting the piercing of CCBN's corporate veil.  *See id.*  Shareholder.com's current allegations also support a claim that Thomson has engaged in a systematic withdrawal of CCBN's assets.  *See* First Amended Complaint at ¶¶ 28-33.  Such activity further supports veil-piercing in this case.  *See Bridle Path*, 2001 WL 1688911 at *3.  Shareholder.com's allegations on this issue are not required to be specific as courts have routinely "recognized that relaxation of pleading requirements is permitted where information is in a defendant's sole possession."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 206 (D. Mass. 2004) (J. Saris, citing *Efron* v. *Embassy Suites (P.R.) Inc.*, 223 F.3d 12, 16 (1st Cir. 2000)).  In this case, Shareholder.com has been expressly prevented from accessing information that would have provided for more detailed allegations.  *See* First Amended Complaint at ¶ 33.  Shareholder.com's claim versus Thomson, therefore, should be allowed to stand.

II.    SHAREHOLDER.COM HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A CLAIM THAT CCBN HAS ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY.

    A.    Shareholder.com's Complaint Identifies "Persons" Separate from the CCBN "Enterprise."

Defendants incorrectly contend that Shareholder.com's original complaint fails to identify a "person" distinct from the CCBN "enterprise" who is liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  *See* Motion at 6.  Defendants rely upon *Bessette* v. *Avco Fin. Servs., Inc.* for the principle that employees acting

5

under the authority of their corporate enterprise employer "are not distinct from that enterprise." *Id.* (citing to 230 F.3d 439, 449).

The defendants' motion ignores contravening and controlling precedent from the U.S. Supreme Court that overrules *Bessette* on this issue.  In *Cedric Kushner Promotions, Ltd.* v. *King*, the Supreme Court found that a "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute [RICO] that forbids any 'person' unlawfully to conduct an 'enterprise'[.]"  533 U.S. 158, 163; 121 S.Ct. 2087, 2091 (2001). *Kushner* reversed a Second Circuit decision that relied upon the same authority the *Bessette* Court had cited in support of its narrower construction of RICO's separateness requirement. *Compare id.* at 164, 121 S.Ct. at 2091 (noting that Second Circuit had relied upon *Riverwoods Chappaqua Corp.* v. *Marine Midland Bank N.A.*, 30 F.3d 339 (2d Cir. 1994) to dismiss RICO claim) *with Bessette*, 230 F.3d at 449 (relying on that same precedent).   Subsequent decisions from courts within the First Circuit, including the district court that received the First Circuit's remand in *Bessette*, have recognized *Kushner*'s contravening and controlling effect.  *See Bessette* v. *Avco Fin. Servs., Inc.*, 279 B.R. 442, 454 (D.R.I. 2002); *George Lussier Enter., Inc.* v. *Subaru of New England, Inc.*, 2002 WL 1349523, at *2 (D.N.H. June 3, 2002).

Under the principles of *Kushner*, the allegations of RICO enterprise within Shareholder.com's original complaint were clearly actionable.  Shareholder.com's original complaint alleged that CCBN employees had "conducted and participated in the conduct of the affairs of CCBN through a pattern of racketeering activity, in violation of [RICO]."  Complaint at ¶ 48.  CCBN employees constituted the "persons" distinct from CCBN, the "enterprise," under the RICO statute as interpreted by the *Kushner* Court.  The complaint thus properly stated a claim for RICO violations conducted by CCBN employees.

6

Even if Shareholder.com's original complaint were somehow deficient on this issue, which it was not, its First Amended Complaint contains additional RICO allegations against independent contractors or consultants associated with CCBN. *See* First Amended Complaint at ¶ 3. Even under the unduly narrow interpretation of RICO separateness argued in defendants' motion, RICO claims against these individuals should survive a motion to dismiss.

### B.    CCBN's Activities Constitute a "Pattern" of Unlawful Behavior Under RICO.

Defendants' motion also applies RICO precedent incorrectly in its argument concerning the "pattern" of racketeering activity alleged by Shareholder.com's complaint. In order for illegal acts to constitute a "pattern" of racketeering activity, two tests must be satisfied: relatedness and continuity. *See H.J. Inc.* v. *Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893 (1989); *North Bridge Assoc., Inc.* v. *Boldt,* 274 F.3d 38, 43 (1st Cir. 2001); *Divot Golf Corp.* v. *Citizens Bank*, 2002 WL 31741472 at *4 (D. Mass. Nov. 26, 2002). The defendants' challenge relates exclusively to the continuity requirement. As the First Circuit described in *North Bridge*, "[RICO p]redicate acts can satisfy the requirement of continuous criminal activity if they either comprise a closed series of past conduct that extend[s] over a substantial period of time, or indicate a realistic prospect that they will extend [] indefinitely into the future." 274 F.3d at 43 (citing *Feinstein* v. *Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir. 1991), internal quotation marks omitted).

