UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIRECT REPORT CORPORATION d/b/a SHAREHOLDER.COM,<br>        Plaintiff,<br><br>  v.<br><br>CCBN.COM, INC., THE THOMSON CORPORATION, JOHN DOES 1 through 5, and JANE DOES 1 through 5,<br>        Defendants. | Civil Action No. 04-10535 PBS |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND MOTION TO STAY DISCOVERY**

**Introduction**

Plaintiff Direct Report Corporation d/b/a Shareholder.com ("Shareholder.com") opposes the motion to dismiss the First Amended Complaint and motion to stay discovery ("Motion") submitted by Defendants CCBN.com, Inc. ("CCBN") and the Thomson Corporation ("Thomson"). Defendants' motion relies upon hyper-technical pleading arguments in a desperate attempt to keep this case out of federal court. Defendants' primary complaint is that there is insufficient detail in the First Amended Complaint concerning exactly how defendants used the proprietary and confidential business information they stole from Shareholder.com when infiltrating Shareholder.com's computer systems. Shareholder.com is not required to provide such detail at this early stage, nor could it, given the surreptitious nature of the misconduct. Rather, the allegations within the First Amended Complaint provide an adequate factual underpinning for Shareholder.com's federal statutory claims. Furthermore, the amended

complaint alleges sufficient facts for Shareholder.com to proceed against Thomson as a defendant in this case.

## Summary of Relevant Factual Allegations

Shareholder.com and CCBN are direct competitors in the shareholder communication services industry. First Amended Complaint at ¶ 10. Both companies offer a similar suite of internet-based investor relations services including customized investor relations Web sites and Webcasts for earnings and annual meetings. *Id.* at ¶¶ 8-9.

In an effort to gain a competitive edge upon its chief industry rival, CCBN unlawfully and repeatedly accessed Shareholder.com's internal computer and communication systems that housed extensive proprietary data concerning Shareholder.com's clients and business operations. *Id.* at ¶¶ 11-19. Shareholder.com's first record of CCBN illegal activity is from January, 2002 (although it was not discovered until six months later). *Id.* at ¶ 11-12, 20. The speed and precision with which CCBN accessed Shareholder.com's competitively-sensitive data in its January intrusions, however, indicates that CCBN began its activity long before then. *See id.* at ¶ 12. Using technically sophisticated techniques, CCBN repeatedly infiltrated Shareholder.com's "Management system," a computer system that maintains proprietary Shareholder.com client data and a "store and forward" communications tool where electronic messages, including messages from Shareholder.com clients, are stored and subsequently transmitted. *Id.* at ¶ 11.

Though the starting date of CCBN's activity remains unclear, the unauthorized intrusions that Shareholder.com has been able to detect spanned over four months, between January, 2002 and April, 2002. *See id.* at ¶¶ 11-13. During that time, CCBN was able to make over 20 incursions into the Management system and view, among other things, Shareholder.com's full client list, client invoices, a database of internal and client reported performance issues and

electronic messages from clients. *See id.* at ¶¶ 13, 16. CCBN's access permitted it to view information concerning Shareholder.com's client development projects as well as information concerning current clients. *Id.* at ¶ 16. The information CCBN viewed was confidential, proprietary and of substantial competitive value. *Id.* at ¶ 18. CCBN learned what Shareholder.com charged for its services, the names of key client contacts and the concerns that a particular client may have expressed regarding Shareholder.com's services. *Id.* Equipped with this information, CCBN was able to tailor specific proposals to Shareholder.com clients and lure them away to CCBN. *See id.* at ¶¶ 18, 34. CCBN's activities caused millions of dollars in losses to Shareholder.com. *Id.* at ¶ 35. Though enhanced security measures adopted in April 2002 prevented further intrusions into the Management system, CCBN continued its attempts to infiltrate Shareholder.com's computer and communications system well into October 2003. *Id.* at ¶¶ 26-27.

