FILED
CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 JAN 25  P 4:01

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| DIRECT REPORT CORPORATION d/b/a SHAREHOLDER.COM,<br><br>Plaintiff,<br><br>v.<br><br>CCBN.COM, INC., THE THOMSON CORPORATION, JOHN DOES 1 through 5, AND JANE DOES 1 through 5,<br>Defendants. | Civil Action<br>No. 04-10535-PBS |

**PLAINTIFF SHAREHOLDER.COM'S OPPOSITION TO ROBERT ADLER'S MOTION FOR A PROTECTIVE ORDER**

Shareholder.com (Shareholder) first served Robert Adler (Adler) with a subpoena on December 3, 2004. After twice delaying his deposition, the parties agreed, in compliance with this Court's order, that Adler's deposition would take place on Alder's proposed date of January 7, 2005. Late in the afternoon before the scheduled deposition, under the guise of "clarifying" his privilege against self-incrimination, Adler informed Shareholder that he would refuse to appear for his deposition unless Shareholder signed a stipulation effectively waiving its right to challenge the scope of his assertion of his Fifth Amendment privilege.[1] Under the terms of the stipulation, now incorporated into Adler's proposed order, Adler would not be obligated to properly assert his privilege against self-incrimination and would have the power to unilaterally decide whether a waiver of that

---

[1] For further discussion of the relevant facts, see Shareholder.com's Emergency Motion for Contempt and/or Discovery Sanctions and to Compel the Deposition of Robert Adler and

right occurred. That would allow him, with respect to the same area of inquiry, to duck uncomfortable questions by asserting the privilege while simultaneously giving self-serving responses where he chooses without fear of waiver.

When Shareholder refused to abandon its rights or permit Adler to distort the scope of his rights, Adler failed to appear for deposition, in flagrant violation of this Court's orders.[2] At present, Shareholder has not put a single question to Adler, and the privilege against self-incrimination has neither been asserted nor challenged in this case.

The proper procedure for raising the privilege against self-incrimination is for Adler to assert it in response to specific questions at his deposition. Until Adler follows this procedure, there is nothing for this Court to decide and any order issued would be an advisory opinion. Adler's motion must be denied on this most fundamental ground. Adler admits as much in his motion, which expressly seeks a "clarification of the scope of his right to assert the privilege against self-incrimination at his deposition." Motion for a Protective Order (Motion) at 6,11.

In addition to ignoring the proper procedure for asserting his privilege against self-incrimination, Adler's proposed order allows him to pick questions he would like to answer and simultaneously dodge questions on the same subject he would prefer to avoid. It grants Adler the power to unilaterally decide what constitutes incriminating testimony, a determination that can be made only by this Court, and misstates well-established waiver principles.

---

supporting documents (Docket 56).

[2] Adler's contemptuous conduct is the subject of an earlier motion pending before this Court. *See*

## Argument

### I  ADLER HAS IGNORED THE PROPER PROCEDURE FOR ASSERTING HIS PRIVILEGE AGAINST SELF-INCRIMINATION AND INSTEAD ASKS THIS COURT TO ISSUE AN ADVISORY OPINION

Adler's premature motion for a protective order is nothing more than an attempt to circumvent the well-established procedure for raising Fifth Amendment concerns. A witness may not "assert the privilege [against self-incrimination] by failing to appear for a deposition at all," as Adler has done, or "voice a blanket refusal to testify," as Adler has threatened to do absent a protective order.[3] *See SEC v. First Fin. Group, Inc.*, 659 F.2d 660 (5th Cir. 1981); *SEC v. Thomas*, 116 F.R.D. 230, 234 (D. Utah 1987).

> Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense. Requiring a party to object with specificity to the information sought from him permits the district court to rule on the validity of his claim of privilege. A party is not entitled to decide for himself whether he is protected by the fifth amendment privilege. Rather, the question is for the court to decide after conducting a particularized inquiry, deciding, in connection with each specific area that the questioning seeks to explore, whether or not the privilege is well-founded.

*First Fin. Group*, 659 F.2d at 668.[4]

---

*supra*, footnote 1.

[3] "Absent [the relief sought, Adler] might need to assert a Fifth Amendment privilege broadly, potentially covering all of his activities at CCBN." Motion at 11.

