UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIRECT REPORT CORPORATION d/b/a SHAREHOLDER.COM,<br><br>                Plaintiff,<br><br>            v.<br><br>CCBN.COM, INC.,<br>THE THOMSON CORPORATION,<br>JOHN DOES 1 through 5, and<br>JANE DOES 1 through 5,<br><br>                Defendants. | Civil Action No. 04-10535 PBS |

**DEFENDANTS CCBN.COM, INC. AND THE THOMSON CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
EMERGENCY MOTION FOR A PROTECTIVE ORDER
<u>TO QUASH NOTICE OF DEPOSITION DIRECTED AT OPPOSING COUNSEL</u>**

Defendants CCBN.com, Inc. and The Thomson Corporation (collectively, "CCBN") submit this memorandum of law in support of its emergency motion for a protective order quashing the deposition notice of CCBN's in-house counsel, Nicandra L. Nassar, Esq. Plaintiff served the notice of deposition of Ms. Nassar on April 11, 2005, and noticed the deposition for April 27, 2005. Plaintiff's attempt to depose Ms. Nassar—a CCBN attorney who had <u>absolutely nothing</u> to do with the underlying allegations in this case, other than to provide legal representation to CCBN—is not only unnecessary, burdensome, and harassing, but also implicates significant issues regarding the attorney-client privilege and work-product doctrine. Accordingly, this Court should grant CCBN's motion for a protective order and bar plaintiff's

attempt to depose Ms. Nassar.[1]

## BACKGROUND

Ms. Nassar was first retained by CCBN to serve as counsel in July 2002, <u>months</u> after the last of the alleged computer intrusions took place. Affidavit of Nicandra L. Nassar, submitted in support of Defendants' Opposition to Motion to Compel ("Nassar Aff.") at ¶ 1. Ms. Nassar is not an employee of CCBN, but instead has been retained as an independent contractor solely to provide legal counsel to the company. Her sole involvement in this matter has been limited to her role as counsel to CCBN in connection with the investigations into the alleged intrusions and this lawsuit. Nassar Aff. ¶ 3.

While Magistrate Judge Alexander had earlier ruled that underlying facts known by Ms. Nassar were imputed to CCBN and must be disclosed in response to an interrogatory, nothing in that ruling supports Shareholder's attempt to depose Ms. Nassar in her individual capacity as CCBN's counsel. As CCBN has provided the underlying responsive facts in the company's knowledge, plaintiff's obvious motivation for seeking to depose Ms. Nassar is to obtain information that clearly falls within the protection of the work product and attorney-client privileges. Nassar Aff. ¶ 2. As set forth below, courts routinely impose protective orders in these circumstances, and this Court should do so here.

---

[1] Just three days after the deposition notice was served, CCBN requested a conference pursuant to Local Rules 7.1 and 37.1, and a telephonic conference took place the following day, April 15, 2005 (*see* Exhibit A attached hereto). During the conference, counsel for Shareholder suggested that additional interrogatory answers from CCBN on two specific issues might obviate the need to depose Ms. Nassar, and it was agreed that counsel would confer again on April 19, 2005 to discuss such a resolution. At the April 19 conference, Shareholder's counsel declared that no such resolution was possible, and refused to agree to postpone the noticed deposition date pending a ruling from this Court (*see* Exhibit B attached hereto). Shareholder's behavior forces CCBN to style this as an emergency motion, and we regret the burden this causes the Court.

2

## ARGUMENT

"The mere request to depose an opposing counsel constitutes 'good cause' for obtaining a protective order, 'unless the party seeking the deposition can show both the propriety and need for the deposition.'" *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 210 (D.P.R. 1998) (quoting *Niagra Mohawk Power Corp. v. Stone & Webster Eng'g Corp., ITT*, 125 F.R.D. 578, 594 (N.D.N.Y. 1989)). Judicial disdain for depositions of opposing counsel is well-established, *see Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987); *Dunkin' Donuts*, 181 F.R.D. at 209-10; *Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992), and is grounded in the reality that "[t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but also adds to the already burdensome time and costs of litigation . . . [and] detracts from the quality of client representation [by creating a] chilling effect . . . on the truthful communications from the client to the attorney." *Shelton*, 805 F.2d at 1327.

