UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIRECT REPORT CORPORATION d/b/a SHAREHOLDER.COM,<br><br>        Plaintiff,<br><br>v.<br><br>CCBN.COM, INC., THE THOMSON CORPORATION, JOHN DOES 1 through 5 and JANE DOES 1 through 5,<br>        Defendants. | Civil Action<br>No. 04-10535-PBS |

**PLAINTIFF SHAREHOLDER.COM'S REPLY TO DEFENDANTS' AND ROBERT ADLER'S OPPOSITIONS TO ITS MOTION FOR LEAVE TO AMEND THE COMPLAINT AND REQUEST FOR ORAL ARGUMENT**

Defendants CCBN.com and The Thomson Corporation (collectively, "CCBN") and Mr. Robert Adler ("Adler") have opposed the Motion for Leave to Amend the Complaint filed by Shareholder.com ("Shareholder"), primarily claiming that Shareholder's motion came a few months too late. When Shareholder filed its motion to amend in February 2005, CCBN had consistently denied <u>any</u> corporate knowledge of unlawful intrusions into Shareholder's computer systems.[1] Nonetheless, CCBN and Adler maintain that Shareholder should have known the scope of Adler's involvement in

---

[1] CCBN denied any such knowledge in its Answer, in its initial and supplemental interrogatory responses and through its Rule 30(b)(6) witness. Just last week, on April 1, 2005, CCBN served its Second Supplemental Interrogatory Responses, pursuant to Magistrate Judge Alexander's Order. CCBN still insists there is no competent evidence of any intrusions, but for the first time recognizes that Adler admitted to a "couple" of intrusions.

the intrusions as early as October 2004, when defendants produced an undated memorandum written by Adler to Jeffrey Parker, then-CEO of CCBN, indicating that Adler and possibly others had engaged in intrusions but claiming that "little" of value was taken. CCBN improperly designated this document "highly confidential" under the parties' Stipulated Protective Order, preventing Shareholder's counsel from disclosing it to anybody at Shareholder.

CCBN and Adler fail to inform the Court that between October 2004, when the memo was produced, and February 2005, when Shareholder moved to amend the Complaint, CCBN and Adler blocked each of Shareholder's attempts to conduct discovery on the scope of Adler's involvement so that Shareholder could amend the Complaint to substitute Adler for one of the John Doe defendants. Given Shareholder's diligent discovery efforts and CCBN and Adler's conduct blocking that discovery, the assertion that the amendment was untimely should be rejected. Further, no prejudice results from adding Adler at this stage because CCBN and Adler have repeatedly asserted that their interests are aligned and have entered into a joint defense/common interest agreement. The blame for any prejudice would, in any event, rest with CCBN and Adler given their deliberate obstruction of the course of discovery. Finally, Adler's argument that his potential exposure to criminal prosecution should immunize him from a civil suit is rejected by applicable case law and makes no practical sense.

CCBN's procedural objection pursuant to Local Rule 15.1(B) has been resolved by the parties and Adler has had an opportunity to respond to Shareholder's motion to amend. *See* Shareholder.com's Unopposed Motion to Extend the Time to Allow Robert

Adler to Respond to Shareholder.com's Motion for Leave to Amend the Complaint. [Docket 99].

For these reasons and the reasons contained in its motion papers, Shareholder requests that the Court grant it leave to serve the Second Amended Complaint substituting Mr. Adler for one of the named John Doe defendants.

## Relevant Procedural History

Since filing its Answer in July 2004, CCBN has been consistent in two positions: (1) it has repeatedly denied any corporate knowledge of unlawful intrusions into Shareholder's computer systems; and (2) it has repeatedly resisted and obstructed Shareholder's reasonable discovery efforts.

### *CCBN's Denial of Knowledge of the Intrusions*

Shareholder has determined that Adler prepared the undated memorandum sometime around June 2002. However, when CCBN filed its Answer to Shareholder's Complaint on July 6, 2004, CCBN stated it lacked knowledge or information sufficient to form a belief as to whether CCBN Intruders had accessed Shareholder's computer systems. *See* Answer and Counterclaims at ¶¶ 11, 12 and 13.[2] Shareholder received no information about the intrusions until October 2004, seven months after it filed its Complaint, when CCBN finally produced the improperly-designated "highly confidential" memorandum prepared by Adler.

