UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Direct Report Corporation<br>d/b/a Shareholder.com,<br><br>                    Plaintiff,<br><br>          v.<br><br>CCBN.com, Inc.,<br>The Thomson Corporation, Robert I. Adler,<br>John Does 1 through 5, and<br>Jane Does 1 through 5,<br><br>                    Defendants. | Civil Action No. 04-10535 PBS<br><br>**DEFENDANTS CCBN.COM, INC.<br>AND THE THOMSON<br>CORPORATION'S ANSWER TO<br>SECOND AMENDED COMPLAINT<br><u>AND AMENDED COUNTERCLAIMS</u>** |

Defendants CCBN.com, Inc. ("CCBN") and The Thomson Corporation ("Thomson"), by their counsel, Goodwin Procter LLP, answer the Second Amended Complaint as follows:

Deny the allegations in the Introduction to the Second Amended Complaint.

1.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.    Deny the allegations in Paragraph 2, except admit that CCBN competes with Shareholder.com with respect to certain products and services and further admits that CCBN provides public company clients with an array of technology and services designed to facilitate communications with investors.

3.     Deny the allegations in Paragraph 3, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 3, and admit that Robert Adler is the former President of CCBN.

4.     Deny the allegations in Paragraph 4.

5.     Deny the allegations in Paragraph 5, except admit that Thomson is a foreign corporation, and its principal place of business is Metro Center, One Station Place, Stamford, Connecticut and that, on or about March 12, 2004, Thomson announced that it had acquired CCBN.

6.     Admit the allegation in Paragraph 6 to the extent that Shareholder.com ("Shareholder") purports to establish subject matter jurisdiction pursuant to 18 U.S.C. §§ 1030(g), 1964, 2520, 2707.

7.     Admit the allegation in Paragraph 7 to the extent that Shareholder purports to establish venue in this district pursuant to 28 U.S.C. § 1391(b).

8.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 9.

10.     Deny the allegations in Paragraph 10, except admit that CCBN entered the communications services industry in 1997.

11.     Deny the allegation in Paragraph 11.

12.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 12, except deny that CCBN committed any illegal acts.

13.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 13 with respect to Robert Adler, except deny that any CCBN employee other than Mr. Adler (as to whom sufficient knowledge and information is denied) was involved in any alleged intrusions.

14.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 19.

20.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 20, except deny that information concerning the services Shareholder provides its customers, the prices charged for those services, the

names of key client contacts, and concerns expressed by customers is confidential, proprietary and has significant competitive value.

21.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 24, except admit that Shareholder raised complaints with Mr. Parker in the summer of 2002 concerning alleged intrusions by CCBN into Shareholder's management system in response to complaints about intrusions by Shareholder into CCBN's website.

25.    Admit the allegations in Paragraph 25.

26.    Deny the allegations in Paragraph 26, except admit that Mr. Parker had follow-up conversations with Shareholder regarding Shareholder's reports of wrongful access.

27.    Deny the allegations in Paragraph 27, except admit that the Massachusetts Attorney General conducted an investigation of Shareholder's allegations and subsequently closed that investigation, over Shareholder's objections, without taking any action against CCBN.

28.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

29.    Deny the allegations in Paragraph 29.

30.    Deny the allegations in Paragraph 30.

31.    Deny the allegations in Paragraph 31, except admit that Shareholder's Chief Executive Officer wrote to the President and Chief Executive Officer of Thomson Financial (which is not a party to this action) and that counsel for Thomson Financial replied and refer to those letters for their contents.

32.    Aver that the allegations in Paragraph 32 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

33.    Admit the allegation in Paragraph 33.

34.    Admit the allegations in Paragraph 34.

35.    Deny the allegations in Paragraph 35 except admit that counsel for Shareholder wrote the letter attached as Exhibit B and refer to the letter for its content.

