# EXHIBIT C

# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

RUTH T. DOWLING
(617) 239-0657
rdowlinig@palmerdodge.com

**BY FAX AND U. S. MAIL**

September 28, 2004

Anthony S. Fiotto, Esq.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109

Re:    *Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al
Civil Action No. 04-10535-PBS*

Dear Tony:

I write to follow up on our September 24, 2004 telephone discussion concerning the status of discovery. As I indicated by phone, Shareholder.com is eager to move the discovery process forward. To that end, I wanted to summarize our agreements reached by phone and also to respond in full to the defendants' concerns with certain of Shareholder.com's stated objections to defendants' document requests.

*The Protective Order*

On September 17, 2004, we sent you our modest changes to the proposed protective order. I understood that you intended to discuss those changes with your client and get back to me with any issues early this week. We agreed that as soon as the protective order is signed, we would consider it in effect (rather than waiting for the Court's endorsement).

*Defendants' Responses to Shareholder.com's Interrogatories*

Interrogatory 1: I believe that we resolved the defendants' objections to this interrogatory given my explanation of our use of the term "accessed" and our resolution of the protective order issues. Thus, once we have executed the protective order, we expect to receive a full response to this interrogatory. I should note that Shareholder.com does not agree that any of the information requested is confidential but we are agreeing to put a protective order in place in order to expedite discovery.

Interrogatory 2: You requested that I provide a definition for the term "made use of" used in the interrogatory. As I indicated in our discussion, we are relying on the plain meaning of that phrase. We are requiring that the defendants identify any and all people who made use of the information

Anthony S. Fiotto, Esq.
September 28, 2004
Page 2

accessed from Shareholder.com's internal communication and computer systems and describe the use(s). Such "uses" include but are not limited to downloading, printing, storing, sharing or communicating with others, discussing, marketing or the commercial uses that defendants have described in their response. In other words, if the information was used in any way, we would like a full description. With this further explanation, we expect to receive a full response to this interrogatory.

Interrogatory 3: You represented that defendants would produce documents from which all of the information requested in this interrogatory could be gleaned.

Interrogatory 4: We discussed the relevance of the information requested in this interrogatory. Specifically, I indicated that a description of the investigation is relevant because it may reveal (1) the nature of the misconduct and the responsible parties; and (2) CCBN's response, if any, to that misconduct. My understanding is that with that further explanation, defendants do not intend to continue to pursue the relevance objection. We discussed the defendants' privilege objection and agreed that defendants would provide us with information about the nature of the privilege being asserted including but not limited to the name of the lawyers who conducted the investigation, who the lawyers were representing, when the investigation was conducted and who was involved in any "privileged" communications. We will need this information in order to pursue a motion to compel. You also agreed to check on whether Jeff Parker conducted an investigation after being alerted to the misconduct in June 2002. To the extent he did so on his own, it would not be protected. The defendants' response also indicates that "most" of the investigation was conducted by or at the request of counsel. We are entitled immediately to a response regarding the part of the investigation that defendants' are conceding was not privileged.

Interrogatory 5: Given our resolution of the protective order issue, we expect that defendants will fully respond to this request. The only objection is to the interrogatory's request that defendants describe the naming conventions for all computers used by CCBN employees and agents. Defendants indicated that they should not be required to provide the names of each computer but rather Shareholder.com should be required to identify the suspect computers. Shareholder.com has identified the suspect computers (MORPEUR and Sales 1). We do not seek the names of each computer at this time. Rather, we seek a description of the method used by CCBN to name its computers (e.g, user last name, user password or some other convention).

Interrogatory 6: We discussed defendants' relevance objection and I explained how any such communications concerning unauthorized accessing of Shareholder.com's systems were clearly relevant and discoverable. We are entitled to know who at CCBN discussed the unauthorized access, how widespread the knowledge was of the unauthorized access, and what was known and communicated. You indicated that this might be an overly burdensome request (although there is no stated objection to that effect) and that you would check with your clients about the number of potential discussions covered. You also agreed to determine whether there are communications with Jeff Parker that are missing from this response. It is our understanding that Ed deCastro and Jeff Parker spoke at least twice in June 2002 concerning the unauthorized access. Only one conversation from June 2002 is reported in the response.

Anthony S. Fiotto, Esq.
September 28, 2004
Page 3

Interrogatory 7: I believe we resolved each of the objections to this interrogatory.

***Defendants' Responses to Shareholder.com's Document Requests***

As I indicated by phone, Shareholder.com reserves its right to challenge defendants' objections to the document responses until it has reviewed the production. In many instances, defendants object to the requests but then agree to provide responsive documents and it is not possible to determine whether defendants intend to withhold some category of requested documents.

As to many of the requests, defendants have objected to providing documents after October 31, 2003, the last date on which Shareholder.com has information indicating that the CCBN intruders attempted to gain access to its system. CCBN is in the best position to know when the attempts at illegal access ended. To the extent CCBN knows that the conduct continued after October 31, 2003, we are entitled to documents during that later period.

Request 21: As we discussed, the clients listed in this interrogatory are clients whose information was accessed by the CCBN intruder(s). We are entitled to determine whether or not the information was used by CCBN when communicating with the clients. You agreed that you would discuss with your clients whether they intend to maintain the objection.

Request 25: I explained that these documents are relevant to our claim that Thomson is now responsible for the bad acts of CCBN. You agreed you would discuss with your clients whether they intend to maintain the objection.

***Shareholder.com's Responses to Defendants' Document Requests***

Request No. 12: This request seeks all documents concerning any alleged intrusions into Shareholder.com's computers by third parties. Shareholder.com objected on relevance grounds. Defendants argue that if the evidence were to show that Shareholder.com's systems were frequently accessed by third parties, this would be relevant to damages and would also demonstrate that such intrusions were a common practice in the industry. Shareholder.com disagrees with these arguments but, in the interest of avoiding a discovery dispute, will agree to produce any documents concerning any third party intrusions of which it has become aware.

Request No. 20: I believe that you agreed that defendants would re-define the category of documents it seeks. In the meantime, Shareholder.com is collecting the documents it has agreed to provide.

Request No. 21: Shareholder.com stands by its objection to this request.

Request No. 22: Shareholder.com is collecting and will produce complaints or similar correspondence from the customers or clients of Shareholder whose information was illegally accessed by CCBN.

Anthony S. Fiotto, Esq.
September 28, 2004
Page 4

Request No. 26:  Shareholder.com will produce any accounting policies or procedures on the requested topics.

Request No. 31:  Shareholder.com agrees to broaden its response to include competitive analyses of any competitor within the relevant time period.

