# EXHIBIT F

# PALMER & DODGE LLP

### 111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
### BOSTON, MA 02199-7613

RUTH T. DOWLING
(617) 239-0657
rdowling@palmerdodge.com

**BY FACSIMILE & FIRST CLASS MAIL**

April 19, 2005

David Moss, Esq.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109

**Re:**    *Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al*
*Civil Action No. 04-10535-PBS*

Dear David:

I write to request a discovery conference to discuss the many deficiencies in the following discovery responses: (1) Defendants' Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories; (2) Defendants' Responses and Objections to Plaintiff's Second Set of Requests for Production of Documents; (3) Defendants' Responses and Objections to Plaintiff's Request for Admissions; and (4) Defendants' Responses and Objections to Plaintiff's Second Set of Interrogatories.

As a general matter, Shareholder requests that defendants remove the "confidential" designation on these documents. The Court has consistently refused to impound the information that defendants continue to mark "confidential."

In order to streamline our discovery conference, the deficiencies as to each of defendants' responses are described below.

### *Defendants' Second Supplemental Responses and Objections to Shareholder's First Set of Interrogatories.*

On March 1, 2005, Judge Alexander ordered defendants to supplement their responses to each interrogatory in Shareholder's First Set of Interrogatories, finding that each of defendants' responses was deficient. Defendants' Second Supplemental Response, which was provided to Shareholder on April 7, 2005, fails to provide the information ordered by the Court.

Interrogatories Nos. 1-4, 6

Defendants' initial responses to Interrogatories 1-4, and 6 objected to the disclosure of information based on the attorney-client or work product privileges. Defendants asserted that the requests sought disclosure of information that was solely in the custody of defendants' in-house counsel and was therefore privileged. Shareholder challenged that objection in its successful motion to compel and

David Moss, Esq.
April 19, 2005
Page 2

Judge Alexander ordered defendants to provide "the factual information sought by Shareholder" even if Ms. Nassar was the sole source for the information. The Court found that the asserted privileges did not protect facts known by the corporation even if only known by corporate counsel. March 1, 2005 Order pp. 7-9. Despite this Order, defendants have provided no new information in their Second Supplemental Response concerning CCBN's knowledge of the intrusions. For example, Interrogatory 4 requests a description of any investigation conducted by CCBN into the alleged intrusions. In the initial response, defendants asserted that any such investigation was undertaken by Ms. Nassar and therefore was protected by privileges. In the Second Supplemental Response, defendants fail to provide any information about any investigation conducted by Ms. Nassar or by CCBN. Rather, defendants simply provide a summary of deposition testimony that has occurred since they last supplemented their response and state that they cooperated with the AG's investigation. Shareholder is entitled to know whether CCBN conducted any sort of investigation into the intrusions once it received D00001 from Mr. Adler and, if so, the nature and results of that investigation.

From the Second Supplemental Response, it is possible to draw one of two conclusions: (1) defendants' privilege objections were frivolous as Ms. Nassar has no information about the intrusions and never conducted a meaningful investigation; or (2) defendants are in contempt of the Court's Order, having failed to provide the factual information in Ms. Nassar's possession. Given that defendants denied Shareholder's requested admission seeking confirmation that no investigation was undertaken by CCBN, we must assume that defendants are in contempt of the Court's Order. We therefore demand a full detailing of the CCBN investigation and any other factual information in Ms. Nassar's possession or we will be required to seek contempt sanctions.

Interrogatory No. 5

Interrogatory 5 simply asks defendants to describe the naming conventions for all computers used by CCBN employees and agents. Judge Alexander rejected defendants' claim that it would be "overly burdensome" to provide this information. Defendants' Second Supplemental Response still fails to provide a complete description of naming conventions. Please supplement to provide the following information: (1) when the naming convention change described in the response occurred; (2) the specific names given to the "utility computers"; and (3) what efforts Mr. Augustine and Mr. Buckley employed to determine whether any CCBN computer used the name "MORPEUR" or Sales 1.

Interrogatory No. 7

Interrogatory 7 seeks a description of any investigation of the alleged intrusions undertaken by Thomson prior to its acquisition of CCBN. The Court ordered defendants to fully respond to this request, which they have not done. Specifically, Shareholder seeks the following information: (1) the name of the Thomson lawyer at Paul Weiss involved in the investigation; (2) the identity of the Shareholder employee(s) or agent(s) who provided the information to Paul Weiss; (3) whether any documents were provided to or requested by Paul Weiss and/or Thomson concerning the intrusions; (4) the dates of the communications between CCBN and Thomson regarding the intrusions; and (5) a full and complete description of the communications on this topic, including the basis, if provided to Thomson and Paul Weiss, for CCBN's representations that "no useful information was obtained" or used by CCBN.

