UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIRECT REPORT CORPORATION d/b/a SHAREHOLDER.COM,<br><br>Plaintiff,<br><br>v.<br><br>CCBN.COM, INC., THE THOMSON CORPORATION, ROBERT I. ADLER, JOHN DOES 1 THROUGH 5, AND JANE DOES 1 THROUGH 5,<br><br>Defendants. | Civil Action No. 04-10535-PBS |

**REPLY BRIEF SUPPORTING DEFENDANT ADLER'S
MOTION FOR A PROTECTIVE ORDER, OR, ALTERNATIVELY, TO QUASH
PLAINTIFF'S SUBPOENAS TO INSPECT HIS PERSONAL COMPUTERS**

Defendant Robert Adler ("Adler") hereby replies to the arguments that Plaintiff Direct Report Corporation d/b/a Shareholder.com ("Shareholder") raised in its opposition to Adler's Motion for a Protective Order, Or, Alternatively to Quash Plaintiff's Subpoenas to Inspect his Personal Computers (the "Motion"). Shareholder's contentions essentially boil down to four: (1) that any objections Adler may have regarding the scope of Shareholder's planned inspections of his computer databases are overcome by Shareholder's so-called "targeted search protocol;" (2) that Adler effectively waived his Rule 26(b) objections when he asserted his Fifth Amendment privilege in response to Shareholder's earlier document subpoena; (3) that Shareholder's subpoenas do not implicate Adler's Fifth Amendment rights because the existence and location of the subpoenaed devices are foregone conclusions; and (4) that Adler has no privilege against self-incrimination with regard to the contents of any electronic information stored on the subpoenaed devices. Each is fundamentally flawed.

A.  **<u>Shareholder's Opposition Brief Contains Factual Inaccuracies</u>.**

Before addressing the flaws with Shareholder's legal arguments, it is important to note several factual inaccuracies contained in Shareholder's opposition brief. Perhaps the most fundamental is Shareholder's assertion that Adler's refusal to permit access to the subpoenaed devices – a laptop computer and a desktop computer that he acquired from co-defendant CCBN.com, Inc. ("CCBN") in 2004, a desktop computer that he acquired from CCBN around 1988 or 1999, and an electronic storage device – "forecloses Shareholder from the only available method of discovering information about Adler's conduct." Pl.'s Opp. at p. 2. This statement is patently false. Shareholder already has used other discovery methods, such as depositions of former CCBN employees and paper discovery served on CCBN, to obtain information relating to its claims against Adler. In fact, Shareholder would have no basis for asserting that Adler personally accessed its Management System but for its employment of these alternate discovery methods.

Moreover, to the extent that Shareholder wishes to obtain discovery directly from Adler, it has an obvious and simple means to achieve this result: it could agree to stay its claims against Adler until the statutes of limitations on all potentially applicable criminal statutes have expired.[1] Under such an agreement, all of Shareholder's rights against Adler would be preserved until Adler no longer faces a risk of being prosecuted for the conduct alleged in the Second Amended Complaint. Then, once the case resumes, Shareholder could proceed with normal discovery, and Adler would be unable to invoke his right against compelled self-incrimination. Shareholder, however, has so far expressed an unwillingness to stay this litigation. Indeed, Shareholder recently indicated that it may wish to increase Adler's potential exposure to criminal prosecution

---

[1]  As stated in a memorandum supporting his opposition to Shareholder's Motion to Amend, Docket No. 112, Adler believes the last applicable statute of limitations would expire no later than October 2009, and possibly as early as April 2008.

by seeking relief from the protective order entered in this case and notifying the Massachusetts Attorney General's Office of evidence that Shareholder believes implicates Adler personally. In light of Shareholder's chosen course of conduct, it cannot be heard to complain about how Adler's invocation of his constitutional rights against self-incrimination has hindered its discovery efforts.

Another factual inaccuracy in Shareholder's brief is its statement that "Adler has admitted to intruding into Shareholder's systems using a computer or computers." Pl.'s Opp. at pp. 3-4. Adler has not admitted to any such thing. Indeed, as Shareholder acknowledges elsewhere in its opposition, Adler asserted his rights against compelled self-incrimination when asked any questions at his deposition relating to whether he had intruded into Shareholder's systems using a computer or computers. Shareholder's claim of an alleged "admission" by Adler is based on the testimony of former CCBN CEO Jeffrey Parker and a document produced by CCBN. Adler has neither corroborated Parker's testimony, nor authenticated the document that CCBN produced. Thus, it is misleading for Shareholder to refer to any "admissions" by Adler.