Defendants' motion inaccurately portrays the relevant allegations within Shareholder.com's original complaint as only establishing a closed series of RICO predicate acts. *See* Motion at 7. A close reading of the amended complaint's allegations proves otherwise. Specifically, the amended complaint notes that the speed with which CCBN had compromised Shareholder.com's computer systems indicates that CCBN had been gaining unauthorized access

7

into those systems long before the first January, 2002 intrusions Shareholder.com has been able to detect. First Amended Complaint at ¶ 12. The amended complaint also alleges facts supporting a conclusion that CCBN's illegal activity extended indefinitely into the future. The complaint asserts, for instance, that CCBN has continued, until as recently as October, 2003, to attempt intrusions into Shareholder.com's computer and communication systems even after security measures had been employed in an attempt to prevent further intrusions. *Id.* at ¶¶ 26-27. CCBN's past failure to notify Shareholder.com of its acquisition of a user name and password capable of accessing Shareholder.com's internal systems also foreshadows the possibility that unauthorized activity could be occurring at present without Shareholder.com's knowledge. *See id.* at ¶ 24.

Shareholder.com's allegations clearly do not amount to a "closed series" of past conduct. The precedent CCBN relies upon in support of its argument for dismissal, therefore, is inapplicable. *See* Motion at 7-8. All of the cases cited by CCBN addressed closed intervals of past conduct, rather than allegations of conduct potentially extending indefinitely into the past or future. *See id.* Furthermore, considering that the facts regarding the precise duration of CCBN's conduct remain within the exclusive control of the defendants, dismissal of Shareholder.com's RICO claim at this juncture of the case would be particularly inappropriate. *See Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d at 206.

Even if Shareholder.com's allegations could be construed as a closed series of RICO predicate acts, they still would satisfy the continuity requirement. As the *North Bridge* decision instructs, evaluating continuity in the "closed series" context requires an analysis of both the number of predicate acts and the span of time over which those predicate acts extended. *See* 274 F.3d at 43; *see also Weizmann Inst. of Science* v. *Neschis*, 229 F. Supp. 2d. 234, 256 (S.D.N.Y.

8

2002) (duration of predicate acts alone not dispositive with respect to "closed-ended" continuity, analysis includes inquiry into the number and variety of acts). Given the large number of illegal intrusions alleged within the complaint, and the severe consequences those intrusions had upon Shareholder.com's competitive position, a claim of closed-ended continuity finds adequate support within the complaint. *See* First Amended Complaint at ¶¶ 13, 26-27, 35 (allegations of over 20 intrusions and numerous attempted intrusions within six-month period causing millions of dollars in damages).

### C. CCBN Intrusions were Made From Remote Locations and Used Interstate Facilities.

Defendants argue that Shareholder.com's allegations of racketeering activity under the National Stolen Property Act and Wire Fraud Act are deficient because the complaint fails to allege interstate activity. *See* Motion at 8-9. The First Amended Complaint makes clear that CCBN used interstate facilities to intrude upon Shareholder.com's internal computer systems and misappropriate proprietary data from those systems. Specifically, the amended complaint alleges that CCBN employees accessed Shareholder.com's systems using portable laptop computers located outside CCBN's offices. *See* First Amended Complaint at ¶ 14. The amended complaint also alleges that Shareholder.com's systems were accessed via the Internet, via an America Online account and via an anonymizer service. *See id.* Use of those networks, which routinely route traffic through interstate wires, clearly constitutes interstate activity. *Id.* American Online and the anonymizer service are both located in Virginia. *Id.* In addition, defendants used the information they accessed to solicit clients located outside of Massachusetts. *Id.* Defendants' arguments are thus without merit.

    **D.**    **Shareholder.com's RICO Conspiracy Claim Establishes a Sufficient Basis for a Violation of 18 U.S.C. § 1962(c).**

The only basis for Defendants' motion to dismiss Shareholder.com's RICO conspiracy claim is that Shareholder.com allegedly has failed to adequately allege a violation of 18 U.S.C. § 1962(c). For the reasons stated in sections II. A, B and C above, Shareholder.com has alleged facts adequate to support a claim pursuant to that statute. Defendants' motion to dismiss the conspiracy claim, therefore, should be denied.

**III.**    **SHAREHOLDER.COM'S AMENDED COMPLAINT ALLEGES THAT ELECTRONIC MESSAGES ON THE MANAGEMENT SYSTEM WERE IN "ELECTRONIC STORAGE" AS DEFINED BY THE ELECTRONIC COMMUNICATIONS ACT.**

Shareholder.com's amended complaint increases the factual underpinnings for its "electronic storage" claims related to Shareholder.com's Management system. The Management system functions as a "store and forward" communications tool where electronic messages are stored and subsequently delivered to their intended recipient(s). First Amended Complaint at ¶ 11. The Management system thus functions as an intermediate storage area where electronic messages temporarily are stored on their way to their ultimate delivery to the intended recipient.