Shareholder.com learned of CCBN's intrusions in June 2002. *See id.* at ¶ 20. When CCBN's Chairman and Chief Executive Officer, Jeffrey Parker, was made aware of the intrusions shortly thereafter, he informed a Shareholder.com director that CCBN had received an anonymous letter containing password information that permitted CCBN's access to the Management system. *See id.* at ¶¶ 22-24.

On March 12, 2004, Thomson announced that it had acquired CCBN. *Id.* at ¶ 4. At the time of the acquisition, CCBN announced that its operations would be integrated within Thomson Financial. *Id.* at ¶ 28. A Thomson representative notified of Shareholder.com's claims soon after the announcement stated that Thomson would investigate the claims after the acquisition of CCBN had been finalized. *Id.* at ¶ 29. Since finalization of the acquisition, Thomson has embarked upon a systematic absorption of CCBN's operations and assets designed

3

to render it only a shell. *See id.* at ¶¶ 30-33. CCBN personnel have begun moving their offices to Thomson owned properties while all the directors and officers of CCBN have left the company. *Id.* at ¶¶ 31-32. The principle assets of CCBN are being carved up within Thomson. *Id.* at ¶ 30. When Shareholder.com's counsel asked CCBN's counsel for company capitalization data pre- and post-acquisition to verify CCBN's ability to satisfy a judgment in this case (information that will inevitably be produced in discovery), CCBN refused to provide the data. *Id.* at ¶ 33.

## Argument

**I.   THOMSON IS A PROPER DEFENDANT BECAUSE IT HAS ABSORBED CCBN'S OPERATIONS.**

As the defendants' motion concedes, a subsidiary corporation's corporate shield may be pierced and liability imputed to its parent corporation when the two entities have become a *de facto* single entity or where the parent has systematically depleted the assets of the subsidiary corporation. *See* Motion at 5; *see also United Elec., Radio & Mach. Workers* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1093 (1st Cir. 1992); *United States* v. *Bridle Path Enterprises, Inc.*, No. 99-11051-GAO, 2001 WL 1688911, at *3 (D. Mass. Dec. 4, 2001). Under such circumstances, continued recognition of the parent and subsidiary as separate entities causes a "substantial injustice" to parties attempting to recover a judgment from the subsidiary. *See id.*; *see also 163 Pleasant St.*, 960 F.2d at 1093.

Contrary to the defendants' claims, Shareholder.com's First Amended Complaint has alleged facts sufficient to maintain an action versus Thomson, CCBN's parent company. The amended complaint alleges that Thomson has engaged in a systematic dismantling of CCBN's operations since the time of its acquisition. *See* First Amended Complaint at ¶ 30. The amended complaint goes on to allege that CCBN has begun to move the site of its operations into

4

Thomson-owned offices in Boston and that all of the directors and officers of CCBN prior to the acquisition have left the company. *See id.* at ¶ 31. When Shareholder.com requested evidence concerning CCBN's asset holdings to confirm that the company is able to satisfy a judgment and that the company continues to function as a legal entity separate and apart from Thomson, CCBN refused. *See id.* at ¶ 33.

At this stage of the case, Shareholder.com's allegations are sufficient to establish that Thomson and CCBN have become a *de facto* single entity, permitting the extension of liability to Thomson. *See Bridle Path*, 2001 WL 1688911, at *3. Shareholder.com's allegations also support a claim that Thomson has engaged in a systematic withdrawal of CCBN's assets. *See* First Amended Complaint at ¶¶ 28-33. Such activity further supports veil-piercing in this case. *See Bridle Path*, 2001 WL 1688911, at *3.