[4] *See also Thomas*, 116 F.R.D. at 234 n.7 (noting the proper procedure for asserting privilege is for the deponent to attend the deposition, be sworn in, answer questions when he can, and invoke the privilege when an answer would tend to incriminate, thus allowing the court to review specific questions to which the privilege was asserted); *Gatoil v. Forest Hill State Bank*, 104 F.R.D. 580, 581-82 (D. Md. 1985) ("the proper procedure is for the deponent to appear for deposition and to assert the privilege in response to each specific question" so that the "court has a record upon which to decide whether the privilege has been properly asserted as to each specific question"); Charles Wright & Alan Miller, 8 Federal Practice and Procedure, § 1028 at 273-74 (2d. ed. 1994) (citing cases).

Adler has completely bypassed this procedure. There is no doubt that he may assert his privilege at his deposition, but "only after the incriminating question is asked, is he in a position to assert his immunity and seek a protective order." *Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.*, 518 F.2d 671, 674 (2nd Cir. 1975). For now, there is nothing for the Court to do but to order Adler to appear for deposition.

The impropriety of Adler's proposed advisory order is starkly revealed when one considers its logical implications. The procedure Adler advocates would permit parties and witnesses to obtain orders "clarifying" the scope of *any* applicable privilege, such as the attorney-client or work product privileges, prior to a deposition. Courts cannot be expected to act as clairvoyant referees to every potential battle over privilege. It is precisely to avoid this time-consuming yet wasted effort that courts do not issue advisory opinions.

In addition to engaging the Court in a pointless exercise, advisory privilege decisions would give attorneys a free pass to make mistaken or manipulative claims of privilege. Attorneys have an obligation to assert their clients' privilege against self-incrimination by objecting to specific questions, and must bear the risks associated with failing to object. Attorneys should not be permitted to sidestep this obligation or the related risks by seeking a safety net in the form of an advisory privilege opinion.

## II   EVEN IF ADLER HAD PROPERLY ASSERTED HIS PRIVILEGE AGAINST SELF-INCRIMINATION, HIS PROPOSED ORDER USURPS THIS COURT'S DECISION-MAKING AUTHORITY AND MISSTATES THE LAW.

Adler's proposed order not only ignores the required procedure for asserting the privilege against self-incrimination, but it also allows Adler to unilaterally make decisions that should be left to the Court and distorts well-established waiver principles.

The Fifth Amendment guarantees that an individual will not be compelled by the government to give self-incriminating testimony.[5] Consequently, a court may not compel a witness in a civil action to testify to facts that would "furnish a link in the chain of evidence needed to prosecute the claimant for a crime." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 264 (1983); *Malloy v. Hogan*, 378 U.S. 1, 13 (1964).

The privilege against self-incrimination is properly asserted when the Court finds it "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Malloy*, 378 U.S. at 14; *Hoffman v. United States*, 341 U.S. 479 (1951). A witness's assertion of privilege is not taken at face value; rather, "it is for the Court to say whether his silence is justified and to require him to answer if it clearly appears to the Court that he is mistaken." *Hoffman*, 341 U.S. at 486 (internal citations omitted).

If a witness does not admit an incriminating fact, there is no waiver of the privilege against self-incrimination. *Femia v. McLaughlin*, 126 F.R.D. 426, 430 (D. Mass 1989) (Collings, M.J.); *McIntyre's Mini Computer Sales Group v. Creative Synergy Corp.*, 115 F.R.D. 528, 530 (D. Mass. 1987) (Saris, M.J.). Once a witness has provided incriminating information, however, he has waived his right to refuse to provide the details. *Id.*; *Rogers v. United States*, 340 U.S. 367, 373 (1951). From that point, the privilege may only be invoked in response to questions presenting a real danger of further

---

[5] Testimonial privileges afforded by the Massachusetts Constitution are not relevant here. Adler is a witness in a federal non-diversity action and therefore, questions of privilege are governed by federal law. *See, e.g., Boston Children's Heart Found., Inc. v. Nadal-Ginard*, No. C.A. 93-12539-REK, 1994 WL 129648, *8 n.1 (D. Mass. March 31, 1994).