The reluctance of courts to permit depositions of opposing counsel extends to in-house counsel such as Ms. Nassar whose only involvement in the case stems from their legal representation of the company. As the court in *Shelton* stated in granting defendants' motion for a protective order:

> In-house counsel in this case had nothing to do with this lawsuit except to represent her client. She did not design the [allegedly defective product] or have any duties in relation to the design of the [product]; nor, of course, was she a witness to the accident. The harassing practice of deposing opposing counsel . . . appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.

3

*Shelton*, 805 F.2d at 1330.  Moreover, attempts to depose opposing counsel inevitably implicate significant work-product and privilege issues, making such depositions a terribly inefficient discovery device.  *See id.* at 1327 (noting that depositions of opposing counsel cause pre-trial delays because of the need to resolve work-product and privilege objections).

Courts addressing this issue have employed the three-prong test articulated in *Shelton* to determine whether a court should order the taking of opposing counsel's deposition.  *See id.*; *Dunkin' Donuts*, 181 F.R.D. at 210 (noting that "[n]umerous federal courts" have adopted the *Shelton* test); *cf. Carey v. Textron, Inc.,* 224 F.R.D. 530, 531 (D. Mass. 2004) (Gorton, J.).  Under the *Shelton* test, a court should order the taking of opposing counsel's deposition only in the limited circumstances where: (1) no other means exist to obtain the information, (2) the information sought is relevant and not privileged (or considered work-product), and (3) the information is crucial to the preparation of the case.  *See Shelton*, 805 F.2d at 1327.  Because plaintiff here cannot meet <u>any</u> of those requirements, CCBN's motion for a protective order should be allowed.

I.   **PLAINTIFF CAN OBTAIN ANY DISCOVERABLE INFORMATION THROUGH OTHER MEANS**

Not only can plaintiff obtain the information it seeks from Ms. Nassar through other means—it already has.  By deposing Ms. Nassar, plaintiff apparently hopes to uncover information regarding CCBN's internal investigation of the allegations described in the amended complaint.  But CCBN has already disclosed this information in its Second Supplemental Response to Interrogatory No. 4 of Shareholder's First Set of Interrogatories.  *See id.* (granting defendants' motion for a protective order where, in some instances, plaintiffs already had obtained the information sought by other means—including prior document production); *Rizzo v. Sears, Roebuck and Co.*, 127 F.R.D. 423, 425-26 (D. Mass. 1989) (Alexander, J.) (granting

4

motion for protective order barring deposition of counsel where, although counsel may have had personal knowledge of matters material to the case, "a deposition [of opposing counsel] could only corroborate facts already in the possession of [the party seeking the deposition]"); *see also Dunkin' Donuts*, 181 F.R.D. at 211 (burden is on party seeking to depose opposing counsel to demonstrate that such deposition is the only "practical means available" for obtaining the information).

      Moreover, there are other individuals with personal knowledge of the relevant facts who are better suited to provide the information plaintiff seeks. This includes CCBN's former Chairman and Chief Executive Officer, Jeffrey Parker, whom CCBN has disclosed was involved in the company's internal investigation, and whose deposition plaintiff has already taken. *See Shelton*, 805 F.2d at 1327 (granting motion for protective order where company employees other than in-house counsel could respond to plaintiffs' questions); *Dunkin' Donuts*, 181 F.R.D. at 212 (same). Likewise, CCBN has produced Steven Roycroft as its Rule 30(b)(6) designee to testify about the allegations in this case, and plaintiff has taken and has noticed additional depositions of current and former CCBN employees with relevant personal knowledge. Aside from CCBN's supplemental interrogatory responses and the above-referenced depositions, Ms. Nassar adds <u>nothing</u> to the universe of discoverable facts to which plaintiff may be entitled.[2] Because plaintiff can therefore obtain all discoverable information through means other than the judicially-disfavored approach of deposing opposing counsel, CCBN's motion for a protective order should be allowed.

---

[2]  During the April 15, 2005 meet and confer, Shareholder's counsel indicated that plaintiff was interested in obtaining additional details concerning the substance of conversations Ms. Nassar had with the Massachusetts Attorney General's Office, and with Thomson prior to the merger, concerning Shareholder's allegations. In an effort to resolve this dispute and avoid the need for Ms. Nassar's deposition, CCBN offered to provide additional interrogatory answers addressing those points, and CCBN remains willing to do so as an alternative to producing Ms. Nassar for deposition.