---

[2] It is also interesting to note that CCBN never disclosed Adler's memorandum to the Massachusetts Attorney General's Office. The Attorney General began investigating CCBN for illegally accessing Shareholder's internal computer systems in late summer or early fall of 2002, shortly after Adler prepared the memo.

Under the terms of the parties' Stipulated Protective Order, Shareholder was prohibited from sharing the information in the memo with its client as long as the memo was designated "highly confidential." Protracted discussions with CCBN about Shareholder's objection to this designation, among others, initially failed to resolve the matter. CCBN agreed to re-designate the memo as "Confidential" in early December 2004, but only when Shareholder was hours from filing a motion seeking de-designation of CCBN's entire production as a remedy for its gross misuse of designations. *See* December 7, 2004 e-mail from John T. Bennett to David M. Moss (attached hereto as Exhibit A) and December 8, 2004 Letter from David M. Moss to John T. Bennett (attached hereto as Exhibit B).

### *Shareholder's Diligent Discovery Efforts and the Defendants' Dilatory Tactics*

As soon as Shareholder received the memo, it diligently attempted to obtain other information about Adler's involvement in the intrusions. However, it was stonewalled by CCBN and Adler at every turn. In supplementing its response to Shareholder's First Set of Interrogatories, CCBN raised a host of improper privilege objections and refused to provide any facts about the intrusions. *See generally* Shareholder.com's Motion to Compel Interrogatory Answers [Docket No. 53]. At CCBN's Rule 30(b)(6) deposition, which was noticed in August 2004 but delayed until December 10, 2004, CCBN again improperly asserted that any knowledge it had about the intrusions -- even purely factual information -- was protected by the attorney-client privilege. *See* Shareholder.com's

Motion to Designate a Knowledgeable 30(b)(6) Representative and to Permit Designee to Testify to Factual Information [Docket No. 49].[3]

Mr. Adler was equally energetic in his efforts to foreclose Shareholder's discovery of crucial information. Shareholder first served a subpoena on Adler on December 3, 2004, commanding him to appear for deposition on December 13, 2004. After the parties were unable to agree on a prompt date for Adler's deposition, the Court ordered the parties to set a date in January. *See* December 20, 2004 Electronic Order by Magistrate Judge Alexander [No Docket Number]. The parties agreed that the deposition would be held on January 7, 2005.

On the afternoon of January 6, 2005, literally the eve of his deposition, Adler demanded that Shareholder prospectively waive certain rights if Adler sought to assert his Fifth Amendment privilege against self-incrimination during the deposition. *See* Shareholder.com's Emergency Motion for Contempt and/or Discovery Sanctions and to Compel the Deposition of Robert Adler [Docket No. 56]. Shareholder refused to waive its rights or permit Adler to unilaterally define the scope of his Fifth Amendment privilege. When Adler failed to appear on January 7 as ordered, Shareholder immediately filed a motion to hold Adler in contempt and to compel his appearance for deposition. *See id.* A hearing on this motion, and Shareholder's other discovery motions, was scheduled for February 10, 2005.

---

[3] Magistrate Judge Alexander recently found CCBN's privilege objections unfounded and ordered CCBN to respond to the interrogatories, which she reasoned would also alleviate Shareholder.com's concerns about the Rule 30(b)(6) deposition. *See* March 2, 2005 Order [Docket No. 85].

- 5 -

At the hearing, Magistrate Judge Alexander ordered Adler to appear for deposition, but the parties were unable to agree on a deposition date prior to March 4, 2005. Judge Alexander took under advisement Shareholder's various motions to compel discovery from CCBN. By that point, CCBN's obstructive discovery tactics and Adler's refusal to appear for his deposition had left Shareholder with no information about Adler's intrusions, other than the memorandum. Realizing that it was likely to remain in the dark about the full scope of the intrusions until at least early March, Shareholder decided it had no alternative but to pursue its motion to amend to substitute Adler for a John Doe without the benefit of the information being withheld by CCBN and Adler. Judge Alexander ruled in early March that CCBN's interrogatory responses were insufficient, that CCBN was required to produce thousands of pages of documents that it had until the date of the motion hearing refused to produce (and which it did not produce until April 1, 2005), and that Mr. Adler was not entitled to a protective order in advance of his deposition. *See* March 2, 2005 Order [Docket No. 85].