36.    Deny the allegations in Paragraph 36.

37.    Deny the allegations in Paragraph 37.

38.    In response to Paragraph 38, repeat and reallege the responses in Paragraphs 1 through 37 of this Answer.

39.     Aver that the allegations in Paragraph 39 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

40.     Deny the allegations in Paragraph 40.

41.     Aver that the allegations in Paragraph 41 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

42.     In response to Paragraph 42, repeat and reallege the responses in Paragraphs 1 through 41 of this Answer.

43.     Aver that the allegations in Paragraph 43 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

44.     Deny the allegations in the first sentence of Paragraph 44, and aver that the allegations in the second sentence constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

45.     Aver that the allegations in Paragraph 45 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

46.     Deny the allegations in Paragraph 46.

47.     Aver that the allegations in Paragraph 47 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

48.     In response to Paragraph 48, repeat and reallege the responses in Paragraphs 1 through 47 of this Answer.

49.     Aver that the allegations in Paragraph 49 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

50.     Aver that the allegations in Paragraph 50 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

51.     Deny the allegations in the first sentence of Paragraph 51, and aver that the allegations in the second sentence constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

52.     Aver that the allegations in Paragraph 52 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

53.     Deny the allegations in Paragraph 53.

54.     Aver that the allegations in Paragraph 54 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

55.     Aver that Shareholder agreed that the allegations in Paragraphs 55 through 67 have been dismissed and they have been included in the Second Amended Complaint only as an attempt to preserve Shareholder's rights to appeal, if any, and no response is required, and, insofar as a response is required, deny them.

56.    In response to Paragraph 68, repeat and reallege the responses in Paragraphs 1 through 55 of this Answer.

57.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 69, except admit that CCBN is engaged in the conduct of a trade or business.

58.    Aver that the allegations in Paragraph 70 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

59.    Deny the allegations in Paragraph 71.

60.    Aver that the allegations in Paragraph 72 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

61.    Deny the allegations in Paragraph 73.

62.    In response to Paragraph 74, repeat and reallege the responses in Paragraphs 1 through 61 of this Answer.

63.    Aver that the allegations in Paragraph 75 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

64.    Aver that the allegations in Paragraph 76 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

65.    Deny the allegations in Paragraph 77.

66.    In response to Paragraph 78, repeat and reallege the responses in Paragraphs 1 through 65 of this Answer.

67.    Aver that the allegations in Paragraph 79 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

68.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 80.

69.    Deny the allegations in Paragraph 81.

70.    Deny the allegations in Paragraph 82.

71.    In response to Paragraph 83, repeat and reallege the responses in Paragraphs 1 through 70 of this Answer.

72.    Aver that the allegations in Paragraph 84 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

73.    Deny the allegations in Paragraph 85.

74.    In response to Paragraph 86, repeat and reallege the responses in Paragraphs 1 through 73 of this Answer.

75.    Deny the allegations in Paragraph 87.

76.    Aver that the allegations in Paragraph 88 constitute conclusions of law requiring neither admission nor denial, and, insofar as a response is required, deny them.

77.    Deny the allegations in Paragraph 89.

## AFFIRMATIVE OR OTHER DEFENSES

### FIRST AFFIRMATIVE DEFENSE

78.    The Second Amended Complaint fails to state any cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

79.    Defendants' conduct was not the cause or proximate cause of the losses alleged in the Second Amended Complaint.

### THIRD AFFIRMATIVE DEFENSE

80.    Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

81.    Plaintiff's claims are barred in whole or in part by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

82.    Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

### SIXTH AFFIRMATIVE DEFENSE

83.    Plaintiff's alleged injury, if any, was caused by persons over whom defendants CCBN and Thomson had no control, and for whom defendants CCBN and Thomson are not responsible.

## CCBN'S COUNTERCLAIMS AGAINST SHAREHOLDER

### Introduction

Beginning in June 2001, agents or employees of Shareholder, acting on its behalf (the "Shareholder agents"), repeatedly accessed CCBN's websites under false pretenses. After gaining entry without proper authorization, the Shareholder agents viewed CCBN's proprietary information, trolled the websites for information necessary to harvest content, and forced CCBN to dedicate substantial resources in an effort to terminate Shareholder's unauthorized access. In addition, relying on the information that it had improperly accessed, Shareholder contacted CCBN's clients and prospective clients, often deceitfully, and falsely disparaged CCBN's products and services. Shareholder's scheme violates statutory and common law.

### Facts

#### CCBN Services

84.     During the relevant time, CCBN provided two primary web-based services: StreetEvents, for institutional investors, and My CCBN, for investor relations ("IR") clients.

85.     Institutional investors are individuals and investment firms seeking information about companies so as to better inform their investment choices and investment advice for their clients. IR clients are companies seeking effective means of maintaining positive relationships with the investor community and allowing investors greater access to company information.