*Timing of Discovery Events*

As we discussed, we have collected the bulk of the responsive documents and are processing them in-house.  Although defendants' document responses were technically due before ours, we propose that we pick a date for a simultaneous exchange of documents.  Shareholder.com proposes that we conduct the exchange on October 8, 2004.  We also request that defendants provide us with supplemental interrogatory responses by that date.

I look forward to hearing from you on these issues.


Very truly yours,

Ruth T. Dowling

cc:    Ronald H. Gruner

# GOODWIN | PROCTER

Anthony S. Fiotto          Goodwin Procter LLP
617.570.1324               Counsellors at Law
afiotto@                   Exchange Place
goodwinprocter.com         Boston, MA 02109
                           T: 617.570.1000
                           F: 617.523.1231

October 6, 2004


**By Facsimile**

Ruth T. Dowling, Esq.
Palmer & Dodge LLP
111 Huntington Avenue
Prudential Center
Boston, MA 02199-7613

> **Re:    Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al**
> **Civil Action No. 04-cv-10535-PBS**

Dear Ruth:

I have your September 28, 2004 letter. I write to memorialize certain agreements, not mentioned in your letter, that I believe we reached during the phone conference last week. This letter also provides responses on behalf of defendants CCBN.com and The Thomson Corporation to the open issues discussed during our call.

### Protective Order

During our phone conference, I raised a number of concerns with plaintiffs' proposed changes to the protective order, and we agreed on the following changes. First, we agreed to strike the word "recipients" from paragraph 5(d). Second, we agreed to add a reference to paragraph 5(d) in paragraph 7. Third, we agreed to delete paragraph 16 from the protective order and to rely on common law in the event of inadvertent production. Fourth, we agreed to your new paragraph 19, and also agreed to additional language requiring a party to give advance notice to the opposing party before disclosing protected information on the grounds that the party believes that information has entered the public domain. Finally, we agreed to add a new paragraph 24 providing that the Protective Order will be effective as if entered by the Court on the day it is signed by the parties.

The only open issue regarding the protective order concerned plaintiffs' addition of paragraph 4(c), permitting disclosure of Confidential Information to three party representatives. We continue to believe that three representatives creates too great a risk of inadvertent use or disclosure beyond that contemplated by the Protective Order. We propose that disclosure should be limited to two persons, including in-house counsel, and that the identities of the individuals be

GOODWIN | PROCTER

Ruth T. Dowling, Esq.
October 6, 2004
Page 2

disclosed in advance so that the non-producing party has an opportunity to object to the disclosure. You had said during the call that you would take this issue up with your client but your letter omits any reference to it.

We will forward a revised protective order that reflects our agreements and includes our proposed change to paragraph 4(c).

**<u>Plaintiff's First Set of Interrogatories</u>**

Interrogatory No. 1. You clarified during the conference that the phrase "accessed Shareholder's internal communication and computer systems" is intended to refer only to the password-protected computer systems described in the Amended Complaint. With this clarification, we will withdraw our vagueness objection to the interrogatory.

Interrogatory No. 2. We objected to the use of the phrase "made use of" on vagueness grounds. The clarification of the phrase contained in your letter is acceptable and we will provide non-privileged information responsive to this interrogatory.

Interrogatory No. 4. Contrary to your letter, we did not concede the relevance of CCBN's investigation of the alleged intrusions into Shareholder's computer systems. We will nonetheless supplement our response to include any non-privileged information responsive to this interrogatory and, to the extent we assert a privilege, we will identify the counsel who conducted or directed any investigation and the nature of the privilege.

Interrogatory No. 5. Even as narrowed by your letter, the interrogatory is still unduly burdensome and overbroad. If the only computers for which Shareholder seeks naming conventions are MORPEUR and Sales 1, and such computers existed at CCBN, then CCBN will identify how the MORPEUR and Sales 1 computers were named. CCBN continues to object to providing a comprehensive history of all naming conventions throughout the relevant time period regardless of whether such computers are implicated in this case.

Interrogatory No. 6. CCBN continues to believe that asking CCBN to identify every communication about any alleged access would capture irrelevant communications and would be overly broad. In any event, our understanding from your letter is that you now limit Interrogatory 6 to the same information you request in Interrogatory No. 2 and we will respond accordingly.

Interrogatory No. 7. Contrary to your letter, we did not resolve our objections to this interrogatory, but instead said that we would reconsider our objection. Having done so, we continue to believe that the nature of Thomson's investigation is irrelevant to this dispute and nonetheless was conducted by counsel and is therefore privileged.

**GOODWIN | PROCTER**

Ruth T. Dowling, Esq.
October 6, 2004
Page 3

## Plaintiff's First Set of Document Requests

Document Request No. 13.  We continue to believe that this request is, among other things, overly broad and unduly burdensome.  This is particularly so given that you admitted during our call that many of the clients you list in Document Request Number 19 did not become clients of CCBN.  Accordingly, we view your request concerning all such clients as nothing more than an unauthorized fishing expedition.  Please identify all clients that you believe departed Shareholder and became CCBN clients as a result of CCBN's allegedly unauthorized access and CCBN will reconsider its objections.  Particularly in light of our agreement to produce marketing materials that compare CCBN's services to Shareholder's services, there is simply no justification for such a broad expansion of requested client communications.

Document Request No. 16.  Defendants objected to this request on the ground that, among other things, it is overly broad and unduly burdensome.  You agreed to attempt to narrow this request, but your letter makes no mention of this.  We will await your instructions on how you intend to proceed.

Document Request No. 25.  We are discussing with our client whether we will withdraw or narrow this objection and will respond shortly.

## Defendants' First Set of Document Requests

Document Request No. 2.  During the call, we asked for a clarification of Shareholder's response that it would produce documents on a broader scale than with respect to clients that CCBN allegedly "pilfered."  We will review the documents produced by Shareholder before commenting further on your response to this request.

Document Request No. 8.  You mentioned that Ken Smith may no longer work at Shareholder, and that the request is therefore irrelevant.  If you will confirm Mr. Smith's employment status, we will give your objection further consideration.

Document Request No. 20.  We agreed that CCBN will consider narrowing the request.  Accordingly, CCBN amends its request to read as follows: "All documents concerning materials provided or presented to Shareholder's Board of Directors relating to Shareholder's (a) business and competitive strategies, (b) customers listed in Shareholder's Document Request number 21 (or the subset of clients Shareholder identifies as having lost to CCBN), (c) financial and market strengths and weaknesses, including documents relating to client departures or attrition, (d) pricing, and (e) competitive advantages and disadvantages."