David Moss, Esq.
April 19, 2005
Page 3

**_Defendants' Response to Shareholder's Second Set of Document Requests_**

Defendants have yet to produce _any_ documents responsive to this second set of requests (due April 1, 2005). Given that discovery will come to an end in another six weeks, Shareholder demands immediate production of the documents that defendants have agreed to produce. To the extent that defendants are having difficulty collecting any category of documents, please roll the production to us as documents become available. There is no reason, for example, why defendants could not have timely produced their annual financial statements.

Request No. 28

This request seeks documents sufficient to identify the products and services purchased by certain identified CCBN clients (those that switched from Shareholder). In response, defendants object on the grounds of overbreadth and relevance and then point to the Focus documents previously produced. Shareholder seeks these documents in order to evaluate how CCBN capitalized on the stolen information from Management and in order to quantify damages. Focus does not provide this information nor would it be burdensome for CCBN to collect. Rather, to comply CCBN need only produce the relevant client invoices, which would show the services and products purchased by the clients. Shareholder demands that defendants produce these documents.

Request No. 29

This request seeks documents sufficient to identify improvements and enhancements made to CCBN's products between 2000 and the present. Defendants refuse to provide any documents in response to this request on the basis that it is "vague, overly broad, unduly burdensome, and oppressive" and that it seeks irrelevant information. Defendants' objections are without merit. During CCBN's intrusions into Shareholder's Management system, CCBN was able to view information about particular client development projects as well as Shareholder's internal communications regarding resolution of problems with its services. Shareholder is entitled to discover how CCBN made use of this confidential information, including discovery of any enhancements and improvements made to CCBN's products. Shareholder has not requested all documents related to such enhancements and improvements, only documents sufficient to identify the enhancements and improvements that were made. Thus, responding to the request is not burdensome but likely requires only retrieving the relevant development and marketing documents. The terms "improvements" and "enhancements" are meant in their ordinary usage. Shareholder demands that defendants produce the requested documents.

Request Nos. 30, 34, 43, 45, 46, 47, 48, 56, 60, 63, 71-74, 76

As to each of these requests, defendants have made a series of objections and then agreed to provide non-privileged documents. It is therefore impossible to tell from the responses if defendants plan to withhold any requested documents. Please clarify as to each request if all requested documents will be produced. With respect to request No. 76, please let us know whether defendants will produce responsive documents including the acquisition agreement between Thomson and CCBN and any other documents associated with that transaction, including documents describing "hold back" provisions.

David Moss, Esq.
April 19, 2005
Page 5

remained a separate company and Thomson did not assume its liabilities. However, if defendants are willing to drop that defense and stipulate that Thomson is responsible for any award of damages assessed against CCBN in this matter, then Shareholder will withdraw this request. Defendants' knee-jerk claim of overbreadth (which is included in nearly every response) has no merit given the narrow scope of this request. Shareholder demands production of these documents.

<u>Request Nos. 36-42</u>

Each of these requests seeks information related to Shareholder's damages. It is unclear from the objections why defendants believe these specific requests are overly burdensome and not intended to solicit relevant documents.

<u>Request Nos. 50-53</u>

These requests seek data and documents that contain the electronic fingerprints of the intrusions. Given that defendants have agreed to produce documents in response to Request 48 after posing the same objections recited in response to Requests 50-53, the basis of defendants' refusal to produce any documents in response to Request 50-53 is unclear. Shareholder is simply requesting that defendants conduct the search that CCBN should have undertaken in 2002 when CCBN learned that Robert Adler and others had illegally accessed Shareholder's internal computer systems.

<u>Request No. 54</u>

This request seeks data storage material concerning any CCBN's computer system's interaction with the anonymizer service used by a CCBN employee or agent to illegally access Shareholder. Shareholder is perplexed by the claim that this request is overly broad and demands the production of this information.

<u>Request Nos. 61 and 62</u>

These requests seek minutes and notes from any CCBN or Thomson Board of Director or Management meetings at which Shareholder was discussed. In response, defendants have agreed to provide minutes of Board of Director meetings. We see no basis for the refusal to provide non-privileged notes of any such meetings or of any Management meetings.

<u>Request Nos. 65, 67-70</u>

These requests seek documents describing the modifications made to Focus or any other internal CCBN database between 2001 and 2004 or comparing those databases to Shareholder's. Shareholder is entitled to discover how CCBN used its illegal access of Management to enhance and improve its own internal databases. Robert Adler's memo on the intrusions admits that he and others accessed Management to learn about its "functionality." Thus, Shareholder renews its request for these documents.

David Moss, Esq.
April 19, 2005
Page 6

Request No. 66

This request seeks documents provided to any expert engaged by defendants. It is unclear from the objection whether defendants are in fact withholding any documents. Shareholder is entitled to obtain all responsive documents in order to evaluate through fact discovery the reliability of any underlying data considered by the experts. Thus, Shareholder demands production of all responsive documents.