Shareholder also claims incorrectly that the entity that has proposed the search protocol for the subpoenaed devices is an "Independent Technical Expert." Pl.'s Opp. at p. 4. ICG, Inc. ("ICG") has worked for Shareholder as its consultant regarding the intrusions alleged in the Complaint since at least 2002. Joshua Halpern, an ICG employee, has testified during discovery about the work that ICG performed regarding the alleged intrusions. In short, ICG is Shareholder's expert consultant, not some detached, neutral entity.

**B.    Shareholder's "Search Protocol" Does Not Cure The Defects In Its Subpoenas.**

Nowhere in its opposition does Shareholder dispute Adler's contention that as a general matter, courts have rejected efforts by civil litigants to inspect their adversaries' computer

databases, absent evidence that those adversaries had engaged in some form of discovery abuse. See Adler's Mem. at p.8. Nor does Shareholder cite to any cases where courts have departed from this general principle. See generally Pl.'s Opp. Instead, Shareholder claims that "Adler's lengthy discussion of cases addressing computer inspections as a discovery sanction is inapposite" because this is not a "sanctions case." Id. at p.5. The cases cited by Adler, however, are not all "sanctions cases" either.

In some of those cases, the party seeking to inspect its adversary's computers complained of no discovery misconduct other than the adversary's refusal to permit the inspections or to produce all documents stored on the computers. See, e.g., In re Ford Motor Co., 345 F.3d 1315, 1317 (11th Cir. 2003) (stating that "Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations."); McCurdy Group, LLC v. American Biomedical Group, Inc., 9 Fed. Appx. 822, 831, 2001 WL 536974, *7 (10th Cir. May 21, 2001) (defendant served plaintiff with request for "all computer disc drives, including back-up computer disc drives"). The collective significance of the cases, however, is that they all stand for the principle that no civil litigant is permitted to the "drastic discovery measure," McCurdy Group, LLC, 2001 WL 536974 at *7, of inspecting its adversaries' computers, absent any evidence that those adversaries have improperly refused to comply with other discovery requests. This principle is germane here because Shareholder has acknowledged that Adler has not engaged in any sanctionable conduct. Pl.'s Opp. at p.5. Thus, in accordance with the cases cited by Adler, Shareholder is not entitled to inspect Adler and his family's personal computers.

Shareholder's suggestion that its so-called "targeted search protocol" alters the analysis is nothing but an invitation for this Court to depart from the precedent cited by Adler and make new law. The novelty of Shareholder's position is revealed by the fact that Shareholder has not

cited to a single case where a court has permitted a civil litigant to conduct a "targeted" inspection of its adversary's computers, absent evidence of discovery abuses.[2] This case should not break new ground, especially since the particular "targeted search protocol" proposed by Shareholder suffers from no fewer than three fatal defects: (1) it improperly targets information that is covered by a privilege; (2) Shareholder lacks a sufficient basis for asserting that Adler's computers contain discoverable information; and (3) the specific protocol proposed by Shareholder's expert is hopelessly overbroad.

1. **Shareholder's Protocol Implicates Adler's Right Against Self-Incrimination.**

Assuming *arguendo* that Shareholder could devise a protocol that would alleviate Adler's overbreadth, privacy and relevance concerns with regard to non-privileged information contained on his computers, Shareholder's current proposal still is defective because it makes no effort to segregate and shield from production those electronic records that might implicate Adler's rights against compelled self-incrimination.[3] To the contrary, Shareholder's proposed protocol

---

[2] The two Fourth Amendment cases cited by Shareholder are off-point because: (1) the Fourth Amendment applies to conduct by the government, and Shareholder is not the government; and (2) the standards for obtaining a warrant to search of a suspect's computer, with or without a "targeted" protocol, are much more stringent than the usual standards for making a discovery request under Fed. R. Civ. P. 26(b). Before even considering whether a particular protocol would "particularize" the desired search enough to comply with the Fourth Amendment, the government must convince a magistrate that there exists probable cause to believe the computer contains evidence relating to criminal activity. Thus, the owner of the computer has an additional level of protection from a privacy invasion when faced with a possible search warrant than he has when faced with a civil discovery request. Moreover, in neither United States v. Carey, 172 F.3d 1268 (10th Cir. 1999), nor In re 3817 W. West End, 321 F. Supp. 2d 953, 959 (N.D. Ill. 2004), did the court actually authorize a computer inspection aided by a search protocol. What the courts did in those cases was simply to reject inspections that were not aided by such protocols.