The Management system's store and forward capability thus satisfies the Federal Stored Wire and Electronic Communications Act's (the "Electronic Communication Act") definition of "electronic storage" as a "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof[.]" 18 U.S.C. § 2510(17)(A). Defendants' motion to dismiss the Electronic Communication Act claim, which is premised entirely upon Shareholder.com's failure to allege facts satisfying this statutory definition, should be denied. *See* Motion at 10-11. Shareholder.com has alleged sufficient facts to sustain a claim that CCBN accessed electronic communications while in electronic storage in violation of the Act. *See* 18 U.S.C. § 2701(a)(1).

**IV.   SHAREHOLDER.COM'S AMENDED COMPLAINT ALLEGES FACTS SUFFICIENT TO SUPPORT A CLAIM UNDER THE FEDERAL WIRETAP ACT.**

Shareholder.com's amended complaint also alleges facts sufficient to establish a violation of the Federal Wire and Electronic Communications Interception Act (the "Wiretap Act"). 18 U.S.C. § 2511(1)(a). Defendants' motion to dismiss argues that the allegations within Shareholder.com's original complaint fail to set forth an interception of electronic communication actionable under the statute. *See* Motion at 11-13. Specifically, the defendants asserted that the original complaint failed to allege an interception contemporaneous with the transmission of an electronic message. *See id.* at 12. The defendants define interception as the acquisition of an electronic communication in the process of being transferred, prior to its arrival at its ultimate destination. *See id.* (*citing to Eagle Inv. Sys. Corp.* v. *Tamm*, 146 F. Supp. 2d 105, 112 (D. Mass. 2001); *Thompson* v. *Thompson*, 2002 WL 1072342, at *3 (D.N.H. May 30, 2002)).

Shareholder.com's amended complaint clearly alleges that CCBN's activities included the interception of electronic messages during their transmission. Specifically, the amended complaint alleges that CCBN accessed and viewed electronic messages while they temporarily resided on the Management system, before they had reached their ultimate recipient. *See* First Amended Complaint at ¶ 16. Thus, CCBN accessed and viewed messages that were in the process of being transferred and had yet to reach their ultimate destination. Under the defendants' own definition of "interception," Shareholder.com has pleaded sufficient facts to support a claim under the Wiretap Act.

11

V.   **AT LEAST ONE OF CCBN'S UNAUTHORIZED INTRUSIONS INTO SHAREHOLDER.COM'S COMPUTER SYSTEM CAUSED OVER $5,000 IN DAMAGES.**

The sole basis for defendants' motion to dismiss Shareholder.com's claim pursuant to the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, is that the original complaint failed to allege that a single violation of the act committed by CCBN, in isolation, had resulted in a loss of $5,000 to Shareholder.com.[1]  *See* Motion at 13-14.  One would have thought that the defendants could deduce this loss based on Shareholder.com's allegation of millions of dollars in loss from the approximately 20 known intrusions.  However, Shareholder.com's amended complaint resolves this pleading technicality by alleging that at least one of CCBN's violations of the CFAA, in isolation, resulted in losses exceeding $5,000.  *See* First Amended Complaint at ¶ 51.  Defendants' motion to dismiss, therefore, should be denied.

VI.  **GIVEN THE VIABILITY OF SHAREHOLDER.COM'S FEDERAL CLAIMS, ITS MERITORIOUS CLAIMS UNDER STATE LAW SHOULD REMAIN INTACT.**

For the reasons detailed above, Shareholder.com's claims under federal law should survive defendants' motion to dismiss.  Defendants' motion to dismiss Shareholder.com's various state law claims is meritless and should be denied as it assumes that Shareholder.com's claims under federal law will be extinguished.  *See* Motion at 14.

VII. **DISCOVERY SHOULD NOT BE STAYED PENDING THE RESOLUTION OF CCBN'S MOTION TO DISMISS.**

There is no reason to stay discovery in this action.  As explored above, Shareholder.com's claims under federal law should survive defendants' motion to dismiss and this Court's jurisdiction over this action will continue to exist.  Thus, allowing discovery to

---

[1] The orginal complaint alleged that the approximately 20 intrusions currently known to Shareholder.com resulted in millions of dollars of losses, but defendants claimed that this did not meet the CFAA's $5,000 threshold.  Rather than quibble, plaintiff has filed an amended complaint that performs the math for defendants.

12

proceed will not subject any party to potentially unnecessary burden or expense. Defendants' motion hopefully suggests that the potential for Thomson being dismissed from this suit is a sufficient reason in itself for discovery to be stayed. *See* Motion at 14. Such an argument is unavailing, however, as Thomson is a legitimate party to this action. Defendants have thus failed to establish any interest favoring a stay sufficient to outweigh Shareholder.com's right to prosecute this case. Discovery should be allowed to go forward.

        Respectfully submitted,

        SHAREHOLDER.COM, INC.,

        By its attorneys,

        /s/ Thane D. Scott
        _____
        Thane D. Scott (BBO #449340)
        Ruth T. Dowling (BBO #645568)
        John T. Bennett (BBO # 648464)
        PALMER & DODGE LLP
        111 Huntington Avenue
        Boston, MA 02199
        (617) 239-0100

May 20, 2004.