Contrary to the assertions within defendants' motion, Shareholder.com's current allegations on this issue are not required to be specific as courts have routinely "recognized that relaxation of pleading requirements is permitted where information is in a defendant's sole possession." *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 206 (D. Mass. 2004) (J. Saris, citing *Efron* v. *Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 16 (1st Cir. 2000)). In this case, Shareholder.com has been expressly prevented from accessing information that would have provided for more detailed allegations. *See* First Amended Complaint at ¶ 33. Given that the defendants have chosen to keep key facts concerning the precise contours of their relationship within their sole possession, Shareholder.com's claims versus Thomson should be allowed to stand. At the very least, Shareholder.com should be permitted discovery concerning Thomson and CCBN's relationship before the disposal of claims versus Thomson is considered.

*See, e.g., United States* ex. rel. *Karvelas* v. *Melrose-Wakefield Hosp.*, 360 F.3d 220, 229 (1st Cir. 2004).

None of the cases cited by defendants in support of dismissing Thomson involved facts similar to the multiple allegations within Shareholder.com's complaint indicating the existence of a *de facto* single entity and the shifting of assets.  *See* Motion at 6.  Nor do those cases apply the federal common law standard for veil-piercing applicable to federal question cases like this one.  *See Andrews-Clarke* v. *Lucent Techs., Inc.*, No. 01-10055-PBS, 2001 U.S. Dist. LEXIS 21653, at *3-4 (D. Mass. June 25, 2001) (Dein, M.J.) (applying Massachusetts law to lone fact that parent and subsidiary share some common officers); *Am. Home Assurance Co.* v. *Sport Maska, Inc.*, 808 F. Supp. 67, 73 (D. Mass. 1992) (same).

Furthermore, the defendants' contention that the naming of Thomson as a defendant is somehow premature is plainly erroneous.  *See* Motion at 6-7.  Shareholder.com's complaint contains sufficient allegations to extend liability to Thomson at present, and defendants' motion points to no authority supporting a requirement that a plaintiff must first establish liability against a subsidiary shell corporation before proceeding against a parent entity containing reachable assets.  *See id.*  Few plaintiffs in such a situation would proceed with meritorious claims if the question of the parent corporation's susceptibility to suit was reserved until some indefinite point in the future. *Bridle Path*, a case in which both a shell corporate entity and the shareholders possessing the corporate assets were named as defendants in the same suit, certainly does not support defendants' misguided theory.  *See* 2001 WL 1688911.

**II.    SHAREHOLDER.COM HAS ALLEGED SUFFICIENT FACTS TO SUPPORT A CLAIM THAT CCBN HAS ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY.**

   **A.    CCBN's Activities Constitute a "Pattern" of Unlawful Behavior Under RICO.**

The amended complaint alleges sufficient facts to establish a "pattern" of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). In order for illegal acts to constitute a "pattern" of racketeering activity, two tests must be satisfied: relatedness and continuity. *See H.J. Inc.* v. *Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S. Ct. 2893 (1989); *North Bridge Assocs., Inc.* v. *Boldt,* 274 F.3d 38, 43 (1st Cir. 2001); *Divot Golf Corp.* v. *Citizens Bank*, No. 02-10654-PBS, 2002 WL 31741472, at *4 (D. Mass. Nov. 26, 2002). The defendants' challenge relates exclusively to the continuity requirement. As the First Circuit described in *North Bridge*, "[RICO p]redicate acts can satisfy the requirement of continuous criminal activity if they either comprise a closed series of past conduct that extend[s] over a substantial period of time, or indicate a realistic prospect that they will extend [] indefinitely into the future." 274 F.3d at 43 (citing *Feinstein* v. *Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir. 1991), internal quotation marks omitted).