incrimination. *See Rogers*, 340 U.S. at 374; *Femia*, 126 F.R.D. at 431. This well-accepted rule defines the scope of the privilege for both "voluntary" and "involuntary" witnesses. *See Femia*, 126 F.R.D. at 431 (explaining that the Supreme Court's decisions in *Rogers* and *Brown* are not contrary in this regard). Accordingly, determining whether the privilege against self-incrimination has been waived "requires that all questions to which answers are sought be put to the witness and the witness be forced to either answer the question or assert the privilege." *See Femia*, 126 F.R.D. at 431. Only then does the Court have a proper record on which it can make its waiver determination. *See id.* (finding that a motion to compel testimony on grounds of waiver is premature where the court does not have the transcript to determine if incriminating facts were offered or where no specific questions were put to the witness to which he asserted the privilege.)

Adler's proposed order totally ignores these firmly established legal principles. It states "to the extent that nonparty witness Robert Adler answers questions at the deposition for which he has been subpoenaed to attend and give testimony, he will not be deemed to waive any privilege to refuse to provide self-incriminating testimony . . . with respect to any other questions that he may be asked." This is simply incorrect. If, in response to a question, Adler provides *incriminating* testimony, then he will indeed have waived his right to refuse to respond to other questions if those responses would not *further* incriminate him. *See Rogers*, 340 U.S. at 374; *Femia*, 126 F.R.D. at 431. Adler's proposed order, however, would create a situation where *any* answer Adler provides is *de facto* non-incriminating, permitting him to assert the privilege at any point without risk that it has been waived. But it is for this Court, not the witness, to decide what constitutes incriminating testimony and whether a waiver has been effected. *See*

*McIntyre's Mini Computer Sales*, 115 F.R.D. at 530-31 (relying on *Hoffman*, 341 U.S. at 486, to find that a witness "may not be exonerated from answering merely because he declares that he would incriminate himself by doing so; it is for the Court to decide whether the silence is justified"). Accordingly, even if Adler had followed the proper procedure for asserting his privilege against self-incrimination, the proposed order would still be inappropriate because it distorts the law.

### III    NO CASE LAW, INCLUDING THAT OFFERED BY ADLER, SUPPORTS ADLER'S REQUEST FOR AN ADVISORY PRIVILEGE OPINION.

Adler cites to no case, and Shareholder can find none, supporting Adler's argument that the Court should issue an advisory privilege decision prior to his deposition giving Adler alone the right to define the scope of the privilege. In support of his motion, Adler relies on a series of inferences drawn from *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corporation*, 117 F.R.D. 492 (D. Mass. 1987) (Saris, M.J.). A review of the earlier order referenced in the April 29, 1987 *McIntyre's* decision, however, reveals that Adler's inferential reasoning is fatally flawed.

The Court's earlier order in *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corporation*, 115 F.R.D. 528 (D. Mass. 1987) (Saris, M.J.), merely required a witness to respond to non-incriminating questions *after* he had asserted his privilege against self-incrimination in response to those questions at his deposition. *See id.* at 529-30. The *McIntyre's* decision by no means supports Adler's request for an advisory privilege opinion. Unlike Adler, the witness in *McIntyre's* had followed the appropriate procedure – he attended the deposition and asserted his privilege, albeit too broadly, which led to this Court's intervention. *See id.* Adler has not even attended his deposition.

Further, in accordance with the well-established case law cited above, the *McIntyre's* opinion explained that the Court, not the witness, must determine whether a question poses the possibility of incrimination. *See id.* at 530-31. To build a record on which to make this determination, the Court required the witness in *McIntyre's* to submit a list of each question he declined to answer on the grounds of privilege and to explain why the question would have a tendency to incriminate him. *Id.* at 531. Thus, *McIntyre's* implicitly rejects Adler's attempt to grant himself the power to unilaterally determine what constitutes incriminating information.

## Conclusion

For the foregoing reasons, Shareholder.com respectfully requests that Robert Adler's Motion for a Protective Order be denied.

Respectfully submitted,

___s/ Ruth T. Dowling___ /M.H.
Thane D. Scott (BBO #449340)
Ruth T. Dowling (BBO #645568)
John T. Bennett (BBO #648464)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

January 25, 2005

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party and counsel for Robert Adler by hand on January 25, 2005.

___s/ Ruth T. Dowling___ /M.H.