## II. THE INFORMATION PLAINTIFF SEEKS FROM MS. NASSAR IS PRIVILEGED

Any relevant information plaintiff could possibly seek from Ms. Nassar, other than that already disclosed by CCBN in its interrogatory responses, document production, and Rule 30(b)(6) deposition testimony, is protected by the attorney-client privilege and work-product doctrine. Ms. Nassar was retained by CCBN as in-house counsel in July 2002—*after* CCBN's alleged intrusions into plaintiff's computer system. Thus, Ms. Nassar has no personal information regarding the allegations in the amended complaint and any information that she later obtained she learned from communications with her client in the context of representing CCBN in the instant litigation and related matters. Nassar Aff. ¶¶ 2-3. Such communications are strictly protected by the attorney-client privilege. *See Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 41 (D. Mass. 1987) (Saris, J.) (attorney-client privilege applies to protect confidential communications between client and attorney).

Likewise, any information plaintiff seeks regarding any investigation by Ms. Nassar into plaintiff's allegations is further protected by the work-product doctrine. The work-product doctrine not only protects discovery materials obtained or prepared by counsel in preparation for litigation, but also the attorney's mental impressions, thought processes, conclusions, and legal theories. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Indeed, the work-product doctrine even protects an attorney's selection and compilation of relevant documents. *See Shelton*, 805 F.2d at 1328-29 (granting motion for protective order because, *inter alia*, work-product doctrine protected opposing counsel from responding to questions about the existence or non-existence of certain documents since any answer would "reveal her mental selective process"). As in *Shelton*, if Ms. Nassar is asked to describe what actions she directed or took in investigating the

6

allegations in the amended complaint, she will be forced to reveal her "mental selective process[es]" regarding what facts and documents she considered significant to this litigation.

Nothing in Magistrate Judge Alexander's opinion supports plaintiff's attempt to depose Ms. Nassar. The opinion clearly focuses on the extent to which knowledge attaches to CCBN as a <u>corporate</u> <u>entity</u>, and the ruling required CCBN to disclose such corporate knowledge. *See* Opinion at 9. But here, plaintiff seeks the deposition of Ms. Nassar, CCBN's counsel, in her <u>individual</u> capacity. The distinction between corporate knowledge—which Magistrate Judge Alexander ruled must be disclosed—and the communications and work product of corporate counsel—which is protected by longstanding precedent—precludes any expansion of the Opinion to require Ms. Nassar's deposition.

Nor can plaintiff be heard to argue that Ms. Nassar can simply invoke the privilege at the deposition, as many courts have held that the inevitably frequent and intractable privilege issues raised during the deposition of opposing counsel justifies protective orders quashing such depositions altogether. *See*, *e.g.*, *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987) (entering protective order where party seeking deposition of opposing attorney "fail[ed] to show that the inquiries will not likely invade either work product or attorney-client privileges"). That is precisely what the Court should do here.

**III.   THE INFORMATION PLAINTIFF SEEKS FROM MS. NASSAR IS NOT CRUCIAL TO ITS CASE PREPARATION**

Finally, a protective order should be entered because the information plaintiff seeks from Ms. Nassar is not crucial to the preparation of its case. In fact, it strains all reason to understand why taking the deposition of Ms. Nassar would be crucial to this case. Plaintiff has already deposed several individuals with personal knowledge, as well as CCBN's Rule 30(b)(6) designee, concerning plaintiff's allegations. If plaintiff seeks additional underlying facts, there

7

are more appropriate discovery devices to obtain such information than taking the deposition of an opposing counsel who has no independent knowledge of any relevant facts.  *See* footnote 2 *supra*.  On those grounds as well, CCBN's motion for a protective order should be granted.

## CONCLUSION

For all of the foregoing reasons, CCBN's motion for protective order should be granted, and the notice of Ms. Nassar's deposition should be quashed.

Respectfully submitted,

GOODWIN PROCTER LLP

/s/ David M. Moss
Anthony S. Fiotto (BBO #558089)
David M. Moss (BBO #649707)
Karin M. Bell (BBO #654242)
Exchange Place
53 State Street
Boston, MA  02109-2881
(617) 570-1000

Counsel for Defendants CCBN.COM, INC. and THE THOMSON CORPORATION

Dated:   April 21, 2005

## CERTIFICATE OF SERVICE

This is to certify that on this 21st day of April 2005 a true and correct copy of the above and foregoing instrument was served via hand delivery to John T. Bennett, Esq. Palmer & Dodge LLP, 111 Huntington Avenue at Prudential Center, Boston, MA 02199-7613.

/s/ David M. Moss
David M. Moss

LIBA/1529000.3