## Argument

I. **SHAREHOLDER.COM'S MOTION WAS NOT UNDULY DELAYED AND NO PREJUDICE WILL RESULT FROM SUBSTITUTING ADLER AS A PARTY**

CCBN and Adler brazenly argue that the delay they have earnestly fostered supports denial of Shareholder's motion to amend. Since the time CCBN decided to bring Adler's memorandum to light, Shareholder has made every effort to learn more about Adler's conduct: It propounded interrogatories that CCBN refused to answer; it questioned CCBN's 30(b)(6) representative, who refused to provide basic factual

information about the intrusions; and it attempted to depose Mr. Adler, who failed to show up in violation of a court order.

Not only did CCBN refuse to provide <u>any</u> information to Shareholder, it prohibited Shareholder's counsel from sharing the limited information in the memorandum with its own client. Grossly misusing the Stipulated Protective Order, CCBN designated the memorandum as "Highly Confidential," preventing its disclosure to anyone but attorneys. CCBN steadfastly maintained this position until Shareholder had prepared and was about to file a motion bringing CCBN's improper designation to the Court's attention. Only after receiving Shareholder's final draft of a motion to de-designate, did CCBN relent. *See* Exhibits A, B.

CCBN apparently believes that Shareholder's counsel had a duty to substitute Mr. Adler as a party without involving its client in the decision and without attempting to ascertain the significance of a memorandum that CCBN did not even disclose to the Attorney General's office. Shareholder properly chose not to engage in this hair-trigger approach to pleading. *See Picker Inter'l v. Leavitt*, 128 F.R.D. 3, 8 (D. Mass 1989) ("Fed. R. Civ. P. 11 discourages the premature filing of claims without an adequate factual basis and parties should not be penalized for failing to make expansive claims until discovery demonstrates that the claims are warranted").

Instead, Shareholder diligently sought further information about Adler's actions. When it became clear that absent a court order CCBN and Adler would continue to obstruct Shareholder's access to any information, and that Mr. Adler would repeatedly assert his Fifth Amendment privilege rather than testifying to the facts of the intrusions at

a deposition, Shareholder was forced to seek judicial relief, as it has, and to pursue its motion to amend.

Apart from the fact that CCBN and Adler must shoulder the fault for any delay, a mere four months passed between the time Shareholder became aware of the Adler memorandum in October 2004 and filed its motion to amend in February 2005. The discovery deadline has recently been extended to June 1, 2005 and no trial date is set. For all of these reasons, the allegations of undue delay are without merit.

CCBN and Adler's allegations of prejudice ring as hollow as their allegations of undue delay. CCBN and Adler have entered into a common interest/joint defense agreement that thoroughly undermines their claims of prejudice. *See* March 10, 2005 Letter from Thane D. Scott to Anthony S. Fiotto (attached hereto as Exhibit C) and March 15 Letter from Anthony S. Fiotto to Thane D. Scott (attached hereto as Exhibit D). They have previously invoked this agreement to withhold information from Shareholder. *See* Exhibit C. While CCBN and Adler are eager to derive the obstructive benefits of such an arrangement, they now seek to avoid the costs of commonality.

CCBN argues that Adler will demand a second round of depositions. *See* Defendants' Opposition to Plaintiff's Motion for Leave to Amend the Complaint at 4-5. CCBN and Adler have claimed through assertion of the joint defense privilege that their interests are aligned, so it is hard to imagine why depositions would need to be repeated. There would certainly be no reason for Adler to depose <u>CCBN's</u> witnesses. To the extent Adler's counsel would like to follow-up CCBN's questioning of Shareholder's witnesses, Shareholder will make those witnesses available. In the unlikely event this is necessary, it would take little time because CCBN has completed only a few depositions. Several

depositions are upcoming and Shareholder has invited Adler's counsel to attend those depositions in light of CCBN's concern. *See* March 10, 2005 Letter from Thane D. Scott to Anthony S. Fiotto and Richard J. McCarthy (attached hereto as Exhibit E). Adler's counsel turned down the offer. *See* March 14, 2005 Letter from Richard J. McCarthy to Thane D. Scott (attached hereto as Exhibit F). Like CCBN's claim of delay, this claim of prejudice is self-inflicted.