86.     StreetEvents is the industry-leading repository of customized investment-related information sourced from public companies and Wall Street's leading

investment firms for institutional investors.  Over 1,000 firms and over 15,000 individual

institutional investors, including analysts and portfolio managers, subscribed to

StreetEvents on a monthly basis.  Several leading buy- and sell-side institutions elected to

purchase StreetEvents on a firm-wide datafeed basis.

87.    CCBN established content agreements with a number of leading

retail investment portals, including America Online, The Motley Fool, Fidelity, and

Lycos/Quote.com, through which CCBN provides corporate event data, conference call

webcasts, and other financial information to its portal partners.

88.    StreetEvents allows users to select companies and events most

important to them and have those events placed on a calendar, such that the user is

apprised of continually updated information concerning various companies' events (such

as conference calls with company officers) and offered the opportunity to track them.

89.    Much of the investment event information offered on StreetEvents

is valuable, proprietary, and confidential.  Information offered on the website includes:

event briefs prepared exclusively by and for CCBN, event transcripts, conference call

dial-in numbers and pass codes, earnings release dates and times, sell-side conference

logistics, conference presentations, analyst conference calls, analyst meetings, client

entertainment, company visits, shareholder meetings, tradeshows, syndicate roadshows,

live webcasts and online replays, economic indicators, stock split information, ex-

dividend information, IPO pricings and filings, and company boardroom content.

90.    MyCCBN is also a source of valuable, proprietary, and

confidential information.  It contains similar information to StreetEvents, with the

exception of conference call dial-in numbers, transcripts, and briefs.  MyCCBN,

however, also contains additional proprietary information, such as information regarding which individuals and organizations are tracking particular companies' corporate information, reading their conference call transcripts and briefs, and viewing their webcasting. MyCCBN receives approximately 10,000 logins per month, representing approximately 2,000 unique user logins.

91.    CCBN spent approximately $10,000,000 to build and launch the StreetEvents and MyCCBN services, excluding ongoing maintenance and enhancement costs.

<u>Security of CCBN Sites</u>

92.    Both StreetEvents and MyCCBN are password-protected sites open only to registered users with valid user names and passwords.

93.    The registration page for StreetEvents stated: "The password-protected CCBN StreetEvents site is for institutional investment professionals only."

94.    The registration page for MyCCBN stated: "To become a member of MyCCBN, the information exchange for IR professionals, you must be an IR professional."

95.    During the relevant time, to obtain a username and password for either MyCCBN or StreetEvents, a user had to request access to that site by electronically submitting her or his first and last name, "role," telephone number, and email address. On MyCCBN, the user had a choice in the "role" section between "IR professional," "IR Firm Agent," and "Other." On StreetEvents, the user had thirteen choices in the "role" section, including "Portfolio Manager," "Analyst," "Sales," and "Trading."

96.    Once CCBN received this information, a CCBN agent called the prospective client at the phone number provided to verify the submitted information.  The agent generally questioned the caller regarding her or his job and the department of the company for which he or she worked.  Only when this call was made and CCBN approved the user could the user access the requested service (StreetEvents or MyCCBN).

97.    In addition to providing the relevant information and obtaining approval from CCBN, a user had to agree to abide by the terms and conditions of use for either StreetEvents or MyCCBN to access those sites.

98.    As for StreetEvents, the first time a newly-registered user attempted to login to the website, a "pop-up box" appeared on the screen asking the user whether he or she agreed to abide by the CCBN StreetEvents Service Terms and Conditions of Use.  Unless the user clicked on the "I agree" icon, the user could not access the website.

99.    Among other terms and conditions, the CCBN StreetEvents Service Terms and Conditions of Use stated:

> CCBN.COM, INC. ("CCBN") MAINTAINS THE  WEB
> SITE AS A SERVICE TO ITS SUBSCRIBERS,
> POTENTIAL SUBSCRIBERS, AND OTHER
> INTERESTED PARTIES. THIS WEB SITE IS NOT
> OPEN TO THE GENERAL PUBLIC AND MAY ONLY
> BE ACCESSED BY PARTIES WHO FIRST AGREE TO
> BE BOUND BY THE TERMS AND CONDITIONS OF
> USE SET FORTH  HEREIN.  BY CLICKING THE "I
> AGREE" BUTTON BELOW, YOU ARE MANIFESTING
> YOUR ASSENT AND AGREE TO BE BOUND BY
> THESE TERMS AND CONDITIONS OF USE.