Document Request No. 21.  Shareholder's objection to this request is not well taken.  For one thing, the controversy concerning Shareholder's disparagement of a CCBN-sponsored book

# GOODWIN | PROCTER

Ruth T. Dowling, Esq.
October 6, 2004
Page 4

through a phony "book review" posted on Amazon.com was part and parcel of CCBN's complaints against Shareholder at the time Jeff Parker and Ed DeCastro discussed the alleged entry into their respective company's computer systems. Moreover, the Amazon.com incident is relevant to CCBN's counterclaim under the Lanham Act for Shareholder's disparagement of CCBN. We request that Shareholder reconsider its objection to this request.

Document Request No. 25. Shareholder objected to producing documents responsive to this request until after CCBN produced its documents. As we explained on the call, Shareholder should produce now whatever responsive documents it has, and Shareholder is of course free to supplement its production consistent with the Federal Rules following CCBN's document production. You agreed with this approach, and we expect to receive at the time of our initial document exchange all responsive documents currently identifiable by Shareholder.

**Timing of Discovery Events and Mediation.**

You have not yet confirmed that we are proceeding with a mediation on October 27 (as we would propose). Obviously, the date of the mediation will have some bearing on when the parties should exchange information. We hope to be in a position to begin exchanging documents sometime next week, assuming we can resolve the protective order issues.

Very truly yours,

Anthony S. Fiotto

ASF:ji

# PALMER & DODGE LLP

### 111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
### BOSTON, MA 02199-7613

RUTH T. DOWLING
(617) 239-0657
rdowlinig@palmerdodge.com

**BY FAX AND U. S. MAIL**

October 8, 2004

Anthony S. Fiotto, Esq.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109

**Re:**   ***Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al
Civil Action No. 04-10535-PBS***

Dear Tony:

Thank you for your letter dated October 6, 2004 concerning the parties' discovery disputes. I understand that we have agreed to begin a rolling production of documents on October 14, 2004. Since we have reached agreement on the terms of the protective order, there is no need for me to address that portion of your letter. In addition, it appears that we have reached agreement on many of the open discovery issues but some significant disputes remain which are addressed below.

As a general matter, we note that the defendants have objected to several interrogatories and document requests on the grounds that the requests are too broad while simultaneously refusing to provide basic information about the individuals involved in the misconduct, the scope of their use of Shareholder's information, and the defendants' response to Shareholder's complaints about the intrusions. Given the surreptitious nature of the actions that occurred, the defendants are currently in a better position to know the full scope of the misconduct. If the defendants are forthcoming with information concerning the parties responsible for the intrusions and the scope of their activities, the number of discovery disputes will be significantly reduced. Such an approach will also decrease both parties' costs and avoid taxing the Court with unnecessary motion practice.

### Shareholder's First Set of Interrogatories

*Interrogatory No. 4*:  This interrogatory requests information concerning CCBN's investigation, if any, of the alleged intrusions into Shareholder's computer systems. Your letter indicates that you may continue to assert a privilege objection to some portion of the investigation. To the extent the defendants assert a privilege, please identify the attorneys involved in the investigation, the date of the investigation and the parties with whom the attorneys communicated during the investigation. We will challenge the assertion of a privilege and/or seek to exclude any testimony at trial by defendants regarding any investigation conducted in response to Shareholder's complaints.

Anthony S. Fiotto, Esq.
October 8, 2004
Page 2

*Interrogatory No. 5*: This interrogatory seeks CCBN's naming conventions for its computers. You have indicated that the request is overbroad and unduly burdensome. Presumably, CCBN has only implemented a small number of naming conventions for its computers (e.g. user name or function) and, as a result, we are perplexed by the claim that this is burdensome and overly broad. If CCBN would like to tell us the names of the computers that were used to conduct the intrusions, that would be acceptable to us. However, CCBN appears eager to continue to keep that information secret. As a result, we must seek the naming conventions used with all computers. We will challenge the objections should CCBN refuse to supplement its response to provide the naming conventions.

*Interrogatory No. 6*: We believe we are entitled to a description of every communication concerning the alleged intrusions. Despite the suggestion in your letter, we have not limited this request in any way. Rather, as indicated in my letter, "we are entitled to know who at CCBN discussed the unauthorized access, how widespread the knowledge was of the unauthorized access, and what was known and communicated." Apparently the defendants have dropped their objection on burden and instead claim relevance and over breadth. We disagree with these objections. Every communication about the intrusions is relevant to our claims because it will give us information concerning the scope of the intrusions, the knowledge of the intrusions within CCBN, and CCBN's response, if any, to Shareholder's complaints about the intrusions. We will challenge this objection in a motion if not provided a full and complete response.

*Interrogatory No. 7*: This requests seeks information concerning Thomson's investigation of the intrusions. The information learned by Thomson is relevant. It may well tell us who was responsible, how Shareholder's information was used and whether CCBN's response was adequate. To the extent defendants will assert a privilege, please provide the nature of the privilege, the identity of the counsel who undertook the investigation, the date of the investigation, whether there are documents concerning the investigation, and who was involved in the investigation in addition to counsel. We intend to challenge this objection.

## Shareholder's First Set of Document Requests

*Document Request No. 13*: We believe that we are entitled to review all of CCBN's communications with its clients and marketing pitches to those clients from 2001 to the present. It is our belief that CCBN used the information taken during the intrusions not just to steal current clients of Shareholder but also to win new clients. We will reserve our right to insist on the production of all documents responsive to our request. Document Request No. 19 contains a list of a handful of companies whose information was accessed by CCBN. The list of clients we believe CCBN acquired as a result of the intrusions is much larger. At present, we will agree to limit Document Request No. 13 to the list of clients we believe CCBN acquired as a result of the intrusions. That list, in preliminary form, is attached at Tab 1. We assume the list will continue to grow as we obtain our requested discovery from the defendants. Once we review the defendants' production with respect to the clients listed in the attached document, we will determine whether further production is necessary.

*Document Request No. 16*: We are considering whether we will narrow this request.

Anthony S. Fiotto, Esq.
October 8, 2004
Page 3

**Defendants' First Set of Document Requests**

*Document Request No. 8*: We have objected to providing information on Ken Smith on several grounds not simply those mentioned in your letter. Mr. Smith is not mentioned in the counterclaims and he left Shareholder more than a year ago.

*Document Request No. 20*: We agree to provide documents responsive to your narrowed request.

*Document Request No. 21*: We are considering your request.

*Document Request No. 25*: We agree to produce the documents we have responsive to this request but expect to supplement extensively.

*Timing of Discovery Events*

We request that the defendants supplement their interrogatory responses by October 18, 2004 and that we talk on that date about the schedule for the Rule 30(b)(6) depositions and the deposition of Jeff Parker. Let me know if that is acceptable. I think it is unlikely that we will get the depositions completed before the mediation scheduled for the 27th and that we should seek alternative dates in mid-November.