Request No. 78

This request seeks documents identifying CCBN's SIC codes and related revenues. Defendants have refused to produce the documents on relevance grounds. At issue in this case is the extent to which Shareholder and CCBN's businesses overlapped. Thus, CCBN's reporting of its areas of business and related revenue is relevant to the dispute and Shareholder is entitled to receive the few documents sought through this narrow request.

***Defendants' Responses and Objections to Shareholder's Request for Admissions***

Request for Admission No. 3

This request asks defendants to admit that CCBN did not share D000001 with the Attorney General's office during the Attorney General's investigation into CCBN's alleged unlawful intrusions. Defendants fail to admit or deny the request, instead defendants assert that the term "during the Attorney General's investigation" is vague and undefined and defendants object on relevance grounds. The vagueness objection is frivolous given that Defendants are well aware of the meaning and scope of the Attorney General's investigation, having described that investigation in their second supplemental response to Interrogatory 4. The relevance objection is equally misplaced. Defendants repeatedly rely on the Attorney General's failure to uncover "forensic" evidence of the intrusions as the basis for defendants' denial that any intrusion ever occurred. Shareholder is entitled to inform the jury that defendants obstructed the investigation by failing to provide the Attorney General's staff with a document in which CCBN's President confesses to the intrusions. There can be little doubt that had CCBN provided that information to the Attorney General's staff when it was requested in August 2002, the course of the Attorney General's investigation would have been entirely different. Defendants must admit or deny this request.

Request for Admission No. 6

This request asks defendants to admit that they do not know the specific number of times that Mr. Adler, or others working with him, gained access to Shareholder's systems. Defendants deny the request and explain that their denial is based on the fact that Mr. Parker and Mr. Roycroft both accepted Mr. Adler's statement in D000001 that there were only a few intrusions. Defendants do not know the specific number of intrusions; rather, they have accepted Mr. Adler's representation that he and others working with him only intruded on a few occasions. Shareholder is entitled to tell the jury that the defendants never looked beyond Mr. Adler's representation that there were only a few intrusions, that the defendants never checked internal logs or ran internal searches to determine

David Moss, Esq.
April 19, 2005
Page 7

the number of intrusions, and that, in fact, defendants do not know the *specific* number of intrusions. Thus, Shareholder demands that defendants admit this uncontested fact.

Request for Admission No. 7

This request asks defendants to admit that defendants made no efforts to obtain or maintain electronic data from Mr. Adlers' computers(s) concerning the intrusions. Defendants deny the request on the ground that the Attorney General's office conducted an examination of some CCBN computers a year after Adler admitted to the intrusions. This request seeks information about CCBN's and Thomson's efforts, not the efforts of the State Police or the AG's office. Further, based on Mr. Adler's testimony, it does not appear that the computer he was using during the intrusion period was ever examined by CCBN, Thomson or the State Police. Thus, the defendants have not answered as to whether they made any efforts to obtain or maintain electronic data from Mr. Adlers' computer(s) concerning the intrusions.

Request for Admission No. 8

This request asks defendants to admit that Mr. Adler was not discharged, demoted or denied promotion based on the conduct described in D00001, his memo to Parker admitting to the intrusions. Defendants refuse to answer on the ground that the request is not relevant to any claim. To the contrary, defendants' conduct in response to Mr. Adler's admission that he unlawfully accessed Shareholder's internal databases is at issue in the case. Defendants have stated that they will take the position that Mr. Adler was not acting on behalf of CCBN but was rather a "rogue" President. The fact that CCBN engaged in no investigation of the misconduct and failed to discipline Mr. Adler, belies the notion that CCBN was not involved or complicit in the conduct. Shareholder is entitled to a response to this request.

Request for Admission No. 14

This request asks defendants to admit that defendants have an agreement that makes former CCBN shareholders, rather than defendants, obligated to pay some or all of the damages awarded against defendants in this matter. Defendants refuse to respond on the basis that the information sought is not relevant. Shareholder is entitled tell the jury that Mr. Parker and Mr. Adler, among other CCBN shareholders, are responsible for the payment of some or all of the damages in the matter and therefore have an interest in protecting the defendants. Shareholder is entitled to a response to this request.

***Defendants' Responses and Objections to Shareholder's Second Set of Interrogatories***

Defendants miscount the number of interrogatories by wrongly assuming that Interrogatory No. 9 should count as 8 separate interrogatories and Interrogatory No. 19 should count as two separate interrogatories. In both cases, the required answers are logical extensions of the basic interrogatory and must, therefore, be treated as a single interrogatory. The specific responses are deficient as follows:

David Moss, Esq.
April 19, 2005
Page 8

Interrogatory No. 8

This interrogatory seeks a description of the damages defendants claim to have suffered as a result of the conduct alleged in the counterclaims and the identity of any supporting documents. Defendants object on the grounds that they require certain unidentified documents from Shareholder in order to answer the interrogatory and on the grounds that it seeks information more appropriately sought during expert discovery. Neither objection has merit. In order for defendants to have properly pleaded their counterclaims, they must have believed that they were damaged in some way by the misconduct. Shareholder is entitled to a description of the damages. In addition, Shareholder is entitled to know the identity of any documents supporting the defendants' damages theory in order to have an opportunity to challenge the reliability of those documents during fact discovery. Thus, Shareholder demands a full response to this request.