[3] Shareholder continues to dispute the applicability of Article 12 of the Massachusetts Declaration of Rights ("Article 12") to this case, claiming that where an action is based on federal question jurisdiction and also involves supplemental state claims, questions of privilege are governed by federal law. Pl.'s Opp. at p. 2, n.2 (citing Krolikowski v. University of Mass., 150 F. Supp. 2d. 246, 248 (D. Mass. 2001); Vanderbelt v. Town of Chilmark, 174 F.R.D. 225, 226-27 (D. Mass. 1997)). However, the cases on which Shareholder relies are not on point, because it is somewhat imprecise to refer to the protections embodied in the Fifth Amendment and Article 12 as "privileges" within the meaning of Fed. R. Evid. 501. See United States v. Hubbell, 523 U.S. 25, 34 (2000) (stating that the term "privilege ... is not an entirely accurate description of a person's constitutional protection against being 'compelled in any criminal case to be a witness against himself.'") Adler has found no cases where courts have held that when an individual is sued in federal court on any jurisdictional basis, that individual loses his state constitutional right against compelled self-incrimination. Adler continues to assert that Shareholder's subpoena for his computers implicates his rights under Article 12.

expressly targets such electronic records. Shareholder even acknowledges that the entire *raison d'être* of these inspections is to obtain evidence from Adler's computers relating to potentially criminal conduct. Shareholder does not dispute that Adler has a valid Fifth Amendment basis for refusing to produce such incriminatory materials directly to Shareholder. See Pl.'s Opp. at pp. 1, 2, 3, 8, 12. But Shareholder contends that nothing in the Fifth Amendment protects Adler from providing Shareholder with potential repositories of those materials and stepping aside so Shareholder can conduct its own search. Id. There are several flaws with Shareholder's logic.

As a starting point, Shareholder appears to slightly misunderstand how the Fifth Amendment affected Adler's obligations when responding to Shareholder's earlier document subpoena. Shareholder claims that Adler "has asserted his Fifth Amendment privilege in response to Shareholder's earlier document requests, and he therefore cannot be compelled to personally undertake a search for responsive documents." Pl.'s Opp. at p.1. But the Fifth Amendment impacted only Adler's obligation to identify and produce certain documents, not his duty to search for documents responsive to unobjectionable requests. Adler has never contended that the Fifth Amendment shields him from <u>searching</u> for documents responsive to Shareholder's requests. In fact, at his deposition, Adler testified that after receiving Shareholder's subpoena, "I reviewed my files, paper and electronic, and gave all I felt were responsive to my attorney." Pl.'s Opp. Ex. B, 97:17-19. Adler produced some documents in response to those Shareholder requests that were not objectionable, and will continue to do so on a rolling basis whenever he finds them, as long as those documents do not implicate one of his privileges.

More significantly, Shareholder's theory that Adler's Fifth Amendment concerns can be assuaged merely by having someone other than Adler, such as Shareholder or ICG, do the actual identification and production of incriminating documents would render meaningless the "act of

production" privilege described by the United States Supreme Court in Fisher v. United States, 425 U.S. 391 (1976), United States v. Doe, 465 U.S. 605 (1984), United States v. Hubbell, 530 U.S. 27 (2000). Under Shareholder's theory, the government could circumvent the act of production privilege by simply using its knowledge that a suspect or witness lives at a particular address or possesses common repositories of information, like a desk or a file cabinet, to demand access to that residence or those repositories. The act of production privilege described by the Supreme Court would have no value.

Shareholder's theory also ignores the testimonial nature of the act of producing Adler's computers to Shareholder for an "independent" search for responsive documents. By turning over the computers and electronic storage device, Adler effectively would be testifying that those four devices are the ones referenced in Shareholder's subpoenas. He, thus, would be making representations as to the authenticity of these computers, which would make it easier for the government to prove in a criminal prosecution that the devices and electronic records stored therein were in Adler's possession. This is the very sort of testimony that the Supreme Court held was protected by the act of production privilege in Hubbell. See 530 U.S. at 36 & n.19.