Defendants' motion inaccurately portrays the relevant allegations within Shareholder.com's original complaint as only establishing a closed series of RICO predicate acts. *See* Motion at 8-10. A close reading of the amended complaint's allegations proves otherwise. Specifically, the amended complaint, like the original complaint, notes that the speed with which CCBN had compromised Shareholder.com's computer systems indicates that CCBN had been gaining unauthorized access into those systems long before the first January, 2002 intrusions Shareholder.com has been able to detect. First Amended Complaint at ¶ 12. The amended complaint also alleges facts supporting a conclusion that CCBN's illegal activity extended

7

indefinitely into the future.  The complaint asserts, for instance, that CCBN has continued, until as recently as October, 2003, to attempt intrusions into Shareholder.com's computer and communication systems even after security measures had been employed in an attempt to prevent further intrusions.  *Id.* at ¶¶ 26-27.  CCBN's past failure to notify Shareholder.com of its acquisition of a user name and password capable of accessing Shareholder.com's internal systems also foreshadows the possibility that unauthorized activity could be occurring at present without Shareholder.com's knowledge.  *See id.* at ¶ 24.

Shareholder.com's allegations clearly do not amount to a "closed series" of past conduct.  The precedent CCBN relies upon in support of its argument for dismissal, therefore, is inapplicable.  *See* Motion at 9-10.  All of the cases cited by defendants addressed closed intervals of past conduct, rather than allegations of conduct potentially extending indefinitely into the past or future.  *See id.*

Perhaps acknowledging the weakness of its legal argument, defendants attempt to attack the specificity of Shareholder.com's allegations.  *See* Motion at 9.  With respect to CCBN's attempts to infiltrate Shareholder.com's computer and communication systems after the security upgrade made to the Management system in April 2002, defendants incorrectly contend that Shareholder.com's allegations are too vague.  *See id.*  Defendants cite no authority that would require Shareholder.com to describe the minute details of CCBN's numerous attempts to infiltrate the Management and Dialog computer and communication systems between April 2002 and October 2003.  Shareholder.com's complaint provides sufficient detail by describing the six additional attempts to infiltrate the Management system between April 15 and May 29, 2002 and additional attempts to access the Dialog system continuing as recently as October 2003.  *See* First Amended Complaint at ¶ 27.  Even if the Court found these allegations to be inadequate,

8

Shareholder.com should be permitted, and is capable, of providing further detail regarding CCBN's attempted intrusions by way of an amendment to the complaint.

Defendants also attack the specificity of Shareholder.com's allegation that CCBN misappropriated proprietary data from the Management System long before January 17, 2002. *See* Motion at 9. Given the limits of Shareholder.com's pre-2002 records and that the facts regarding the precise duration of CCBN's conduct preceding January 17, 2002 remain within the exclusive control of the defendants, dismissal of Shareholder.com's RICO allegations on specificity grounds at this juncture of the case would be inappropriate. *See Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d at 206.

Even if Shareholder.com's allegations could be construed as a closed series of RICO predicate acts, they still would satisfy the continuity requirement. As the *North Bridge* decision instructs, evaluating continuity in the "closed series" context requires an analysis of both the number of predicate acts and the span of time over which those predicate acts extended. *See* 274 F.3d at 43; *see also Weizmann Inst. of Science* v. *Neschis*, 229 F. Supp. 2d 234, 256 (S.D.N.Y. 2002) (duration of predicate acts alone not dispositive with respect to "closed-ended" continuity, analysis includes inquiry into the number and variety of acts). Given the large number of illegal acts alleged within the complaint, the severe consequences those acts had upon Shareholder.com's competitive position, and the extended period of time over which those acts took place, a claim of closed-ended continuity finds adequate support within the complaint. *See* First Amended Complaint at ¶¶ 13, 26-27, 35 (allegations of over 20 intrusions and numerous attempted intrusions over 22 months causing millions of dollars in damages).

9

### B. The Complaint's Allegations Concerning Violations of the National Stolen Property Act are Sufficient.

The defendants' motion also contends that Shareholder.com's allegations concerning CCBN's violations of the National Stolen Property Act are too imprecise to support a claim of racketeering activity under RICO. *See* Motion at 11. The defendants' hyper-technical arguments border on the absurd.