CCBN further argues it will be prejudiced if Adler is added as a named defendant because this <u>improperly</u> suggests that their interests are aligned. *See* Defendants' Opposition to Plaintiff's Motion to Amend at 5-6. Given that CCBN and Adler have repeatedly asserted that their interests <u>are</u> aligned, and that they repeatedly asserted the common interest/joint defense privilege to block discovery of any communications between them, they cannot be heard to simultaneously complain that their interests are not aligned. *See* Exhibits C, D.[4]

Adler was co-founder and President of CCBN, and was the seniormost employee responsible for the day-to-day management of its business operations. While working in this capacity, he illegally accessed Shareholder's highly proprietary and enormously valuable client information. If Adler is on the hook, CCBN is on the hook. When convenient for them in blocking Shareholder's discovery efforts, CCBN and Adler readily recognize that their interests are inseparable. But now, when that argument undermines their ability to obtain the desired result, CCBN wants to distance itself from

---

[4] CCBN also argues that Thomson will be particularly prejudiced because it did not own CCBN when the intrusions incurred. *See* Defendants Opposition to Shareholder.com's Motion for Leave to Amend the Complaint at 5. By virtue of the acquisition, Thomson is responsible for any liabilities incurred by CCBN. But the fact that Thomson had not yet acquired CCBN when the

Adler. CCBN cannot hide behind "now you see it now you don't" privileges which exist (or not) as it pleases. It must accept the costs as well as the benefits of commonality.

For these same reasons, Adler's estimate that he would need approximately a year to marshal a defense is wholly unfounded. *See* Memorandum Supporting Robert Adler's Opposition to Plaintiff's Motion for Leave to Amend the Complaint at 6-7. If Adler requires reasonable discovery not already covered by CCBN, it would be minimal and Shareholder will provide it promptly.

The very cases cited by CCBN and Adler in opposition to Shareholder's motion establish that there is no undue delay or prejudice as a result of substituting Adler for one of the John Does. CCBN relies heavily upon *Acosta-Mestre v. Hilton International*, 156 F.3d 49 (1st Cir. 1998). In *Acosta-Mestre*, the First Circuit affirmed the denial of plaintiff's motion to amend because the plaintiff had offered no valid reason for failing to add the new party to the complaint initially or promptly after the complaint was filed. *See id.* at 53. The opinion also indicates that addition of the proposed new party would have implicated brand new theories of liability. *See id.* at 52. The court therefore reasoned that adding the new party would prejudice the defendant because it would require re-opening discovery, a significant postponement of trial and a major alteration in the defendant's trial strategy. *See id.* at 52.

None of these concerns are implicated here. Shareholder did name several John Does when it initially filed its complaint and only later determined that one of the John Does was CCBN co-founder and President Robert Adler. Adler, as the President of CCBN, was served with a copy of the Complaint at the time it was filed and has been

---

intrusions occurred is irrelevant to whether Adler may properly be added as a defendant.

well-aware of the litigation since its inception. Once Shareholder realized that Adler may have been involved, it promptly sought more information about the memorandum and the scope of Adler's involvement. When its attempts met steadfast resistance, Shareholder sought and obtained an order overcoming that resistance and it filed its motion to amend without further delay.

Moreover, CCBN and Adler's involvement in the action and potential liability are inextricably intertwined. Adler's wrongdoing while President of CCBN is the basis for CCBN's liability, whether or not Adler is also a party. Accordingly, the addition of Adler implicates no brand new theories of liability and requires no alteration of trial strategy. For this same reason, very little additional discovery should be required, and even if necessary, it could likely be completed by the June 1, 2005 discovery deadline.[5]

CCBN's reliance on *Swanson v. Van Otterloo*, 177 F.R.D. 645 (N.D. Iowa 1998), is equally misplaced. In *Swanson*, the defendants sought to amend their answer with a new affirmative defense a mere two months prior to trial. *Id.* at 649. As in *Acosta-Mestre*, the defendants in Swanson gave no valid justification for their failure to promptly add an affirmative defense to their answer. *See id.* Further, the new affirmative defense would have unfairly required the plaintiffs to revise their litigation strategy on the eve of trial. *See id.* at 651. *Swanson*, like *Acosta-Mestre*, bears no resemblance to the situation before this Court. Shareholder only shortly delayed filing its motion to amend, it has provided a valid justification for that limited delay, and CCBN's case preparation is not prejudiced -- or even altered -- by the addition of Adler.

---

[5] If Mr. Adler requires a short extension to conduct any additional discovery, Shareholder would not object.