COPYRIGHT AND TRADEMARK INFORMATION

….

No part of this web site may be reproduced or transmitted in any form, by any means, electronic or mechanical, including photocopying and recording, except that CCBN authorizes you to view, copy, download, and print CCBN documents (such as Event Briefs, Event Transcripts, reports of economic events, and calendar events) that are available on this web site, subject to the following conditions:

LIMITED LICENSE

You are entitled to use this web site for your own use, but may not sell or transfer reproductions of the web site to other parties in any way. You may not network the web site or otherwise access it on more than one computer or computer terminal at the same time without the prior written permission of CCBN. To use this web site, you must be identified on a CCBN StreetEvents subscription agreement, and your license to use of this web site is subject to timely payment of the applicable subscription fees. Your access to this site is controlled by your entry of a user name and/or password, each of which you agree to keep confidential and not allow others to use to obtain access.

OTHER RESTRICTIONS

You may not cause or permit the disclosure, copying, renting, licensing, sublicensing, leasing, dissemination, or other distribution of this web site by any means or in any form without the prior written permission of CCBN. You may not modify any portion of this web site, nor remove any copyright, trademark, or other proprietary notices. You may not modify, enhance, supplement, create derivative work from, adapt, or translate into another language this web site or any information contained therein.

100.    As for MyCCBN, its use was governed by the MyCCBN Terms and Conditions of Use.  Among other things, those terms and conditions provided:

BY USING THIS WEB SITE, THE USER ("YOU") INDICATE YOUR ACCEPTANCE OF THESE TERMS

AND CONDITIONS. IF YOU DO NOT ACCEPT THESE TERMS AND CONDITIONS, THEN DO NOT USE THIS WEB SITE. PLEASE READ THESE TERMS AND CONDITIONS OF USE CAREFULLY. THESE TERMS AND CONDITIONS MAY HAVE CHANGED SINCE YOUR LAST VISIT TO THIS WEB SITE ("SITE").

CCBN.com ("CCBN") maintains this Site as a service to its customers, potential customers, and other interested parties. Please visit us, browse our pages, and download documents, subject to the terms and conditions set out below. CCBN reserves the right to revise these terms and conditions at any time and You are deemed to be apprised of and bound by any changes to these terms and conditions by virtue of Your use of the Site. CCBN reserves the right to grant and terminate Your access at will at any time for any violation of these terms.

**Copyright and Trademark Information**

…

This Site, and the data, information, statements, or other content ("Content") which it contains, are the property of CCBN and its affiliates and licensors, and are protected from unauthorized copying and dissemination by United States copyright law, international conventions and other intellectual property laws.

**Restrictions**

Access to and use of password protected and/or secure areas of the Site is restricted to authorized users only. Unauthorized individuals may not access these areas of the Site. If You are an authorized user, You agree to take reasonable care that Your access is not used by unauthorized users.

101.    After the users' application, approval, and (in the case of StreetEvents) explicit agreement to the terms and conditions of use, the user could login at any time (until the termination of service) only by entering the username and password approved by CCBN.

<u>Shareholder's Unauthorized Access and Misleading Representations</u>

102.     Since at least June 2001, Shareholder has relied on a pattern of deception and misrepresentations to gain unauthorized access to CCBN's websites and to disparage the quality of CCBN's products and services to CCBN's clients and prospective clients.

103.     On March 25, 2002, a person identifying himself as "Michael Burak" submitted a request to register for StreetEvents.  The application stated that "Mr. Burak" was an "IR Agent" from the company "Morgen Walke," a CCBN client.

104.     Morgen Walke is a multinational business communications firm that advises companies on how to better relate to, and communicate with, investors and the general public.

105.     When requested to register for StreetEvents, the person identifying himself as "Michael Burak" entered a "Lycos" email address and a phone number at which he could be reached.

106.     Pursuant to CCBN's standard operating procedure in registering new users, a CCBN agent contacted "Mr. Burak" at the phone number provided to verify his submitted information.  When asked why he inputted a Lycos email address, "Mr. Burak" explained that he inputted his Lycos email address because he was working from home, rather than from the office.  Based on "Mr. Burak's" login page representations that he was an IR Agent working for Morgen Walke and the telephone call confirming the information, CCBN approved "Mr. Burak" for StreetEvents access.