I look forward to hearing from you on these issues.

Very truly yours,

*Ruth Dowling*

Ruth T. Dowling

cc:     Ronald H. Gruner

**CompanyName**
Abbott Laboratories
Adaptec, Inc.
Administaff
Aegis Realty, Inc.
AEGON N.V.
Align Technology, Inc.
Ambac Financial Group, Inc.
American International Group, Inc.
American Italian Pasta Company
American Mortgage Acceptance Company
AmerUs Group Co.
Amgen Inc.
AOL
Applied Materials, Inc.
Arch Chemicals, Inc.
Armstrong Industries
Avista Corporation
Avon Products Inc.
Barnes Group Inc.
Baxter International Inc.
BEA Systems, Inc.
Bob Evans
Burlington Resources Inc.
Career Education Corporation
Celera Genomics
Charter Municipal Mortgage Acceptance Company
Chartered Semiconductor Manufacturing
Checkpoint Systems, Inc.
CIENA Corporation
Collateral Therapeutics, Inc.
Comcast Corporation
Comcast Corporation (Media)
Conectiv
Coorstek
Crown American Realty Trust
Eastman Chemical Company
Energy Partners Ltd
Exabyte Corporation
Expedia, Inc. (SBG Investor Relations)
Federal Realty Investment Trust
FPL Group, Inc.
Goodyear Tire
Health Care Property Investors, Inc.
Hickory Tech Corporation
Hollywood Entertainment Corporation
Homestore.com, Inc.
Horizon Medical Products, Inc.
Hughes Electronics
IHOP Corporation
Informatica Corporation
Integrated Device Technology, Inc.

Intel Corp.
Internap Network Services Corporation
JLG Industries, Inc.
John Hancock Financial Services, Inc.
Kos Pharmaceuticals, Inc.
Kronos Incorporated
Lexmark International, Inc.
Lightbridge, Inc.
Lucent Technologies
Manufacturers' Services Ltd.
Mediabay, Inc.
MedImmune, Inc.
Medscape
Mercury Interactive Corporation
Monolithic System Technology, Inc.
Myriad Genetics, Inc.
Nordstrom, Inc.
Northrop Grumman Corporation
Oakley Inc.
Office Depot
Office Depot
OM Group Inc
OneSource Information Services, Inc.
Onyx Software Corporation
Orient-Express Hotels Ltd.
PacifiCare Health Systems, Inc.
PDS Gaming Corporation
Pioneer Natural Resources Company
Progress Energy
Provant, Inc.
QRS Corporation
Reckson Associates Realty Corporation
Resmed, Inc.
RJ Reynolds Tobacco Holdings, Inc.*
Saba Software Inc.
Safeway Inc.
Schlumberger Limited
SciClone Pharmaceuticals, Inc.
Sea Containers Services LTD
StanCorp Financial Group
State Street Corporation
Switchboard Incorporated
Sylvan Learning Systems, Inc.
Taubman
Tejon Ranch Company
The Boston Beer Company, Inc.
The Cooper Companies, Inc.
The First American Corporation
The General Chemical Group Inc.
The Manitowoc Company
The Reynolds & Reynolds Company
Toys "R" Us

Tweeter Home Entertainment Group, Inc
UniSource Energy Corporation
UST Inc.
Valspar Corporation
VaxGen, Inc.
Washington Group International, Inc.
Washington Real Estate Investment Trust
WGL Holdings, Inc.

**GOODWIN | PROCTER**

David M. Moss
617.570.1794
dmoss@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

October 26, 2004

**By Facsimile**

Ruth T. Dowling, Esq.
Palmer & Dodge LLP
111 Huntington Avenue
Prudential Center
Boston, MA 02199-7613

Re:    **Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al**
       **Civil Action No. 04-cv-10535-PBS**

Dear Ruth:

This responds to your October 8, 2004 letter concerning certain outstanding discovery issues.

**Plaintiff's First Set of Interrogatories**

Interrogatory No. 4.  As stated in Tony's October 6, 2004 letter, to the extent we assert any privilege in response to this interrogatory, we will "identify the counsel who conducted or directed any investigation and the nature of the privilege." We know of no rule of law that requires more.  If you are aware of one, please provide that information as soon as possible and we will reconsider our position.

Interrogatory No. 5.  We stand by our objection to providing the naming convention used in connection with every single computer used at CCBN.  To the extent plaintiff can demonstrate the relevance of specific computers, and CCBN can determine whether those computers existed at CCBN, then we will agree to identify how those computers were named.

Interrogatory No. 6.  As an initial matter, and contrary to your letter, we have not "dropped" our objection to this interrogatory based on undue burden (which objection, incidentally, is contained in the General Objections to the interrogatories).  As we explained during our phone conference, to require defendants to uncover every single "water cooler" conversation that may have had anything to do with the issues in this case is overly broad and unduly burdensome.  We had understood your previous letter to narrow the request to communications about improper access. So limited, we will provide non-privileged information responsive to this request.

GOODWIN | PROCTER

Ruth T. Dowling, Esq.
October 26, 2004
Page 2

Interrogatory No. 7.  We stand by the position set forth in Tony's October 6, 2004 letter.

**Plaintiff's First Set of Document Requests**

Document Request No. 13.  Your most recent letter attaches a list of 110 customers that you maintain are clients that plaintiffs "believe CCBN acquired as a result of the intrusion."  We were surprised that Shareholder has apparently expanded the number of relevant customers from 22 (identified elsewhere in the document requests) to 110.  As your letter does not state the basis for your belief that all 110 customers were acquired by CCBN as a result of the alleged intrusions, and without evidence demonstrating a connection between the alleged intrusions and the conclusion that CCBN acquired each client as a result of the intrusions, we stand by our objection to this request as overly broad and unduly burdensome.  And even if each of these clients were obtained by CCBN as a result of the alleged intrusions, the request would still be overbroad, as CCBN and its clients engage in wide-ranging communications on dozens of matters that would be neither relevant to this case nor reasonably calculated to lead to the discovery of admissible evidence.

* * * * *

In response to your e-mail of this morning, we had previously agreed that the document productions would begin on October 14 and continue on a rolling basis.  We are in the process of assembling some additional documents, and we hope to complete our production by next week.

We are certainly willing to discuss mutually agreeable dates for the depositions, including the 30(b)(6) deposition of Shareholder.  We are consulting with our clients on available dates—please let us know when Shareholder's witness is available.  Also, we have not seen a deposition subpoena or notice for Jeff Parker.  If there is one outstanding, please send us a copy.

Very truly yours,

David M. Moss

DMM:ji

cc:     Anthony S. Fiotto, Esq.