Interrogatory No. 10

This interrogatory seeks a description of all communications between defendants and any third party concerning the litigation or the facts underlying the claims and counterclaims. Although defendants posed an identical interrogatory to Shareholder, defendants object to this request on the grounds that it is overly burdensome and calls for information that is not relevant to the claims and defenses. Defendants are required to provide a full description of all communications with third parties. Defendants indicate that the Massachusetts State Police and Attorney General's office are the only third parties with whom such communications have occurred. However, defendants have failed to provide a full description of these communications. In particular, Shareholder demands that defendants supplement with the following information: (1) the approximate dates of each communication with either the State Police or the AG's office; (2) a full accounting of what was said or provided in writing during each of the communications; (3) a full accounting of the information requested by the State Police or the AG's office during the communications; and (4) the identities of the parties involved in the communications.

Interrogatory No. 11

This interrogatory seeks a description of the enhancements made to the functionality of Focus from January 1, 2001 to January 1, 2004. The relevance of the requested information is described above. Shareholder requests that defendants supplement this response to describe in more detail the "dozens of minor modifications to the Focus system" that were intended to "enhance the functionality of Focus" including a description of the date upon which the modification was made.

Interrogatory No. 12

This interrogatory seeks a list of all corporate sales personnel employed by CCBN at any time since July 1, 2001, with last known addresses for each individual. Defendants refuse to provide this information on the grounds that it is overly broad, unduly burdensome and seeks information that is not relevant. As you know, Mr. Adler's memo confessing to the intrusions indicates that others were involved in his scheme. Testimony of Mr. Roycroft confirms that information provided to Tim Bryan at CCBN by the anonymous source was distributed to the corporate sales team at CCBN. Shareholder is entitled to conduct discovery of former CCBN sales personnel to determine how the

David Moss, Esq.
April 19, 2005
Page 9

distributed information was used, how the stolen information was used, and by whom.  It is difficult to imagine how producing a list of a defined group of employees is at all burdensome to defendants.

Interrogatory No. 13

This interrogatory seeks, among other things, information about the timing of CCBN's discussions with Thomson concerning a possible acquisition.  The response does not provide any information abut the timing of those discussions.  Given CCBN's representations to the AG's office that CCBN and Shareholder were engaged in merger discussions which was intended to quiet the investigation, Shareholder is entitled to know whether CCBN was, in fact, in discussions with Thomson at that time.

Interrogatory No. 14

This interrogatory seeks, among other things, information regarding any Thomson Board meeting or CCBN management meeting at which the intrusions into Shareholder.com's systems were discussed. Defendants have refused to provide any responsive information on the ground that discussion by Thomson is not relevant and recounting of all discussions by CCBN management would be unduly burdensome.  As to Thomson's objection, the Court has already ruled that details of Thomson's investigation, if any, into the intrusions is relevant.  Discussions by the Thomson Board of the intrusions are similarly relevant.  As to CCBN's objections, Shareholder is entitled to information about every discussion concerning the intrusions by CCBN management.  Given that there are a only a small number of managers who have been identified by CCBN, it should not be difficult for CCBN to identify all such communications.

Interrogatory No. 16

This interrogatory seeks a full description of defendants' efforts to investigate the conduct described in D00001.  Defendants refer to their second supplemental response to Interrogatory No. 4, which does not provide any information about any investigation conducted by CCBN (as opposed to the AG's investigation).  Again, Shareholder demands a full description of any CCBN investigation, including any investigation undertaken by Ms. Nassar.

Interrogatory No. 17

This interrogatory seeks a description of the information that defendants alleged Shareholder illegally accessed from StreetEvents and MyCCBN.  Defendants refer to specific documents which Shareholder takes to be the full scope of what defendants allege was accessed by Shareholder. Defendants fail to provide, however, basic information in response to this interrogatory such as (1) the basis for defendants' contention, if any, that information accessed was confidential or proprietary; and (2) the value of the information taken.  Please supplement to provide a full response to this interrogatory.

David Moss, Esq.
April 19, 2005
Page 10

Interrogatory Nos. 20-21

These interrogatories seeks the start and end dates for each CCBN customer from 1997 to the present and the revenues realized from each such customer. Defendants refuse to provide the information on burden and relevance grounds. This information is relevant to Shareholder's damages and given the limited nature of the information sought should be easily accessible to defendants. Shareholder demands its production.