In light of the aforementioned flaws with Shareholder's reasoning, it is not surprising that Shareholder has failed to cite to a single case that supports its novel theory. There is simply no legal or logical basis for Shareholder's claim that Adler's Fifth Amendment rights are not implicated if he permits somebody else to identify and produce the documents responsive to Shareholder's requests.

2.  **Shareholder Has Not Established The Discoverability Of The Devices.**

Another reason why Shareholder's proposed "search protocol" is irrelevant to Adler's current motion is because Shareholder has not even established that the subpoenaed devices

contain discoverable information. In its brief, Shareholder stated that its proposed inspections were intended to discover "whether Shareholder's web addresses were accessed from Adler's computers, whether Adler used an anoymizer service and whether any of the computers' files were accessed, modified or deleted around the time of the recorded intrusions into Shareholder's Management system." Pl.'s Opp. at p.12. But Shareholder knows that Adler did not even possess two of the computers until January 2004, which was nearly two years after the last alleged successful intrusion into Shareholder's Management system.[4] Thus, Shareholder also knows that Adler could not have used either of these two computers to access Shareholder's Management system, with or without an anoymizer service. Similarly, Shareholder has no basis for believing that Adler's electronic storage device even has the capacity to access the Internet, let alone intrude Shareholder's Management system. That leaves only a <u>desktop</u> computer that Adler acquired from CCBN in 1998 or 1999, and according to the Massachusetts Attorney General's Office, "it is reasonable to assume that the computer [used for the alleged intrusions] is a <u>laptop</u>." Second Am. Compl., Ex. A at p.2, ¶ 5.

Shareholder's only basis for believing that the subpoenaed devices contain relevant information is that Adler asserted his Fifth Amendment right against to compelled self-incrimination when asked questions about them.[5] See Pl.'s Opp. at p. 4. This is not a strong enough basis for permitting Shareholder to employ such an intrusive discovery method. Furthermore, to the extent that Shareholder is seeking information other than evidence of "intrusions" into its database, such as copies of files obtained during those alleged intrusions,

---

[4]   Although Shareholder claims that "CCBN Intruders" continued their attempts to access Shareholder's Management system after April 15, 2002, such unsuccessful attempts could not have damaged Shareholder, so they are irrelevant to this litigation. Regardless, the last attempt allegedly occurred in October 2003, which was still three months before Adler received two of the computers that are subject to the subpoenas.

[5]   The aforementioned testimony of Mr. Parker and document produced by CCBN regarding an alleged "admission" by Adler of Shareholder's Management System give no indication that the alleged intrusions occurred from any of the four subpoenaed devices.

Shareholder should direct such inquiries to CCBN, not Adler. In fact, Shareholder has no reason to believe that Adler would have wanted any such files placed on the computers that he acquired upon his termination from CCBN in 2004 or that Adler would have copied such files to his electronic storage device. He was no longer an employee of CCBN, so he no longer would have had any use for such files, assuming he ever did.

In sum, Shareholder has failed to explain why it believes the subpoenaed devices contain discoverable information other than by pointing to Adler's invocations of his Fifth Amendment rights. This is not enough to satisfy Rule 26.

3.  **Shareholder's Proposed Search Protocol Is Fundamentally Flawed.**

Even if Shareholder's proposed search protocol did not suffer from the aforementioned defects, it still would be insufficient to address Adler's concerns of overbreadth and an invasion of his and his family's privacy. Indeed, a close examination of the proposed protocol reveals that it is nothing but a fishing expedition. For example, ICG proposes searching for all emails between Adler and any other current or former CCBN employee. In addition, ICG would also scan for terms that have no relation to any alleged intrusion of Shareholder's Management system. The email search would encompass all business emails on any topic whatsoever, the overwhelming majority of which would have absolutely nothing to do with this litigation. ICG also proposes searching for terms, many of which have common everyday meanings unrelated to this litigation.