In a complaint alleging millions of dollars in damages, defendants contend that Shareholder.com has failed to plead that the proprietary data stolen from its internal computer and communication systems had a value of $5,000 or more. *See id.* Rather than merely parroting the language of the statute as the defendants assert, Shareholder.com's complaint makes clear that the confidential data pilfered by CCBN was of "significant competitive value." First Amended Complaint at ¶ 18. Using this information:

> CCBN learned what kind of services a particular [Shareholder.com client] uses, what it is charged for those services, the names of the key client contacts and the concerns, if any, that the client has expressed to Shareholder.com about the services. Armed with this information, CCBN could create specifically-tailored proposals for these clients gaining an enormous advantage in its competition against Shareholder.com.

*Id.* The complaint goes on to state that one of the accounts CCBN successfully targeted, using Shareholder.com's proprietary data, was worth approximately $100,000 in annual billings. *Id.* at ¶ 19. Clearly, Shareholder.com's complaint adequately described the considerable value of the proprietary data misappropriated by CCBN.

### C. The CCBN Employees Named Within the Complaint are Proper RICO Defendants.

The defendants concede that the individuals responsible for the illegal infiltration of Shareholder.com's internal computer and communication systems are proper defendants under RICO. *See* Motion at 12. While CCBN as the "enterprise" may not be liable under 18 U.S.C.

10

§ 1962(c), the individual defendants who conducted CCBN's "affairs through a pattern of racketeering activity" are appropriate defendants under the statute. 18 U.S.C. § 1962(c).

> **D.  Shareholder.com's RICO Conspiracy Claim Establishes a Sufficient Basis for a Violation of 18 U.S.C. § 1962(c).**

The only basis for Defendants' motion to dismiss Shareholder.com's RICO conspiracy claim is that Shareholder.com allegedly has failed to adequately allege a violation of 18 U.S.C. § 1962(c). For the reasons stated in sections II. A, B and C above, Shareholder.com has alleged facts adequate to support a claim pursuant to that statute. Defendants' motion to dismiss the conspiracy claim, therefore, should be denied.

**III.   THE AMENDED COMPLAINT ALLEGES THAT ELECTRONIC MESSAGES ON THE MANAGEMENT SYSTEM WERE IN "ELECTRONIC STORAGE" AS DEFINED BY THE ELECTRONIC COMMUNICATIONS ACT.**

Shareholder.com's amended complaint establishes that Shareholder.com's Management system functions as a "store and forward" communications tool where electronic messages are stored and subsequently delivered to their intended recipient(s). First Amended Complaint at ¶ 11. The Management system thus functions as an intermediate storage area where electronic messages temporarily are stored on their way to their ultimate delivery to the intended recipient.

The Management system's store and forward capability thus satisfies the Federal Stored Wire and Electronic Communications Act's (the "Electronic Communications Act") definition of "electronic storage" as a "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof[.]" 18 U.S.C. § 2510(17)(A).

Contrary to the defendants' claims, Shareholder.com's complaint has also alleged sufficient facts to sustain a claim that CCBN "obtained" electronic communications while in electronic storage in violation of the Act. *See* 18 U.S.C. § 2701(a)(1). The amended complaint

explicitly alleges that "CCBN intruders viewed electronic communications while they were being stored on the Management system, before their subsequent delivery to Shareholder.com personnel." First Amended Complaint at ¶ 16. Such activity clearly equates to the unauthorized obtaining of electronically stored messages that is expressly prohibited by the Act.

The defendants' remaining attempts to eliminate the Electronic Communications Act claim amount to an attempt to ignore various allegations within Shareholder.com's amended complaint describing the communication capability of the Management System. *See* Motion at 14-15. The defendants seemingly refuse to acknowledge the Management System's "store and forward" communication capability even though it is thoroughly described in the amended complaint, choosing instead to believe that the Management System is only a database. *See id.* The defendants appear to forget that, for purposes of a motion to dismiss, the Court must accept as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Tolman* v. *Finneran*, 171 F. Supp. 2d 31, 35 (D. Mass. 2001) (Saris, J.) (citations omitted). All of the allegations within the amended complaint, including those that make defendants' arguments in favor of dismissal more difficult, are entitled to this deference. Thus, the amended complaint's description of the Management System as a "communications tool" where electronic messages "are stored in an intermediate electronic storage system and subsequently transmitted" must be accepted as true. First Amended Complaint at ¶ 11. This type of electronic communications system is clearly afforded the protections of the Electronic Communications Act. *See* 18 U.S.C. § 2510(17)(A). The defendants' motion to dismiss Shareholder.com's claim under the Act, therefore, should be denied.