## II. THE POTENTIAL APPLICABILITY OF CRIMINAL STATUTES SHOULD NOT PREVENT SHAREHOLDER.COM FROM SUBSTITUTING ADLER FOR ONE OF THE JOHN DOE DEFENDANTS

Adler argues that he should not have to "choose" between exposing himself to an adverse inference by virtue of asserting his privilege against self-incrimination in this case and exposing himself to criminal liability by answering Shareholder's allegations. *See* Memorandum Supporting Robert Adler's Opposition at 6. In other words, Adler maintains that because his wrongdoing implicates both civil and criminal penalties, he should not be forced to defend his conduct in this civil case. By this reasoning, any individual who could identify a remote possibility of criminal prosecution could avoid being named as a defendant in a civil action. Neither common sense nor the law supports this argument.

The First Circuit and this Court have soundly rejected arguments similar to Adler's. *See Arthurs v. Stern*, 560 F.2d 477, 478-79 (1st Cir. 1977) (finding nothing "inherently repugnant to due process in requiring the [defendant] to choose between giving testimony at the [civil] disciplinary hearing . . . and keeping silent"); *Digital Equip. Corp. v. Currie Enter.*, 142 F.R.D. 8, 13 (D. Mass. 1991) (reasoning that the Fifth Amendment permits an adverse inference against a party in a civil matter and identifying less drastic measures than a stay to protect defendants' rights, such as limiting the disclosure of information); *see also Driver v. Helms*, 402 F. Supp. 683, 685 (D.R.I. 1975) (citing *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. App. 1970)) ("[T]he fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter").

Adler's assertion that Shareholder should be required to file a duplicative action against him individually, under the assumption that a court would stay that action, also lacks support. *See* Memorandum Supporting Robert Adler's Opposition at 6. As a matter of fairness and expediency, Shareholder should not be required to bear the expenses of litigating duplicative actions because Adler claims that sometime, somewhere, perhaps he might be subject to prosecution. The Court should likewise avoid wasting its resources managing duplicative actions.

Adler's assumption that he would be entitled to stay an action against him is simply incorrect. Adler is not entitled to a stay merely because his conduct implicates criminal statutes. In fact, both of the cases cited by Adler hold that a defendant has no constitutional right to a stay simply because a parallel criminal proceeding is pending. *See U.S. v. Kordel*, 385 U.S. 1, 11 (1970); *MicroFinancial, Inc. v. Premier Holidays Int'l Inc.*, 385 F.3d 72, 77-78 (1st Cir. 2004). This Court has accordingly denied motions to stay a civil action until the resolution of a criminal matter, and the First Circuit has affirmed such decisions. *See MicroFinancial*, 385 F.3d at 77-79; *Arthurs*, 560 F.2d 477, 478-79; *Digital Equip. Corp.*, 142 F.R.D. at 11-15. Adler's argument in support of a stay would be exceptionally weak because he faces nothing more than the remote possibility of a criminal charge. No indictment has been returned and no grand jury investigation is pending. *See MicroFinancial*, 385 F.3d at 80.

Finally, Adler's suggestion that Shareholder merely seeks to prove through an adverse inference what it could not otherwise prove is belied by the circumstances of this case. The evidence shows that an illegal intruder or intruders accessed valuable proprietary information from Shareholder's Management database and around that same

time, numerous valuable clients began to leave Shareholder in unprecedented numbers. Although CCBN has obstructed Shareholder's discovery about the intrusions and CCBN's use of the information acquired, Shareholder knows Adler was involved in some number of the intrusions. Adler was the top executive having oversight of sales at CCBN and in that role used the sort of information accessed in the Management database to win clients for CCBN. Winning clients for CCBN meant taking clients from Shareholder because these two entities were the only major competitors in the investor relations field. And for reasons that are only now becoming clear, Adler suddenly became good at taking clients from Shareholder. Given these circumstances, Shareholder has more than a good faith belief that it was injured by Adler's actions.

## III    CONCLUSION

For the foregoing reasons, Shareholder.com respectfully requests that the Court grant its Motion for Leave to Amend the Complaint.

## REQUEST FOR ORAL ARGUMENT.

Shareholder hereby requests oral argument on its motion for Leave to Amend the Complaint.

Respectfully submitted,

*/s/ Melissa Allison*

Thane D. Scott (BBO #449340)
Ruth T. Dowling (BBO #645568)
John T. Bennett (BBO #648464)
Melissa C. Allison (BBO #657470)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

April 8, 2005

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by hand on April 8, 2005.

*/s/ Melissa Allison*

- 15 -