107.     Between March 25, 2002, and April 16, 2002, "Mr. Burak" logged on to the StreetEvents website as many as 29 times.  On several occasions, "Mr. Burak"

entered the request "robots.txt." This request is designed to determine what "robots" CCBN's computer will accept. "Robots" are computer programs designed to systematically download or "harvest" all the information from a particular site at one time. When unauthorized, "robots" can cause websites extreme harm, robbing them of proprietary information and causing diminished server capacity and possible server shutdown.

108. On or about April 16, 2002, CCBN discovered that all but two of "Mr. Burak's" logins had originated from the remote IP address "206.66.251.10."

109. Arin, the directory of IP addresses, shows that the IP address "206.66.251.10" is registered to the Netname "Shareholder" at the address listed as Shareholder's address on its website. This address is: 12 Clock Tower Place, Suite 300, Maynard, Massachusetts 01754.

110. Based upon this information, CCBN terminated "Mr. Burak's" access to StreetEvents on or about April 16, 2002.

111. CCBN has confirmed with Morgen Walke that no "Michael Burak" is employed there.

112. Had CCBN been aware of "Mr. Burak's" true identity or his affiliation with Shareholder, CCBN would not have approved "Mr. Burak's" request for access to the StreetEvents website.

113. "Michael Burak, " however, was not the only user-name used to access CCBN's websites from a Shareholder IP address. CCBN's records show several dozen logins, under as many as seven user-names, originating from one of Shareholder's

IP addresses since June 14, 2001.  On each occasion, the individual(s) logging in accessed CCBN's websites without proper authorization and viewed proprietary information.

114.    Upon information and belief, Shareholder's unauthorized access into CCBN's websites continued until at least July 15, 2004.

115.    In addition to improperly accessing CCBN's websites, Shareholder has made false and misleading representations to CCBN's clients and to prospective clients.  For example, on April 11, 2002, a CCBN client (who had recently left Shareholder) received an email from a "Mike Burak," who identified himself as a "long time shareholder" of the client.  In the email, "Mike Burak" specifically referred to the client's "Investor Relations Website" – which is run by CCBN and available only to registered users with valid user names and passwords – and made several disparaging (and wholly inaccurate) comments about CCBN's services, stating, among other things, that "your stock quote data has been off" and that "the quality of your archived webcasts, provided by CCBN, are of poor quality."  "Mike Burak" closed his email by warning that "if you do not want to lose my faith, please correct these problems immediately. . . .  You will be receiving a letter as well from one of your analysts  . . . , [who] is equally disappointed by your new site."

116.    Upon receiving this email, the client immediately contacted CCBN to discuss "Mike Burak's" concerns.  CCBN spent considerable time and resources responding to the client and assuring the client that "Mike Burak" was not who he claimed to be.

117.    Shareholder has contacted a number of other clients of CCBN (as well as prospective clients), criticizing their decision to use CCBN for their IR needs and/or denigrating the quality of CCBN's products and services.  In addition to contacts made under false pretenses, such as "Mike Burak's," Shareholder's sales associates also have contacted CCBN's clients and prospective clients, making misrepresentations about CCBN's products and services and seeking to switch the clients to Shareholder (or dissuading them from signing with CCBN).

Effect of Shareholder's Unauthorized Access and Misleading Representations

118.    Upon information and belief, the users viewing CCBN's StreetEvents and MyCCBN sites from Shareholder's IP address under false pretenses viewed CCBN's proprietary information, including, but not limited to, briefs of conference calls prepared exclusively by and for CCBN, conference call dial-in information provided to CCBN for exclusive use by legitimate registered CCBN users, and information regarding StreetEvents' clients' tracking particular companies' information.

119.    Upon information and belief, the users viewing CCBN's StreetEvents and MyCCBN sites from defendant Shareholder's IP address under false pretenses gained valuable information regarding how to "scrape," or systematically download, all of the information contained on CCBN's websites.