# PALMER & DODGE LLP

### 111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
### BOSTON, MA 02199-7613

MELISSA C. ALLISON
617.239.0522
mallison@palmerdodge.com

February 3, 2005

**By Facsimile and First Class Mail**

David M. Moss
Goodwin Procter LLP
Exchange Place
Boston, MA  02109

Re:    ***Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al***
          ***Civil Action No. 04-10535-PBS***

Dear David:

I write to highlight additional deficiencies in defendants' document production and to request a discovery conference pursuant to local rule 37.1. Shortly before the rolling production of documents was scheduled to begin, Ruth Dowling and Tony Fiotto exchanged letters concerning defendants' objections to Shareholder.com's First Set of Document Requests. At that time, defendants' refusal to produce any documents responsive to Shareholder's document request number 13 became the principal point of contention, and Shareholder has since filed a motion to compel documents responsive to that request. However, Shareholder also reserved its right to address further deficiencies in the defendants' responses after Shareholder had an opportunity to review the documents. Having done so, Shareholder reiterates some earlier concerns and requests that defendants supplement their responses to the following requests.

The defendants have produced very few documents responsive to requests concerning the intruders access into Shareholder's computer system. Please confirm that you have produced all non-privileged documents responsive to requests numbers 1 through 6, 12, and 23.

As to many requests, defendants objected to producing documents concerning access after October 31, 2003, the last date on which Shareholder has information indicating that the intruders attempted to gain access to its system. This limitation is inappropriate because CCBN, not Shareholder, is in the best position to know when the intruders' efforts to illegally access Shareholder's system ended. Therefore, Shareholder is entitled to receive all documents concerning access of Shareholder's systems after October 31, 2003. If no such responsive documents exist, please confirm that in writing.

David M. Moss
February 3, 2005
Page 2

Request number 14 seeks documents sufficient to identify defendants' sales and marketing efforts from the intrusion date to the present. Defendants responded that they would produce a "sample" of documents responsive to this request, and subsequently produced very few documents. We do not believe that the handful of documents produced sufficiently encompass the defendants' sales and marketing efforts from 2001 to the present. Contrary to the defendants' relevance objection, information about the defendants' efforts to win clients following the intrusions goes to the heart of Shareholder's claims. Further, the request is neither overly broad nor unduly burdensome. Shareholder has not requested production of every single marketing or sales document created by the defendants; rather, the request is limited to documents sufficient to provide a complete picture of the defendants' sales and marketing efforts during the relevant time period. The "sample" of documents produced by the defendants does not satisfy this request. Accordingly, Shareholder requests that the defendants supplement their response. Specifically, Shareholder seeks any internal and external sales and marketing materials that reference Shareholder and documents that describe promotional and sales efforts aimed at Shareholder clients.

Request number 16 seeks documents concerning the sales or marketing of additional services to existing clients between the intrusion date and September 30, 2002. Through this request we seek documents describing sales and marketing campaigns focused on growing the business of active clients rather than those that were aimed at potential new clients. None of defendants' objections to this request are warranted. It is not overly broad. In fact, it seeks a highly relevant, discrete set of documents generated within a reasonably limited time period. Further, "additional services" is a clearly defined term within the context of the request. Shareholder is entitled to documents that may reflect defendants' exploitation of the information accessed to further profit from existing clients.

Defendants have not produced any documents concerning its data or document retention policies pursuant to requests 11 and 22. Please advise whether defendants have any documents responsive to this request.

Request 25 concerns documents relevant to our claim that Thomson is now responsible for the bad acts of CCBN. The defendants refused to produce any documents responsive to this request. During the earlier discussions between Tony and Ruth, Tony agreed to determine whether your clients intended to maintain an objection. Absent a stipulation from Thomson that it now stands in the shoes of CCBN, we are entitled to these documents. In addition, the defendants have produced no documents responsive to request 24 concerning the capitalization of CCBN. Please inform us whether you intend to produce documents responsive to these requests.

Shareholder has made every effort to fully respond to the defendants' document requests. We anticipate that the defendants will be equally cooperative. Shareholder reserves the right to raise

David M. Moss
February 3, 2005
Page 3

further objections to defendants' document production at a later time. Please let me know your availability on Monday or Tuesday of next week for a discovery conference.

Sincerely,

Melissa C. Allison

cc:    Ron Gruner



# PALMER & DODGE LLP

### 111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
### BOSTON, MA 02199-7613

MELISSA C. ALLISON
617.239.0522
mallison@palmerdodge.com

March 7, 2005

**By Facsimile and First Class Mail**

David M. Moss
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Re:    ***Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al.***
       ***Civil Action No. 04-10535-PBS***

Dear David:

I write to follow up on our February 22, 2005 telephone call concerning Shareholder.com's request for a supplemental response to its First Set of Document Requests. During our conversation, you confirmed that the defendants have produced all non-privileged documents responsive to Requests 1 through 6, 12 and 23. You also confirmed that all non-privileged documents concerning CCBN's access of Shareholder.com's systems after October 31, 2003 have been produced. Finally, you represented that defendants have no documents responsive to Requests 11 and 22 concerning data and document retention policies apart from the disaster recovery policies already produced.

You planned to speak with your clients to assure that they had produced all internal and external marketing materials referencing Shareholder.com and documents that describe promotional and sales efforts aimed at Shareholder.com clients in response to Request 14. You also agreed to confirm that all non-privileged documents responsive to Request 17 have been produced. I await your confirmation with regard to these requests.

In addition, you asked that Shareholder.com narrow or specify the scope several requests. We will limit the scope of Requests 14 and 16 concerning sales or marketing efforts made toward potential clients and existing clients, respectively, to (1) internal and external marketing materials referencing Shareholder.com and documents that describe promotional and sales efforts aimed at Shareholder.com clients and (2) all proposals CCBN made to potential clients and existing clients (such as documents produced by Shareholder.com labeled SHRHLDR 003914 and 003975.)

You also asked that we specify types of documents that would be responsive to request 24, which seeks documents sufficient to identify the capitalization of CCBN, on a quarterly basis, from January 2003 to the present. We believe this request is well-defined, but if guidance is required, documents such as quarterly financial reports typically provide such information. Finally, you sought

MAR 07 2005 11:39 FR PALMER & DODGE          TO 916175231231     P.03

David M. Moss
March 7, 2005
Page 2

clarification of request 25 concerning plans or strategy for the integration of CCBN's operations into Thomson following the acquisition. As I indicated during our conversation, this request concerns management-level plans and strategy, including, but not limited to, documents concerning board of director discussions about the post-acquisition integration of CCBN.com into Thomson and business and financial plans.