Interrogatory No. 22

This interrogatory seeks the number of subscribers and trial subscriptions to StreetEvents and MyCCBN from 2000 to the present. This information is relevant to Shareholder's defense of the Counterclaims. In particular, the frequency with which CCBN provided trial memberships is relevant to the value and accessibility of the information it is alleged that Shareholder accessed. Please supplement this response.

Interrogatory No. 24

This interrogatory seeks CCBN's quarterly headcount from 2000 to the present. Defendants refuse to provide the information on relevance grounds as well as burden. Again, it is hard to imagine how it could be burdensome to provide headcount information that CCBN's human resources department must have maintained in the normal course of its business. The information is relevant to CCBN's anticipated defense that it was able to out-compete Shareholder for clients because it had a larger sales and marketing staff. It is also relevant to Shareholder's damages.

Given that there are now fewer than 6 weeks left in the fact discovery period, it is important that we confer in the near term. I am available Wednesday April 20th until 1 p.m. and anytime on April 25th. Please let me know at your earliest convenience when we can confer. Thank you for your attention to this matter.

Very truly yours,

Ruth T. Dowling

cc:    Ronald H. Gruner

# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

RUTH T. DOWLING
(617) 239-0657
rdowling@palmerdodge.com

**BY FACSIMILE & FIRST CLASS MAIL**

May 3, 2005

David Moss, Esq.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109

**Re:** ***Direct Report Corporation d/b/a Shareholder.com* v. *CCBN.com, Inc., et al***
***Civil Action No. 04-10535-PBS***

Dear David:

Thank you for taking the time on April 28th to go through each of Shareholder's concerns about CCBN/Thomson's responses to our discovery requests. This letter will confirm that CCBN/Thomson will provide a written response on or before Wednesday, May 4th to the concerns raised in my letter dated April 19th. In addition, you indicated that defendants would begin rolling to us documents responsive to our second set of requests in the near term. In particular, you indicated that you already had collected financial documents and could get those to us soon.

Based on our call, it is my understanding that defendants CCBN and Thomson have set forth all of the facts known to them, including all facts known to Nicandra Nassar, in the Second Supplemental Interrogatory Responses Nos. 1-4 and 6. In other words, Ms. Nassar did not learn any additional facts during any discussions she had with Parker, Adler or any other CCBN employee that have not been fully described in the depositions, interrogatories or documents produced. We would ask CCBN and Thomson to supplement their responses to indicate that this response includes all facts known to Ms. Nassar.

You represented that you would discuss with your clients, among other issues, whether they will supplement their response to Interrogatories 4 and 11 (the answer to 11 cross-references 4), which seeks a description of each discussion between anyone at CCBN/Thomson (including Ms. Nassar) and any third-parties. As I indicated by phone and in my letter dated April 19th, we must be provided a complete description of each communication between CCBN/Thomson and the State Police and/or the Attorney General's Office. I note that in defendants' initial disclosures Jonah Kowall is listed as an individual with knowledge of the Attorney General's investigation. Any communications that Mr. Kowall had with the Attorney General's office, or any work he did in investigating the intrusions should be disclosed in response to these interrogatories.

David Moss, Esq.
May 3, 2005
Page 2

You inquired as to how the list Shareholder attached as Exhibit A of its Second Set of Requests for the Production of Documents differed from the list we had previously used of 110 clients. The 153 clients represent all of the clients that switched from CCBN to Shareholder from January 1, 1999 through August 2004. The previous list included clients that switched between July 1, 2001 and January 1, 2004.

You also inquired as to whether the production of the FOCUS documents satisfied any of the requests and therefore mooted our assertion that defendants' response was insufficient. We have looked again at the FOCUS documents and can confirm that they do not contain and of the information we continue to seek in the requests addressed in my letter dated April 19th.

In reference to Interrogatory No.8 seeking a description of the damages defendants claim to have suffered, you indicated that you believed Shareholder had refused to answer the interrogatory on the same basis as defendants (that it was more properly the subject of expert discovery). I have reviewed Shareholder's responses and can confirm that Shareholder has not proffered such an objection. Rather, Shareholder has provided full responses to defendants' damages-related interrogatories on lost customers and revenues. Thus, we request again that defendants supplement their response to Interrogatory No.8 to provide information on their claimed damages.

Thank you for your continued attention to these matters.


Very truly yours,

Ruth Dowling

Ruth T. Dowling

cc:    Ronald H. Gruner

# PALMER & DODGE LLP

### 111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
### BOSTON, MA 02199-7613

# FAX

sending **THREE** pages (including cover sheet)

| DATE | May 3, 2005 | SENDER ID # | 1069 |
|------|-------------|-------------|------|
| FROM | Ruth T. Dowling | CLIENT # | 23393-1 |

DIRECT DIAL #     (617) 239-0657

| NAME | COMPANY | PHONE # | FAX # |
|------|---------|---------|-------|
| David M. Moss | Goodwin Procter | (617) 570-1794 | (617) 523-1231 |

COMMENTS:

NOTICE OF CONFIDENTIALITY: This transmission is intended only for the addressee(s) listed above, and may contain information that is confidential and privileged. If you are not the addressee, any use, disclosure, copying or communication of the contents of this transmission may be subject to legal restrictions or sanctions. If this message was received in error, please telephone us immediately collect at 617.239.0122 and we will arrange for the return to us of this message at no cost to you.