For example, ICG proposes a search for the term "shareholder." It was CCBN's business to provide webcasting and website maintenance services for public companies, many of which were directed to shareholders of those companies. Thus, "shareholder" is a very common word in CCBN's business and would appear in countless electronic files. Other common terms that

would appear in countless files on Adler's computers, but which have nothing to do with this litigation, include "number one," "on-point," "best-in-class," "cost-basis," "transcription," "bartender," "significant," "since your last visit," and "financial fundamentals." See Pl.'s Opp., Ex. A at p. 4. ICG's proposed search also would undoubtedly sweep up large volumes of electronic files referring to Microsoft and Yahoo. Id. at p.5. Presumably, these will include documents created using Microsoft Word, email transmissions over Yahoo.com and a host of other files that potentially contain private information belonging to Adler, his family members, or their friends. Indeed, ICG admits that the use of its proposed search terms will generate many "false-positives." Id at p. 2, ¶ 4. ICG suggests that it could weed out these false-positives through visual inspection, id., but such an inspection by anyone other than Adler is by definition an invasion of his privacy.

ICG's proposed protocol does not even do a satisfactory job of segregating Adler's communications with his counsel. The proposed attorney-client search terms listed at the bottom of page two is far too short, as it does not include references to attorneys at Edwards & Angell other than Richard McCarthy, attorneys at Hale & Dorr, Todd & Weld, or other firms which have provided legal services to CCBN or Adler. ICG should never be permitted to inspect such files, even for the purpose of determining which file are privileged communications.

For all the foregoing reasons, Shareholder's proposed "targeted search protocol" is inadequate as a means for curing the subpoenas' overbreadth and intrusiveness problems. This Court should decline Shareholder's invitation to depart from the precedent set forth in the cases referenced in Adler's principal brief and make new law.

BOS_491402_1/MDUBNOFF

C.  **Adler Has Not Waived His Objections Under Rule 26**

Shareholder suggests that even if Adler's objections to the inspections based on overbreadth, relevance and privacy concerns would normally be valid, it would be "grossly unfair" to sustain those objections in this instance because Shareholder would not have needed to inspect Adler's computers if Adler had not asserted his Fifth Amendment privilege in response to Shareholder's earlier document subpoena and deposition questions. Pl..'s Opp. at pp. 2-3. In other words, Shareholder claims that since Adler asserted his Fifth Amendment privilege in response to earlier discovery – and Shareholder never contends that these assertions were improper – he should not be able to raise objections to the inspections based on Rule 26(b) because his overbreadth and privacy objections are self-inflicted. Id. Not surprisingly, Shareholder again makes this waiver argument without any citation to existing legal authority.

This is because there is simply no legal or logical basis for Shareholder's contention that a person in Adler's position must make a Hobson's Choice between waiving his Fifth Amendment rights and waiving his objections under Rule 26. To the contrary, if Shareholder's theory were valid, the "act of production" privilege could be circumvented in such a manner as to prevent a person in Adler's position from benefiting from either the privilege or the discovery limitations described in Rule 26(b). Consider, for example, the following hypothetical: shareholders of a company bring a class action lawsuit against the corporation and its CEO, alleging securities fraud. During discovery, the plaintiff class serves the CEO with document production requests to which he objects on Fifth Amendment grounds. The class plaintiff, which knows the defendant's residential addresses, then serves him with a request to inspect his house for responsive documents. When the individual objects on Rule 26(b) grounds, the Court overrules the objection, stating that the individual waived those rights when

he asserted his Fifth Amendment privilege with regard to the earlier document production request. The class plaintiff then searches the CEO's house, finds inculpatory documents, and turns them over to the United States Attorney's Office, which launches a criminal prosecution of the CEO based on those documents. The individual's assertion of his act of production privilege will have served no worthwhile purpose, and he will have waived his rights under Rule 26.

The hypothetical is not so far-fetched. If Shareholder is correct Adler cannot assert his Rule 26(b) objections to its subpoenas in light of his earlier Fifth Amendment assertions, then Adler has no basis for objecting to a search of his file cabinet, a personal office, or even, his house. This result would be, to use Shareholder's words, be "grossly unfair."

As stated earlier, to the extent that Shareholder is complaining that Adler has left it with no options other than to inspect his computers, Shareholder is clearly mistaken. If Shareholder would agree to stay this litigation until the criminal statutes of limitation have all expired, Adler would have to drop his Fifth Amendment objections to Shareholder's inquiries. It is Shareholder, not Adler, who is suffering from self-inflicted wounds with regard to discovery in this case.