## IV. SHAREHOLDER.COM'S AMENDED COMPLAINT ALLEGES FACTS SUFFICIENT TO SUPPORT A CLAIM UNDER THE FEDERAL WIRETAP ACT.

Shareholder.com's amended complaint also alleges facts sufficient to establish a violation of the Federal Wire and Electronic Communications Interception Act (the "Wiretap Act"). 18 U.S.C. § 2511(1)(a). Defendants' motion to dismiss argues that the allegations within Shareholder.com's original complaint fail to set forth an interception of electronic communication actionable under the statute. *See* Motion at 16-17. Specifically, the defendants asserted that the original complaint failed to allege an interception contemporaneous with the transmission of an electronic message. *See id.* at 17. The defendants define interception as the acquisition of an electronic communication in the process of being transferred, prior to its arrival at its ultimate destination. *See id.* at 16 (*citing to Eagle Inv. Sys. Corp.* v. *Tamm*, 146 F. Supp. 2d 105, 112 (D. Mass. 2001); *Thompson* v. *Thompson*, No. 02-91-M, 2002 WL 1072342, at *3 (D.N.H. May 30, 2002)).

Shareholder.com's amended complaint clearly alleges that CCBN's activities included the interception of electronic messages during their transmission. Specifically, the amended complaint alleges that CCBN accessed and viewed electronic messages while they temporarily resided on the Management system, before they had reached their ultimate recipient. *See* First Amended Complaint at ¶ 16. Thus, CCBN accessed and viewed messages that were in the process of being transferred and had yet to reach their ultimate destination. Under the defendants' own definition of "interception," Shareholder.com has pleaded sufficient facts to support a claim under the Wiretap Act.[1] While the electronic messages obtained by CCBN were

---

[1] The defendants' contention that Shareholder.com's interception allegations "fail to meet the First Circuit's requirements of pleading the underlying facts when pleading upon 'information and belief'" is unfounded. *See* Motion at 17. *Karvelas*, the case cited by the defendants in support of this argument, deals with the application of

(continued...)

13

in temporary storage, that storage was part of the transmittal process. *See id.* CCBN thus obtained electronic communications contemporaneous with their transmission, satisfying the Wiretap Act's interception requirement. *See Labwerks, Inc.* v. *Sladekutter, Ltd.*, No. 99-160, 1999 U.S. Dist. LEXIS 22300, at *3 (W.D. Pa. Feb. 17, 1999) (former employee's use of password to gain unauthorized access to plaintiff's computer system and take electronic mail and client data found to violate Wiretap Act).

## V.  AT LEAST ONE OF CCBN'S UNAUTHORIZED INTRUSIONS INTO SHAREHOLDER.COM'S COMPUTER SYSTEM CAUSED OVER $5,000 IN DAMAGES.

Much like their argument regarding the amended complaint's allegations under the National Stolen Property Act, the defendants' assertions concerning Shareholder.com's claim pursuant to the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, borders on the absurd. The defendants contend that the amended complaint is defective as Shareholder.com has failed to allege sufficient facts to satisfy the CFAA's requirement that at least one of CCBN's violations has caused losses exceeding $5,000. *See* Motion at 17-18.