120.    CCBN's computer systems and technicians were burdened by responding to requests from "Michael Burak" and the other unauthorized user(s) who gained access to CCBN's websites using false information and misrepresentations regarding their affiliation with companies unrelated to Shareholder.  As a result, CCBN

employees spent hundreds of hours identifying unauthorized logins, investigating the source of the logins, and revoking access, at a cost in excess of $50,000 in technician hours.

121.    CCBN's customer service representatives have been burdened by responding to clients who had been contacted by "Mike Burak" and other Shareholder employees or agents.  CCBN has been forced to rebut Shareholder's misrepresentations and disparaging comments and to attempt to retain (or, with respect to prospective clients, sign-up) clients mislead by Shareholder's actions.

### FIRST COUNTERCLAIM FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

122.    CCBN repeats and realleges the allegations in Paragraphs 81 through 118 above as if fully set forth herein.

123.    Shareholder has intentionally and without proper authorization utilized interstate communication to access CCBN's computer servers and thereby obtained information from those servers in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).

124.    Shareholder has knowingly and intentionally caused the transmission of information that has caused significant damages to CCBN, and at least one of Shareholder's violations, in isolation, caused losses exceeding $5,000 in value over a one-year period in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5).

125.    Shareholder has repeatedly accessed the servers without proper authorization and transmitted information thereto and, in so doing, has caused and continues to cause CCBN damages in an amount to be proven at trial.

## SECOND COUNTERCLAIM FOR VIOLATION OF THE LANHAM ACT

126.    CCBN repeats and realleges the allegations in Paragraphs 81 through 122 above as if fully set forth herein.

127.    Shareholder has intentionally made false and misleading representations regarding the names and identities of its employees and agents to CCBN and CCBN's clients and prospective clients.  Shareholder has also intentionally made false and misleading representations regarding the quality of CCBN's products and services.  As a result of these misrepresentations, Shareholder has caused confusion and deceived multiple parties in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

128.    Shareholder's false representations in violation of the Lanham Act have caused damage to CCBN in an undetermined amount to be proven at trial.

129.    Shareholder's false representations were made in interstate commerce, including by means of interstate wires.

## THIRD COUNTERCLAIM FOR UNFAIR COMPETITION

130.    CCBN repeats and realleges the allegations in Paragraphs 81 through 126 above as if fully set forth herein.

131.    Shareholder has violated MGLA 93A §§ 2, 11 by knowingly, unfairly, and unethically making false representations, within the Commonwealth of Massachusetts, to induce CCBN to grant Shareholder access to CCBN's website.

132.    As a result of Shareholder's unfair competition, CCBN has suffered and continues to suffer damages in an amount to be proven at trial.

### FOURTH COUNTERCLAIM FOR FRAUD

133.    CCBN repeats and realleges the allegations in Paragraphs 81 through 129 above as if fully set forth herein.

134.    Shareholder has made false representations regarding its name and affiliation with knowledge of the falsity of such representations for purposes of inducing CCBN to grant Shareholder access to its websites.

135.    CCBN has relied on Shareholder's false representations to its detriment, causing CCBN damage in an undetermined amount to be proven at trial.

### FIFTH COUNTERCLAIM FOR TRESPASS

136.    CCBN repeats and realleges the allegations in Paragraphs 81 through 132 above as if fully set forth herein.

137.    Shareholder has intentionally and without proper authorization used and intermeddled with CCBN's computer servers.

138.    In using and intermeddling with CCBN's servers, Shareholder has caused CCBN damages in an amount to be proven at trial.

WHEREFORE, defendants pray that judgment be entered against Shareholder as follows:

(a)    Dismissing the First Amended Complaint with prejudice;

(b)    Awarding defendants their costs and expenses in defending this action, including reasonable attorneys' fees;

(c)    Awarding CCBN damages, in an amount to be determined at trial, including punitive damages and reasonable attorneys' fees;

(d)    Awarding CCBN treble damages, as provided by MGLA 93A § 11, and any other applicable law; and

(e)    Granting defendants such other and further relief as is just and proper.

Dated:  April 29, 2005

GOODWIN PROCTER LLP

/s/ David M. Moss

Anthony S. Fiotto (BBO # 558089)
David M. Moss (BBO # 649707)
Karin M. Bell (BBO #654242)
Exchange Place
Boston, Massachusetts  02109
617-570-1000

Attorneys for CCBN.com, Inc. and
The Thomson Corporation.

LIBA/1533672.4

24