I trust this responds to your questions. We would appreciate the prompt production of supplemental documents no later than March 21, 2005. Please contact me if this presents a problem.

Sincerely,

Melissa C. Allison

MAR 07 2005 11:38 FR PALMER & DODGE                TO 916175231231        P.01



# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

MAR 7 AM11:40

# FAX

sending 3 pages (including cover sheet)

| DATE | March 7, 2005 | SENDER ID # | 1468 |
|------|---------------|-------------|------|
| FROM | Melissa C. Allison | CLIENT # | 23393-1 |

DIRECT DIAL #     617.239.0522

| NAME | COMPANY | PHONE # | FAX # |
|------|---------|---------|-------|
| David M. Moss | | (617) 570-1794 | (617) 523-1231 |

COMMENTS:

NOTICE OF CONFIDENTIALITY: This transmission is intended only for the addressee(s) listed above, and may contain information that is confidential and privileged. If you are not the addressee, any use, disclosure, copying or communication of the contents of this transmission may be subject to legal restrictions or sanctions. If this message was received in error, please telephone us immediately collect at 617.239.0122 and we will arrange for the return to us of this message at no cost to you.

This fax was transmitted via a group 3 machine.                                                    REV 10/01

**For Fax Problems, Please Call:617.239.0122**

# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

MELISSA C. ALLISON
DIRECT DIAL: 617.239.0522
DIRECT FAX: 617.227.4420
mallison@palmerdodge.com

September 23, 2005

**By Facsimile and First Class Mail**

Jennifer L. Chunias
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Re:    *Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al.*
       Civil Action No. 04-10535-PBS

Dear Jennifer:

I write to address numerous deficiencies in the defendants' discovery responses. All but a few of these matters were addressed at length months ago in letters between counsel, which are referenced below, and in many instances counsel for CCBN/Thomson agreed to provide responses to Shareholder's requests or to inquire further with your client. However, we have received either no response or an incomplete response to several of these requests. Given the rapidly approaching fact discovery deadline and your long overdue responses, we would like to resolve these issues immediately. Accordingly, please contact me on Monday to discuss the issues outlined below.

*Defendants' Response to Shareholder.com's Document Requests*

Requests 1 & 23
These requests seek documents concerning defendants' accessing of Shareholder's internal communication and computer systems and any communications between CCBN and Thomson personnel concerning CCBN's accessing of Shareholder's internal systems. Defendants agreed to produce documents responsive to these requests, yet as we approach the fact discovery deadline, there are several documents which are conspicuously absent from defendants' production. Defendants have not produced (1) disclosures made to Thomson by CCBN or its attorneys in connection with Shareholder's claims prior to the closing of Thomson's acquisition of CCBN, (2) communications between CCBN and Thomson, including communications between CCBN and Thomson's attorneys, concerning Shareholder's claims, (3) communications between Thomson and Robert Adler concerning the potential liability arising from Shareholder's claims, (4) documents concerning any insurance acquired by defendants potentially covering Shareholder's claims and (5) documents concerning the indemnification provision, including the negotiation of that provision, and any assertion of rights under the indemnification provision, including the communications identified

Jennifer L. Chunias
September 23, 2005
Page 2

in Roland Beaulieu's deposition transcript pp. 48, 65, 68 and 77. These documents are unquestionably relevant to Thomson's knowledge of and liability for Shareholder's claims and are not protected by any privilege. Please produce all such documents immediately.

In addition, please confirm that you have searched for and produced all non-identical copies, drafts or electronic copies of the undated memorandum from Robert Adler to Jeffrey Parker Bates-labeled 000001.

Request 28
This request seeks documents sufficient to identify CCBN products and services purchased by each client listed in Appendix A from 1997 to the present. You have produced no information for several of the listed clients, and the information you have produced is limited to 2001-2003. Information about products and services purchased from 1997 to the present is relevant to calculating damages based on CCBN's ill-gotten gains. Please let us know immediately whether you intend to produce further responsive documents.

Request 29
This request seeks documents sufficient to identify all improvements and enhancements made to CCBN's products between 2000 to the present. You agreed to produce documents such as development reports and marketing materials that reflect improvements or enhancements to CCBN's products and services (see May 5, 2005 letter from D. Moss to R. Dowling). No such documents for the years 2000 and 2001 have been produced. Please produce these documents and confirm that you have searched for and produced all such documents for 2000 – 2003.

Request 31
This request seeks documents concerning any discounting, price incentive and/or service bundling programs offered to potential CCBN clients and the dates for which each was in effect, between 2000 to the present. You agreed to produce documents sufficient to identify such price incentive and service bundling programs, (see May 5, 2005 letter from D. Moss to R. Dowling), but no documents have been produced. Please produce responsive documents immediately and confirm that all responsive documents have been produced.

Request 32
This request seeks documents concerning clients' reasons for terminating CCBN's products or services between 1997 to the present. You agreed to produce only those documents concerning competitive wins and losses (see May 5, 2005 letter from D. Moss to R. Dowling.) As an initial matter, the document production concerning competitive wins and losses is incomplete. While the production includes such documents for 2002-2003, you have produced no documents for 2001, 2004 or 2005. Shareholder is entitled to this information for at least 2001 to the present because based on the information defendants have provided, CCBN's estimated number of "flips" from Shareholder differs significantly from Shareholder's estimated number of losses to CCBN for the years 2002 and 2003. We are entitled to all similar documentation from the intrusion period forward so that we may determine the extent of Shareholder's damages.

Jennifer L. Chunias
September 23, 2005
Page 3

Moreover, Shareholder is entitled to documents concerning the specific reasons clients terminate CCBN's products and services for an additional reason. You have indicated that defendants intend to argue that clients left Shareholder in unusually high numbers during and after the intrusion period simply because CCBN was a more attractive service provider. Shareholder therefore is entitled to show that CCBN was not a more attractive service provider. Documents concerning CCBN's client retention and client satisfaction, such as termination notices, are clearly relevant to this argument. Please let us know immediately whether you intend to produce responsive documents.

Request 33
This request, as well as requests 14 and 16, seek documents concerning sales proposals. You agreed to discuss this request with your client (see May 5, 2005 letter from D. Moss to R. Dowling), but we have received no answer and no responsive documents have been produced. While we are willing to narrow this request to actual proposals provided to clients, the failure to produce any such documents is unacceptable. Please let us know whether you will produce sales proposals responsive to this request.

Request 34
This request seeks documents concerning pricing of CCBN's products and services, including CCBN price lists, company policies concerning product and service pricing and analyses used to determine prices for CCBN products and services. You agreed to discuss this request with your client (see May 5, 2005 letter from D. Moss to R. Dowling), but we have received no answer and no responsive documents have been produced. Shareholder is entitled to information concerning any change in CCBN prices or pricing policies during and after the intrusion period. Please let us know immediately whether you will produce documents responsive to this request.