This fax was transmitted via a group 3 machine.                                    REV 10/01

For Fax Problems, Please Call:617.239.0670

MAIN 617.239.0100 FAX 617.227.4420 www.palmerdodge.com

GOODWIN PROCTER

David M. Moss
617.570.1794
dmoss@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

May 5, 2005

**By Facsimile and First Class Mail**

Ruth T. Dowling, Esq.
Palmer & Dodge LLP
111 Huntington Avenue
Prudential Center
Boston, MA 02199-7613

Re:     **Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al**
        **Civil Action No. 04-cv-10535-PBS**

Dear Ruth:

This letter addresses the issues raised in your letter of April 19, 2005, and discussed during our recent phone conference on April 28.

On the issue of removing confidentiality designations from all of defendants' discovery responses, as an initial matter we note that there was no confidentiality designation made with respect to the responses to Shareholder's second set of document requests. As to the other responses, we disagree with your assertion that the Court has somehow rendered an opinion on whether the discovery responses that have been labeled "Confidential" are entitled to that designation under the terms of the Stipulated Protective Order. In any event, if Shareholder wishes to challenge those designations, it is required to state with specificity which designations are being challenged. Shareholder took this same blanket objection approach with defendants' prior discovery responses, and we only resolved the matter efficiently when specific responses became the focus of discussion. Until that time, defendants stand by those designations.

<u>Shareholder's First and Second Sets of Interrogatories</u>

<u>Interrogatory Nos. 1-4, 6.</u> As I explained during our April 28 call, defendants have already provided Shareholder with all relevant underlying facts within their knowledge concerning the alleged intrusions and CCBN's investigation into those allegations, and there is no basis whatsoever for the allegation in your April 19 letter that we have not complied with the Court's March 1 Order. But in order to finally resolve this issue, we will provide supplemental responses that reflect the above, as you have requested.

GOODWIN | PROCTER

Ruth T. Dowling, Esq.
May 5, 2005
Page 2

Interrogatory Nos. 4 and 10. Defendants have already provided Shareholder with thorough
responses concerning communications between CCBN and third parties concerning the alleged
intrusions. However, in order to resolve this issue, we will supplement defendants' responses to
provide additional information concerning communications between CCBN and either Thomson
or the Massachusetts Attorney General's Office relating to the alleged intrusions.

Interrogatory No. 5. Without waiver of the argument that the additional information you seek is
neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, we
will supplement defendants' response with that information, to the extent currently available.

Interrogatory No. 7. Our supplemental interrogatory answer provided details regarding the
communication between CCBN and Thomson prior to the merger concerning Shareholder's
allegations. During our call, you raised the concern that there might have been other
communications. We are in the process of confirming that there are no such additional
communications.

Interrogatory No. 8. We continue to maintain that defendants cannot provide a full description
of its damages until Shareholder has fully complied with discovery responses directed at
Shareholder's unauthorized intrusions into CCBN's computer systems. However, in a good faith
effort to move forward on this issue, we will provide a supplemental response to this request.

Interrogatory No. 11. This confirms your agreement during the April 28 call that Shareholder
will not pursue a supplemental response at this time.

Interrogatory No. 12. During our call, you stated that Shareholder is seeking the names of
CCBN's salespeople in order to facilitate *ex parte* contacts with CCBN's current and former
employees. Our initial research indicates that you are not entitled to have *ex parte* contacts with
the current employees whose names are sought, pursuant to *Messing v. Harvard*, 436 Mass. 2347
(2002). If there is more recent authority to the contrary, we will consider it. In any event, we
will supplement defendants' response with the headcount of corporate salespeople at CCBN
between January 1, 2001 and January 1, 2004.

Interrogatory No. 13. We will supplement defendants' response to indicate the time period
during which CCBN and Thomson were engaged in merger discussions.

Interrogatory No. 14. We will supplement defendants' response to identify the date of any
Thomson Board of Directors meetings during which the CCBN intrusions alleged by
Shareholder was discussed.

GOODWIN | PROCTER

Ruth T. Dowling, Esq.
May 5, 2005
Page 3

Interrogatory No. 16. We agreed that the supplemental response to Interrogatories 1-4 and 6 referenced above will obviate any need for a supplemental response to this Interrogatory.

Interrogatory No. 17. We will supplement defendants' response to describe the basis for the contention that the information contained in StreetEvents and MyCCBN is confidential and proprietary.

Interrogatory Nos. 20-21. We are checking with our client to determine the burden involved in obtaining the requested information, and we will let you know soon whether we will agree to supplement our responses.