D.  **Shareholder Misunderstands The "Foregone Conclusion" Doctrine**

As predicted in Adler's initial brief, Shareholder has taken the position that Adler cannot assert the "act of production" privilege under the Fifth Amendment with regard to Shareholder's subpoenas because the existence and location of the subpoenaed devices are foregone conclusions. See generally Pl.'s Opp. at pp. 10-15. More specifically, Shareholder states that because Adler testified at his deposition that he owns the devices in question and indicated where they are located, there is nothing "testimonial" about his production of the computers for

BOS_491402_1/MDUBNOFF

inspection. Shareholder's theory makes sense only if its intent is to inspect the exteriors of Adler's computers. That, of course, is not Shareholder's intent.

Under Shareholder's theory, Adler could not raise any Fifth Amendment objection to a request by Shareholder to search his house for responsive documents, even if there are inculpatory documents within the house, because Shareholder already knows where Adler lives. The only objections that Adler could raise, according to Shareholder, would be those based on Rule 26(b). See Pl.'s Opp. at p. 13 ("Like any discovery request, the request for subpoenaed items – whether they be documents or things – must only be relevant to the claims or defenses at issue. Fed. R. Civ. P. 26(b)."). When one couples this argument with Shareholder's other claim that an individual who validly assets his Fifth Amendment privilege in response to earlier document requests and deposition questions can no longer raise objections based on overbreadth, relevance and privacy, since such objections are "self-inflicted" it becomes clear that under Shareholder's logic it could actually search Adler's house right now.

Shareholder even acknowledges that under its logic, a request to inspect Adler's family library or file cabinet might offend Rule 26(b), but it would not offend the Fifth Amendment. Pl.'s Opp. at pp. 13-14. If Shareholder is correct, the "act of production" privilege is meaningless. In Hubbell, for example, once the defendant asserted his Fifth Amendment privilege in response to the subpoena from Independent Council Kenneth Starr, which called for him to produce eleven categories of documents before a Grand Jury, see 530 U.S. at 30-31, Starr could have circumvented this privilege assertion merely by asking to inspect the defendant's house and office. While the defendant might have been able to assert some grounds for objecting to those searches, according to Shareholder, the Fifth Amendment privilege would no longer be applicable. No constitutional right can be so easy to circumvent.

Fortunately, the foregone conclusion doctrine applies only with regard to the specific contents of a person's house, file cabinets, computers and other repositories, not to the repositories themselves. Only when a party or witness has disclosed the specific location of incriminating materials is that location a foregone conclusion under Fisher. Since Adler has not indicated where any inculpatory documents, if they exist, might be located, any production of those materials would amount to new testimony regarding their location.

Shareholder's attempt to compare its subpoena with a request to inspect a single black ledger in which a witness has voluntarily admitted keeping track of his financial transactions fails for several reasons. First and most obviously, the witness in Shareholder's black ledger example already had revealed the contents of that ledger. Adler has not revealed the contents of his computers or electronic storage device. Adler has not even indicated whether any of these devices contain information relating to Shareholder. Second, a black ledger is obviously much smaller than Adler's computer databases, so a search of the ledger would be much less intrusive. A more realistic comparison for Adler's computers, in terms of scope, would be the entire office of Shareholder's hypothetical witness, not just the "black ledger located on the desk in the office." Moreover, Shareholder is simply wrong when it claims that the production of the black ledger does not have any testimonial impact. Producing the ledger for inspection authenticates the ledger as the one referred to in the hypothetical subpoenas. Furthermore, to the extent the black ledger constitutes the hypothetical employee's private papers, the contents of that ledger still may be protected by the Fifth Amendment. See Section E, supra.

In sum, the fact that Shareholder knows that Adler possesses computers and that the computers are located either in Adler's custody or his attorney's custody does not mean that Adler has waived his Fifth Amendment rights with regard to the act of producing the electronic

BOS_491402_1/MDUBNOFF

files stored within those devices. Unlike in Shareholder's black ledger hypothetical, it is an open question whether Adler's computers contained any information relating to this litigation. Moreover, by turning over the computers to Shareholder, Adler would be authenticating the computers as his own. Such action clearly would be testimonial in the nature described by Hubbell. For all these reasons, the "act of production" privilege still applies with regard to the electronic files stored on Adler's computers.