Not only does the amended complaint explicitly state that one of CCBN's violations caused losses exceeding $5,000, but a number of other allegations make clear that this statutory requirement is met. First Amended Complaint at ¶ 51. For example, one could easily deduce that the losses from at least one of CCBN's violations exceeded $5,000 based on Shareholder.com's allegation of millions of dollars in losses from approximately 20 known intrusions to its computer systems. *See id.* at ¶¶ 13, 35. Similarly, the amended complaint

---

(continued...)

FED. R. CIV. P. 9(b) pleading requirements to allegations of fraud. *See* 360 F.3d at 226. Allegations under the Wiretap Act, unlike allegations of fraud, do not fall within Rule 9(b)'s ambit.

alleges that one of the accounts overtaken by CCBN as a result of its illegal activity was worth approximately $100,000 in annual billings.  *Id.* at ¶ 19.  At this stage of the case, the amended complaint's allegations must be accepted as true and all reasonable inferences from those allegations must be "extended in [Shareholder.com's] favor."  *See Tolman*, 171 F. Supp. 2d at 35.  Several allegations within the amended complaint support an inference that at least one of CCBN's statutory violations caused losses exceeding $5,000.  Defendants' motion to dismiss this claim is plainly frivolous and should be denied.

### VI.   GIVEN THE VIABILITY OF SHAREHOLDER.COM'S FEDERAL CLAIMS, ITS MERITORIOUS CLAIMS UNDER STATE LAW SHOULD REMAIN INTACT.

For the reasons detailed above, Shareholder.com's claims under federal law should survive defendants' motion to dismiss.  Defendants' motion to dismiss Shareholder.com's various state law claims is meritless and should be denied as it assumes that Shareholder.com's claims under federal law will be extinguished.  *See* Motion at 19.

### VII.  DISCOVERY SHOULD NOT BE STAYED PENDING THE RESOLUTION OF CCBN'S MOTION TO DISMISS.

A stay to discovery would be inappropriate in this case.  As explored above, Shareholder.com's claims under federal law should survive defendants' motion to dismiss and this Court's jurisdiction over this action will continue to exist.  Thus, allowing discovery to proceed will not subject any party to potentially unnecessary burden or expense.  Various federal courts have found a blanket stay to discovery inappropriate during the pendency of a motion to dismiss, particularly where, like here, the target complaint appears meritorious.  *See Moss* v. *Hollis*, No. B-90-1777 (PCD), 1990 WL 138531, at *1 (D. Conn. June 29, 1990) (denying a motion for stay of discovery after a review of the complaint revealed that it was not frivolous); *In re Chase Manhattan Corp. Sec Litig.*, No. 90 Civ. 6092 (LMM), 1991 WL 79432, at *1

(S.D.N.Y. May 7, 1991) (denying stay and noting that stays to discovery "should not be granted routinely simply on the basis that a motion to dismiss has been filed.")

Defendants' motion hopefully suggests that the potential for Thomson being dismissed from this suit is a sufficient reason in itself for discovery to be stayed. *See* Motion at 20. Such an argument is unavailing, however, as Thomson is a legitimate party to this action. Moreover, a stay to discovery would be particularly inappropriate in a case such as this, where proceeding with discovery would assist Shareholder.com in responding to the defendants' claims that Thomson and CCBN remain wholly separate entities. *See Kutilek* v. *Gannon*, 132 F.R.D. 296, 298 (D. Kan. 1990) ("[a] court abuses its discretion when it stays discovery, generally, and prevents a party from having a sufficient opportunity to develop a factual base for defending against a dispositive motion.") Defendants have thus failed to establish any interest favoring a stay sufficient to outweigh Shareholder.com's right to prosecute this case. Discovery should be allowed to go forward.

        Respectfully submitted,

        SHAREHOLDER.COM, INC.,

        By its attorneys,

        /s/ John T. Bennett
        _____
        Thane D. Scott (BBO #449340)
        Ruth T. Dowling (BBO #645568)
        John T. Bennett (BBO # 648464)
        PALMER & DODGE LLP
        111 Huntington Avenue
        Boston, MA  02199
        (617) 239-0100

June 15, 2004.