Request 35
This request seeks documents describing the consolidation of CCBN's business into the financial statements of Thomson, including all notes. You agreed to produce all Thomson financial statements that discuss the integration of CCBN into Thomson. (see May 5, 2005 letter from D. Moss to R. Dowling). Although some financial statements have been produced, you have produced no statements reflecting integration of CCBN's goodwill or intangible assets. Please confirm whether any such financial statements exist, as they clearly would be covered by our agreement.

Requests 36 & 37
These requests seek CCBN financial statements, including all financial statements for particular product lines, from 2000 to present and documents sufficient to identify CCBN's detailed operating expenses from 2000 to present. You agreed to produce financial statements in response to these requests, but you have not produced financial statements for Q4 2001, 2004 or 2005 to date. You also have not produced audited financial statements for 2003 and 2004. Please produce these documents as agreed. In addition, given that the financial statements do not separate the operating expenses for the corporate division of CCBN from those of institutional division of CCBN, Shareholder is also entitled to documents sufficient to identify operating expenses of the corporate division (the line of business competing with Shareholder).

3

Jennifer L. Chunias
September 23, 2005
Page 4

Request 40
This request seeks business plans, marketing plans, and/or industry reports, including any financial or sales growth projections, whether created by defendants or acquired from a third party, between 2000 and the present. This request would include assessments of the strengths and weaknesses of CCBN's corporate business (the line of business competing with Shareholder under the leadership of Robert Adler) and plans and progress reports concerning the consolidation of CCBN's business into Thomson. You agreed to produce documents responsive to this request, but the production appears to be incomplete. It includes no budgeted or forecasted financial statements for 2001, 2004 or 2005. Also, please confirm that you have produced all responsive assessments, business plans, marketing plans and industry reports.

Request 41
This request seeks documents sufficient to identify the discount and/or interest rates CCBN used for business planning purposes (e.g., hurdle rates, borrowing rates, cost of equity, or others) from 2000 to the present. We agreed to determine whether we needed to pursue this request after reviewing your production of financial documents (see May 5, 2005 letter from D. Moss to R. Dowling). This information cannot be derived from the other financial documents produced and the information is relevant to damages issues. Accordingly, we request that you produce documents responsive to this request.

Request 43
This request seeks documents concerning any offers or potential offers by CCBN and/or Thomson to acquire Shareholder, including documents concerning valuations of Shareholder. Although some documents responsive to this request have been produced, the production includes no valuations of Shareholder prepared in connection with the potential transaction. Please confirm whether the production is complete.

Request 45
This request seeks any agreement, including non-disclosure agreements, between Thomson or CCBN and Jeffrey Parker, Robert Adler and Timothy Bryan. You agreed to produce documents responsive to this request, but we have received no documents. Please confirm that no such information exists or produce all responsive documents.

Requests 50-54
These requests seek data and documents concerning the electronic fingerprints of the intrusions and data storage material concerning CCBN's computer system's interaction with an anonymizer service used by a CCBN employee or agent to illegally access Shareholder's Management system. As we have explained, these requests simply ask the defendants to conduct the search that CCBN should have conducted in 2002 when it discovered that its President and co-founder had intruded into Shareholder's internal computer systems (see April 19, 2005 letter from R. Dowling to D. Moss). You agreed to check with your IT staff to determine what information is available (see May 5, 2005 letter from D. Moss to R. Dowling). Please determine whether any such information exists, and if so, produce all responsive documents.

Jennifer L. Chunias
September 23, 2005
Page 5

In addition, any bills or invoices from Virtual Development, Inc. or the American Data Center to CCBN and any records of payments from CCBN to Virtual Development, Inc. or the American Data Center would be covered by this request as well as request number 1. Please produce any responsive documents immediately or confirm that no such information exist.

Request 56
This request seeks all CCBN e-mail addresses, username, domain, local system and application account identifications and passwords or pass phrases used by Robert Adler between 2000 and 2004. You agreed to produce documents responsive to this request, if any, but no such documents are included in your production. Please provide these document or confirm that no such documents exist.

Request 59
This request seeks the personnel files of several CCBN employees, including Robert Adler. You agreed to produce Robert Adler's personnel file, but the file has not been produced. Please produce a copy of the file immediately.

Request 61
This request seeks documents concerning CCBN or Thomson Board of Director meetings at which Shareholder was discussed, including minutes or notes taken at such meetings. You agreed to produce documents responsive to this request (see May 5, 2005 letter from D. Moss to R. Dowling), but your production includes no such documents. Please produce any responsive documents immediately.

Request 62
This request seeks documents concerning any meeting of CCBN Management at which Shareholder was discussed, including but not limited to minutes or notes taken at such meetings. You objected to the portion of the request directed at "any meeting of CCBN management," but we clarified that we are only seeking minutes or notes concerning Shareholder that were taken during CCBN's regular Monday morning meetings (see May 23, 2005 letter from M. Allison to D. Moss.) These meetings have been described during the depositions of several CCBN witnesses. Further, Mr. Augustine testified that he occasionally took notes at those meetings, but that he was not asked to search for such documents. Shareholder is entitled to any minutes, notes, or recordings of such meetings at which Shareholder was discussed. Please let us know immediately whether you plan to produce documents responsive to this narrowed request.

Request 64
This request seeks documents concerning any damages defendants have incurred as a result of the conduct alleged in the counterclaims. Please indicate whether all responsive documents have been produced.

Request 76
This request seeks documents concerning the potential acquisition of CCBN, including Thomson's acquisition of CCBN, including any valuation of CCBN's business or assets. Defendants agreed to

Jennifer L. Chunias
September 23, 2005
Page 6

produce documents responsive to this request. As we have explained before, this request covers the entire acquisition agreement between CCBN and Thomson, including all annexes, exhibits and schedules to the agreement (see May 13, 2005 letter from J. Bennett's to D. Moss). All but a few attachments to the merger agreement, however, are still missing from defendants' production. Please produce these documents immediately.

This request also covers all documents concerning any negotiation of the representation, indemnification and escrow provisions of the merger agreement, as well as the negotiation of the price Thomson paid for CCBN, the factors used to determine the price, and any presentation made to Thomson's Board of Directors or senior management concerning the determination of the price. Please produce any such documents immediately.

Joint Defense Agreement
We have repeatedly requested that you produce a copy of the joint defense agreement executed by CCBN/Thomson and Mr. Adler. Defendants have relied on this agreement to shield all communications between the corporate defendants and Mr. Adler from discovery. Shareholder therefore is entitled to review the agreement and test the propriety of your privilege assertions. Please produce it immediately.