Interrogatory No. 22. We will supplement defendants' response with information concerning the number of subscriptions and trial subscriptions to StreetEvents during the time period 2001 through 2003.

Interrogatory No. 24. We will supplement defendants' response with headcount information during the time period 2001 through 2003.

**Shareholder's Second Set of Document Requests**

Request No. 28. As an initial matter, we object to Shareholder's attempt to expand the number of customers involved in discovery by stretching the time period of Shareholder's customer losses to CCBN. Apart from its inconsistency with the Court's March 1 Order, we fail to see how or why a customer who left Shareholder as early as January 1999 could have any bearing on the issues in this case. We are inquiring with our client to determine what responsive documents outside of Focus are available.

Request No. 29. We are inquiring with our client to determine what responsive materials they have in light of your clarification during our call that Shareholder is looking for documents such as development reports and marketing materials that reflect improvement or enhancements to CCBN's products and services.

Request No. 31. You clarified that Shareholder is looking for documents concerning pricing programs directed at no one customer in particular, and your April 19 letter narrows the Request to seek only documents sufficient to identify such programs. As modified, defendants agree to produce any nonprivileged responsive documents.

Request No. 32. We will agree to produce documents concerning competitive wins and losses, which goes to the competitive environment and damages, but we continue to maintain that producing all communications with CCBN's customers concerning their reasons for leaving is

GOODWIN PROCTER

Ruth T. Dowling, Esq.
May 5, 2005
Page 4

either covered by the production of Focus documents or is otherwise irrelevant to the issues in this case.

Request Nos. 33, 44. We are inquiring with our client to determine what responsive materials exist, and how burdensome it will be to locate any such documents.

Request No. 35. You clarified that Shareholder is looking for any Thomson financial statements that discuss the integration of CCBN into Thomson. We will agree to produce any such documents.

Request Nos. 36-42. We agreed that you will review the financial documents defendants will produce to determine whether Shareholder wishes to seek any additional information.

Request Nos. 50-54. You agreed to clarify Request 51, and we are inquiring with the client's IT staff to determine what electronic documents are available responsive to these Requests.

Request Nos. 61-62. We have agreed to produce Board minutes and notes, but as explained during our call, we continue to believe that the portion of the Request directed at "any meeting of CCBN management" is overly broad, vague, and unduly burdensome.

Request No. 65, 67-70. As I explained during our call, we are told that there have been literally hundreds of improvements and modifications made to the Focus system, and these requests are therefore overbroad and unduly burdensome. We are willing to discuss these Requests further with you if Shareholder is willing to provide a reasonable way in which the Requests can be narrowed.

Request No. 66. We have confirmed that all of the documents provided to any experts retained by defendants have been produced.

Request No. 78. We believe that the document and depositions discovery in this case is sufficient to address your stated concern about product overlaps. As to producing the Hart-Scott filing for the Thomson/CCBN transaction, we are informed that the filing is subject to confidentiality obligations that preclude its disclosure.

**Shareholder's Request for Admissions**

Request No. 3. We will agree to supplement defendants' response to this Request.

GOODWIN PROCTER

Ruth T. Dowling, Esq.
May 5, 2005
Page 5

Request No. 6-7.  Defendants have answered these Requests in accordance with Rule 36, and none of the arguments raised in your April 19 or during our call cause us to believe that any amendment to our responses is required.

Request No. 8.  We will agree to supplement defendants' response to this Request.

Request No. 14.  We will agree to supplement defendants' response to this Request.

Very truly yours,

David M. Moss

cc:    Anthony S. Fiotto, Esq.
LIBA/1536318.1

# GOODWIN | PROCTER

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000

# F A X   T R A N S M I T T A L

If problems with transmittal, call fax department at 617.570.1498.

| Date | Total pages | Attorney number | Client/matter number |
|------|-------------|-----------------|----------------------|
| May 5, 2005 | 6 | 07174 | 104414/145135 |

| To | Company | Fax number | Telephone |
|----|---------|------------|-----------|
| Ruth T. Dowling, Esq. | Palmer & Dodge LLP | (617) 227-4420 | (617) 239-0100 |

558

| From | Fax number | Telephone |
|------|------------|-----------|
| David M. Moss | 617.523.1231 | 617.570.1794 |

**Message:**

The information contained in this communication is intended only for the personal and confidential use of the designated recipients addressed. This message may be an attorney-client communication from an attorney at the law firm of Goodwin Procter LLP and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us at the telephone number shown above, and return the original message to us by mail. Thank you.

```
          ***********************
          ***   TX REPORT   ***
          ***********************

     TRANSMISSION OK

     TX/RX NO              2939
     CONNECTION TEL                  #5586172274420
     CONNECTION ID
     ST. TIME             05/05 18:31
     USAGE T              03'09
     PGS. SENT               6
     RESULT               OK
```