E.   **The Fifth Amendment Protects Adler's Private Papers From Compelled Disclosure**

Contrary to Shareholder's contention, the current vitality of Boyd v. United States, 116 U.S. 616 (1886), is an open question. Contra, Pl.'s, Opp. At pp. 8-9. The First Circuit has repeatedly refused to resolve the question of whether the Fifth Amendment still protects an individual's private papers from disclosure, even after Fisher v. United States, 425 U.S. 391 (1984). See United States v. Feldman, 83 F.3d 9, 14 (1st Cir. 1996) (stating that "if the privilege against self-incrimination applies at all to the contents of private papers, it does so 'only in rare situations, where compelled disclosure would break the heart of our sense of privacy.'")(citation omitted); In re Steinberg, 837 F.2d 527, 530 (1st Cir. 1988) (same). At least one district court has concluded that the compelled production of a potentially incriminating personal statement, prepared in the privacy of a lawyer's office, "would break the heart of our sense of privacy," and would completely eviscerate the Fifth Amendment privilege. In re Grand Jury Proceedings (John Doe), 173 F.R.D. 336, 338 (D. Mass. 1997). "What little that is left of the Boyd Doctrine dictates that the witness Doe has a valid Fifth Amendment privilege in this case." Id. Thus, to the extent that Adler's computers and electronic storage device contain potentially [inculpatory] private papers, they are protected by Adler's rights under the Fifth Amendment.

BOS_491402_1/MDUBNOFF

Additionally, Adler's rights under Article 12, which provides that "[n]o subject shall ... be compelled to accuse, or furnish evidence against himself," are greater than those protected by the Fifth Amendment. Commonwealth v. Martin, 444 Mass. 213 (2005). "The adoption of these rights in the Constitution of the Commonwealth 'preceded and [are] independent of the Constitution of the United States.'" Id. (citations omitted). "Even in its narrowest construction, the right not to be compelled to 'furnish evidence' against oneself, found in art. 12, 'extends to all investigations of an inquisitorial nature, instituted for the purpose of discovering crime, or the perpetrators of crime, by putting suspected parties upon their examination and respect thereto, in any manner .... But it is not even thus limited.'" Id. "Under the Fifth Amendment only compelled communication that is *testimonial* and a potentially incriminated is precluded by the privilege against self-incrimination ... and under art. 12 compelled communication that furnishes evidence is precluded." Commonwealth v. Burgess, 426 Mass. 206, 209 (1997) (emphasis in original), quoted in Commonwealth v. Martin, 444 Mass. at 220. Indeed, the Massachusetts Supreme Judicial Court has stated that it remains "free to consider certain evidence, considered by the Supreme Court to be insufficiently testimonial for Fifth Amendment purposes, to be sufficiently testimonial for art. 12 purposes." Burgess, 426 Mass. at 219.

Adler has not been an employee of CCBN since early 2004. Therefore, any inculpatory document that he created or acquired after that date are protected by the "private papers" prong of the Fifth Amendment privilege, as well as Article 12. Moreover, according to the Attorney General's Office, many of the intrusions of Shareholder's management system have an IP address belonging to America Online, not CCBN, which suggest that any electronic information relating to those intrusions might also be covered by the "private papers" prong of the Fifth Amendment as well as Article 12.

## Conclusion

For all the foregoing reasons, this Court should grant Adler's motion for a protective order, or, alternatively, should quash the subpoenas to inspect his computers.

ROBERT ADLER,

By his attorneys,

*/s/ Mark B. Dubnoff/*

Richard J. McCarthy (BBO #328600)
Mark B. Dubnoff (BBO # 637212)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
Tel. (617) 439-4444
Fax (617) 439-4170

June 10, 2005

## CERTIFICATE OF SERVICE

I certify that on this 10th day of June, 2005, I caused a copy of the foregoing to be delivered to Thane Scott, Palmer & Dodge LLP, 111 Huntington Avenue at Prudential Center, Boston, MA 02199-7613, and Anthony S. Fiotto, Goodwin Procter LLP, Exchange Place, Boston, MA 02109 [by hand].

*/s/ Mark B. Dubnoff/*
Mark B. Dubnoff