***Defendants' Response to Shareholder.com's First and Second Sets of Interrogatories***

Months ago you agreed to supplement your responses to Interrogatories 1-6, 8, 10, 12, 13, 14 and 17. (see May 5, 2005 letter from D. Moss to R. Dowling). We have not received your supplemental responses. Please immediately supplement these responses as agreed.

Interrogatory 7
Please confirm whether there are any additional communications responsive to this interrogatory as agreed in the May 5, 2005 letter from David Moss to Ruth Dowling.

Interrogatories 20 & 21
These interrogatories seek start and end dates for each CCBN client from 1997 to the present and revenues realized by CCBN from each of its clients on a monthly or quarterly basis from 1997 to the present. You indicated that you would let us know whether you intend to supplement these responses (see May 5, 2005 letter from D. Moss to R. Dowling). We have received only some documents responsive to Interrogatory 21 and none responsive to Interrogatory 20. This basic client information should be easily accessible to defendants, particularly given the limited time period, and is relevant to Shareholder's damages. Please let us know immediately whether you intend to supplement your responses.

Jennifer L. Chunias
September 23, 2005
Page 7


*Defendants' Response to Shareholder.com's Requests for Admissions*

You also agreed months ago to supplement your responses to Shareholder's requests for admissions 3, 8 and 14, but we have received no supplemental response.  Please provide the supplemental response immediately.

I look forward to your immediate response to these matters.

Sincerely,

Melissa C. Allison

cc:    Richard J. McCarthy
246874.1

# GOODWIN | PROCTER

Jennifer L. Chunias
617.570.8239
jchunias@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

September 29, 2005

**By Facsimile and First Class Mail**

Melissa Allison, Esq.
Palmer & Dodge LLP
111 Huntington Avenue
Prudential Center
Boston, MA 02199-7613

Re:     **Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al**
        **Civil Action No. 04-cv-10535-PBS**

Dear Melissa:

I write in response to your correspondence dated September 23, 2005 regarding
CCBN/Thomson's ("Defendants") discovery responses.

**CCBN/Thomson's Responses to Shareholder.com's Document Requests**

Requests Nos. 1 & 23
Defendants have searched for and produced all responsive documents. In addition (and as you
know), Mr. Beaulieu, a non-party, was served with a subpoena duces tecum, in response to
which he confirmed that he does not possess any responsive documents. Finally,
CCBN/Thomson has searched for and produced any other copies or versions of the document
bearing Bates No. D000001.

Request No. 28
Defendants have searched for and produced all responsive documents.

Request No. 29
Defendants have searched for and produced all responsive documents for 2000 - 2004.

Request No. 31
Defendants have searched for and produced any responsive documents.

Request No. 32
Defendants have searched for and produced all responsive documents. Your letter incorrectly
states that no responsive documents have been produced for 2001. Please see D005402-

GOODWIN | PROCTER

Melissa Allison, Esq.
September 29, 2005
Page 2

D005418, which were produced earlier this summer.  For your further information, CCBN did
not begin tracking competitive wins and losses data until 2001.

Request No. 33
Defendants have searched for and produced all responsive documents.

Request No. 34
Request No. 34 was not referenced in David Moss's May 5, 2005 or Ruth Dowling's April 19,
2005 correspondence, and was presumably not a subject of the related meet and confer on April
28, 2005.  Therefore, it is my understanding that we have not, as you state, agreed to discuss this
request with our client.  Subject to the objections asserted in Defendants' responses and
objections to this request, Defendants have searched for and produced all responsive documents.

Request No. 35
Defendants have confirmed that no financial statements or balance sheets reflecting integration
of CCBN's goodwill or intangible assets exist.  Defendants have searched for and produced all
responsive documents.

Requests Nos. 36 & 37
Defendants have searched for and produced all responsive documents.  For your information,
there are no CCBN financial statements after Q1 2004 (they were integrated) and no audited
CCBN financials for 2003 or 2004.

Request No. 40
Defendants have searched for and produced all responsive documents.

Request No. 41
Defendants have searched for and confirmed that they have no responsive documents.  (CCBN's
process was not that formal, so there are no documents that reflect the information Shareholder
seeks).

Request No. 43
Defendants have searched for and produced all responsive documents.

Request No. 45
Defendants have searched for and produced all responsive documents.

Requests Nos. 50-54
Defendants have confirmed that no such information exists.

**GOODWIN│PROCTER**

Melissa Allison, Esq.
September 29, 2005
Page 3

Request No. 56
Defendants have searched for and produced all responsive documents.

Request No. 59
Defendants have searched for and produced all responsive documents.

Request No. 61
Defendants have searched for and produced all responsive documents. For your information, the CCBN intrusions alleged by Shareholder were not discussed at any CCBN or Thomson Board meeting and, hence, there are no Board meeting minutes or notes that reflect discussions regarding the same.

Request No. 62
Defendants have searched for and confirmed that no such notes or minutes of any CCBN Monday morning meeting or management meeting exist. For your further information, to the best of Defendants' knowledge, the CCBN intrusions alleged by Shareholder were never discussed at any of these Monday morning meetings.

Request No. 64
Defendants have searched for and produced all responsive documents.

Request No. 76
Defendants have searched for and produced all responsive documents.

Joint Defense Agreement
The joint defense relationship itself is privileged, as well as communications arising under that relationship, and the joint defense agreement is protected from production by both the work product protection and the attorney-client privilege.

**CCBN/Thomson's Response to Shareholder.com's Interrogatories**

As agreed, we are supplementing our responses to Interrogatories 1-6, 8, 10, 12, 13, 14, and 17.

Interrogatory No. 7
Defendants have confirmed that there are no further communications responsive to this request.

Interrogatories Nos. 20 & 21
Defendants have searched for and produced all responsive documents to both of these requests. With regard to Interrogatory No. 20, as has been previously discussed, this data was not kept during the regular course of CCBN's business in the exact format Shareholder has requested, and

# GOODWIN | PROCTER

Melissa Allison, Esq.
September 29, 2005
Page 4

would be far too overly burdensome to reproduce in the particular format Shareholder demands. Moreover, the very data Shareholder seeks has already been produced from various other sources that Defendants themselves rely on.

**CCBN/Thomson's Response to Shareholder.com's Requests for Admissions**

As agreed, we are supplementing our responses to Requests for Admissions Nos. 3, 8 and 14.

Very truly yours,

Jennifer L. Chunias

JLC/pao

cc:    Anthony S. Fiotto, Esq.
       Richard J. McCarthy, Esq. (by facsimile)
       Thane D. Scott, Esq. (by facsimile)