# GOODWIN | PROCTER

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000

# F A X   T R A N S M I T T A L

If problems with transmittal, call fax department at 617.570.1498.

| Date | Total pages |
|------|-------------|
| May 5, 2005 | 6 |

| To | Company | Fax number | Telephone |
|----|---------|------------|-----------|
| Ruth T. Dowling, Esq. | Palmer & Dodge LLP | (617) 227-4420 | (617) 239-0100 |

| From | | Fax number | Telephone |
|------|--|------------|-----------|
| David M. Moss | | 617.523.1231 | 617.570.1794 |

**Message:**

# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

JOHN T. BENNETT
DIRECT DIAL: 617.239.0670
DIRECT FAX: 617.316.8324
jbennett@palmerdodge.com

May 13, 2005

**By Facsimile and First Class Mail**

David M. Moss, Esq.
Goodwin Procter
Exchange Place
Boston, MA  02109

Re:     ***Direct Report Corporation d/b/a Shareholder.com v. CCBN.com, Inc., et al***
        **Civil Action No. 04-cv-10535-PBS**

Dear David:

As you are aware, many of the interrogatories and document requests in Shareholder's second round of written discovery  are directed toward information necessary for us to prepare our damages case for trial.  As part of this preparation, Shareholder will likely need to depose one of the corporate defendants or an individual employee(s) regarding the documents and interrogatory answers the defendants provide.  Given that the current fact discovery cutoff is little more than two weeks away and expert reports are due in little more than six weeks, the defendants must provide responsive documents and interrogatory answers immediately to prevent serious prejudice to Shareholder's trial preparation.  At a minimum, Shareholder needs the following priority information in order to prepare for a deposition(s) and to begin preparation of its expert report:

- Answers to Interrogatory Nos. 20 & 21 requesting defendants to identify the start and end dates for each CCBN client from 1997 to the present and revenues realized by CCBN from each of its clients on a monthly or quarterly basis from 1997 to present.  You agreed to consult with your client regarding responses to these requests in your May 5, 2005 letter to Ruth Dowling.

- Documents responsive to Document Request No. 28, which seeks documents sufficient to identify CCBN services or products purchased by each CCBN client listed on Appendix A.  You agreed to consult with your client regarding documents responsive to this request in your May 5, 2005 letter to Ruth Dowling.

- Documents responsive to Document Request No. 30, which seeks documents concerning CCBN's sales cycle, including salesperson training manuals and documents describing the amount of expected lead time and costs incurred by CCBN to develop a new client relationship,

126129.1

David M. Moss, Esq.
May 13, 2005
Page 2

from first contact or proposal to contract signing or beginning of service, between 2000 to the present. The defendants agreed to produce documents responsive to this request in their initial response to Shareholder's second set of document requests.

• Documents responsive to Document Request No. 31, which seeks documents concerning any discounting, price incentive and/or service bundling programs offered to potential CCBN clients between 2000 to the present. You agreed to produce documents sufficient to identify such programs in your May 5, 2005 letter to Ruth Dowling.

• Documents responsive to Document Request No. 35, which seeks documents describing the consolidation of CCBN's business into the financial statements of Thomson, including all notes. You agreed to produce responsive documents in your May 5, 2005 letter to Ruth Dowling.

• Documents responsive to Document Request No. 36, which seeks financial statements, including all financial statements for particular product lines, from 2000 to present. While the defendants have produced responsive documents for the years 2000 to 2002, no documents for the years 2003 or 2004 have been produced.

• Documents responsive to Document Request Nos. 37-42. With respect to request 42, the defendants have produced documents sufficient to identify CCBN's cost of borrowing from 2000-2002, but have not produced responsive documents for the years 2003-2004. Shareholder takes issue with the representation made in your May 5, 2005 letter that it had "agreed to review the financial documents defendants will produce" and then decide whether to seek additional information. Even if this representation were accurate, however, the financial documents produced by defendants to date are wholly unresponsive to requests 37-41 and only partially responsive to request 42.

• Documents responsive to Document Request No. 43, which seeks documents concerning any offers or potential offers by CCBN and/or Thomson to acquire Shareholder.com, including documents concerning valuations of Shareholder.com. The defendants agreed to provide documents responsive to this request in their initial response to Shareholder's second set of document requests.

• Documents responsive to Document Request No. 76, which seeks documents concerning the potential acquisition of CCBN, including Thomson's potential acquisition of CCBN, including any valuation of CCBN's business or assets. Documents responsive to this request would include the entire acquisition agreement between CCBN and Thomson, including all schedules attached to or referred in the agreement. The defendants agreed to provide documents responsive to this request in their initial response to Shareholder's second set of document requests.

The interrogatory answers and documents listed above, while not comprising the entire scope of damages discovery that Shareholder continues to seek, are needed immediately to prevent serious prejudice to Shareholder's trial preparation. Please inform us as soon as possible whether the

126129.1