UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-10535-PBS

DIRECT REPORT CORPORATION
d/b/a SHAREHOLDER.COM,
Plaintiff

V.

CCBN.com,
THE THOMSON CORPORATION,
JOHN DOES 1 THROUGH 5, and
JANE DOES 1 THROUGH 5,
Defendants

**ORDER ON**

**DEFENDANT ADLER'S MOTION FOR A
PROTECTIVE ORDER, OR, ALTERNATIVELY,
TO QUASH PLAINTIFF'S SUBPOENAS TO
INSPECT HIS PERSONAL COMPUTERS**
**(Docket # 183)**

ALEXANDER, M.J.

This case is currently before this Court for a ruling on defendant Robert

Adler's motion for a protective order precluding the inspection of his personal

computers by plaintiff Direct Report Corporation d/b/a Shareholder.com

("Shareholder").  For the reasons set forth more fully below, the motion is denied.

**Relevant Background**

As this Court has iterated in previous orders on discovery motions in this case, Shareholder and defendants CCBN.com ("CCBN") and the Thomson Company ("Thomson") (collectively, "the defendants") are competitors that enable publicly traded companies to communicate efficiently with investors. Shareholder initiated this lawsuit in March 2004, alleging that CCBN had intruded into Shareholder's internal communication and computer database systems ("Shareholder's systems"). Shareholder claims that in 2002 CCBN illegally accessed its electronic systems, obtained competitive data, and then used this information to lure clients away from Shareholder.

In March 2004, CCBN was acquired by Thomson and a number of CCBN employees left the company, including Robert Adler, CCBN's former President. Shareholder alleges that Mr. Adler was personally responsible for some of the intrusions into Shareholder's systems. During Shareholder's deposition of Mr. Adler, he testified about three computers and an electronic storage device. He stated that he possessed a desktop and a laptop computer that he acquired from CCBN upon his termination in early 2004, as well as an electronic storage device that he purchased separately. He also testified that he owns a home desktop computer that he acquired in 1998 or 1999 ("the home computer"). According to

2

Mr. Adler, he has retained electronic files that contain documents or data dating from [his] tenure at CCBN on these four devices.  Furthermore, he stated that he retains possession of the electronic devices, except for the home computer, which is now in the possession of his attorney.

In December 2004, prior to Mr. Adler's deposition, Shareholder served Mr. Adler with a subpoena that ordered him to produce certain documents including (1) documents concerning Mr. Adler's or the defendants' accessing of Shareholder's systems; (2) documents identifying the information or data that Mr. Adler or the defendants acquired by accessing Shareholder's systems; (3) documents identifying individuals employed by CCBN who accessed Shareholder's systems; (4) documents concerning Mr. Adler's or the defendants' use of data or information acquired from Shareholder's systems, including Shareholder's Management and Dialog systems; and (5) documents concerning any investigation conducted by the  defendants of their employees' accessing Shareholder's systems, including but not limited to any documents concerning Mr. Adler's response to Ed deCastro's June 2002 report of the defendants' misconduct or any investigation undertaken by Thomson prior to its acquisition of CCBN.[1]

---

[1] At the time, Ed deCastro was a member of Shareholder's Board of Directors.

Mr. Adler raised several objections to these requests, including that they sought information covered by Mr. Adler's right against self-incrimination under the Fifth Amendment of the United States Constitution and Article 12 of the Massachusetts Declaration of Rights.  At the same time, Mr. Adler produced all non-privileged documents that he could find that were responsive to Shareholder's requests, to the extent those requests were not objectionable.  During this process, Mr. Adler inspected at least two of his three personal computers and the electronic storage device to determine if they contained any responsive materials.[2]  Mr. Adler also provided Shareholder with a privilege log that described the documents he was withholding from production, claiming that the documents were attorney-client communications or protected by the work-product doctrine.  The log stated that although Mr. Adler neither admitted nor denied that he possessed documents responsive to the requests, any responsive documents that he might have relating to his personal access of Shareholder's systems were protected by his federal and state privileges against self-incrimination.  Shareholder responded that Mr. Adler must state whether he possessed any documents responsive to the requests, but Mr.

---

[2] It is not clear whether Mr. Adler searched the home computer that is now in the possession of his attorney.  He stated in his deposition that he turned it over to his attorney and did not indicate whether anyone had searched it for responsive information.  If that computer has not been inspected as the other devices have, such an inspection must take place.

Adler replied that his Fifth Amendment privilege protected him from having to reveal this information.

Then, on March 11, 2005, Shareholder served Mr. Adler with subpoenas that demanded inspection of his four electronic devices. (One of the subpoenas was directed to Mr. Adler's attorney because he is in possession of the home computer.) Mr. Adler objected to the subpoenas, asserting that he had already searched the devices for any non-privileged material and that Shareholder should not be allowed to search the two computers acquired in 2004 because they were acquired beyond the relevant time period of this lawsuit.[3] Mr. Adler also raised privacy concerns because the electronic devices contain communications by and about his family and other third parties that have no bearing on this litigation, as well as communications covered by the attorney-client privilege and the work-product doctrine. Finally, Mr. Adler re-asserted his right against self-incrimination under the Fifth Amendment and Article 12.

In April 2005, Shareholder responded that Mr. Adler had "surreptitiously accessed" its systems and that the computers and electronic storage device were

---

[3] While Mr. Adler did not acquire two of the computers until March 2004, he used them while employed by CCBN. CCBN claims that because it did not purchase these computers until January 2004, the computers cannot contain information relating to the alleged 2002 intrusions. Shareholder responds that the computers still constitute sources of relevant information because it would be unreasonable to believe that information previously contained on other computers was not moved to the new devices.

logical places to look for information concerning that access.  Shareholder also

asserted that the Fifth Amendment privilege does not apply to the subpoenas

because the existence and location of the devices is a "foregone conclusion" and

that the act of producing them would not, therefore, be incriminating.  To address

Mr. Adler's privacy concerns, Shareholder stated that it would retain a technology

specialist to develop a search protocol that would exclude information that had no

bearing on the litigation.

Initially, Mr. Adler appears to have been open to this approach and the

parties attempted to craft parameters for a computer search protocol that would be

acceptable to both sides.  Ultimately, however, the parties could not reach a

compromise, and  Mr. Adler then filed, on May 18, 2005, the extant motion for a

protective order or to quash the plaintiff's subpoenas to inspect his personal

computers.

**IV.    ANALYSIS**

**A.    Fifth Amendment Privilege Against Self-Incrimination**

The government's power to compel testimony during judicial proceedings is

a fundamental value of the American legal system.  Kastigar v. United States,

406 U.S. 441, 443 (1972).  There are exceptions, however, to this power, most

notably the Fifth Amendment privilege against compelled self-incrimination.  Id.

6

at 444. This privilege "can be asserted in any proceeding, civil or criminal . . . and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might so be used." Id. at 444-45. The Fifth Amendment, however, does not function as an absolute protection from revealing documents or information that may be incriminating. United States v. Hubbell, 530 U.S. 27, 35-36 (2000). If, for example, a person voluntarily prepares potentially incriminating documents, the information may have to be produced during legal proceedings because its creation was not "compelled" in any way. Id.

A separate constitutional protection exists in the context of producing documents in response to a subpoena that might constitute "compelled incriminating communications that are 'testimonial' in character." Id. at 34, 36. For a communication to be testimonial it must "explicitly or implicitly, relate a factual assertion or disclose information." Id. at 37 n. 19. The act of producing documents in response to a subpoena reveals certain information, such as the existence of the papers, the fact that they are in the producing party's possession, and that they are authentic. Id. at 36-37. Therefore, the "act of production" itself can turn a person into a "witness against himself," invoking the Fifth Amendment protection. Id.

In assessing whether a person can claim the Fifth Amendment's "act of production" privilege, a court must look to whether the information gained from the act was not otherwise known by the government or prosecuting party. Id. at 44-45; see also Fisher v. United States, 425 U.S. 391, 410-411 (1976). If the existence and personal possession of certain papers is a "foregone conclusion," then producing the documents does not carry a sufficiently testimonial aspect and is not covered by the Fifth Amendment. Fisher, 425 U.S. at 411. The determination of whether certain actions are "testimonial" cannot be dismissed with a "categorical answer[ ]; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." Fisher, 425 U.S. at 410.

In Hubbell, the United States brought a second prosecution against a criminal defendant arising out of an investigation into violations of federal law relating to the Whitewater Development Corporation. Hubbell, 530 U.S. at 30. The Government had entered into a plea bargain with the defendant, under which the defendant agreed to plead guilty to certain charges and to provide the Government with complete information regarding aspects of Whitewater. Id. While the defendant was incarcerated, the Government wanted to determine whether the defendant had provided all of the relevant information under the plea

8

agreement, and issued a subpoena for the production of eleven categories of documents before a grand jury.  Id. at 30-31.

During his grand jury appearance, the defendant invoked his Fifth Amendment privilege against self-incrimination and refused to state whether he had any documents that were responsive to the subpoena.  Id. at 31.  The prosecutor then obtained an order from the District Court that granted the defendant immunity under 18 U.S.C. § 6003(a) and enabled him to respond to the subpoena.  Id.  The defendant produced thousands of pages of documents and testified that he had provided all of the responsive material in his control, except for a few documents that were protected by the attorney-client and work-product privileges.  Id.  As a result of this document production, the Government brought a new set of charges against the defendant for which he was subsequently indicted. Id.

In determining whether to dismiss the indictment, on the basis that the prosecution's use of the responsive documents breached the defendants grant of immunity under the Fifth Amendment, the Supreme Court held that the contents of the documents were not constitutionally protected because the documents were prepared voluntarily prior to the issuance of the subpoena and were not, therefore, "compelled" in any way.  Id. at 35-36.  At the same time, however, the Court

9

recognized the possibility that the defendant's "act of production" itself might be covered by the Fifth Amendment privilege. <u>Id.</u> at 37. That is, whether the defendant's compilation and production of the documents could be categorized as a "testimonial" communication. <u>Id.</u> at 40-41.

If the existence of the documents was a "foregone conclusion" – if the Government had independent confirmation of the existence and authenticity of the documents procured by the defendant – then the compilation and production of the documents would not constitute a testimonial communication. <u>Id.</u> at 44-45. The Government did not, however, demonstrate any prior knowledge of the existence or location of the documents and did not gain its evidence from "legitimate sources [that were] 'wholly independent' of the testimonial aspect of [defendant's] immunized conduct." <u>Id.</u> at 45. The defendant's document production "was the first step in a chain of evidence that led to this [second] prosecution." <u>Id.</u> at 42. Because the Fifth Amendment privilege encompasses compelled testimony that leads to incriminating evidence, even if the testimony itself is not incriminating, the Government was not warranted in its use of the information. <u>Id.</u> at 37, 43.

**B.    Mr. Adler's Assertion of the Fifth Amendment Privilege**

The Fifth Amendment is applicable to Mr. Adler's circumstance because Shareholder has asserted that the defendants, including Mr. Adler, have violated federal statutes that contain criminal law provisions.  Furthermore, the Massachusetts State Police, in conjunction with the Massachusetts Attorney General, investigated CCBN for possible violations of state law alleged by Shareholder.  It would not be unreasonable to assume, therefore, that Shareholder might request renewed criminal proceedings against the defendants, including Mr. Adler, if Shareholder gains sufficient evidence of criminal activity.

The responsive documents and electronic records on Mr. Adler's four devices, if such exist, were created voluntarily by Mr. Adler and his business colleagues before the commencement of this litigation and prior to the issuing of any subpoenas.  Therefore, as in <u>Hubbell</u>, the documents and electronic records cannot be deemed as having been "compelled" in any way by Shareholder.  As a result, any potentially responsive documents or electronic records contained on Mr. Adler's four devices are not covered by the constitutional privilege against self-incrimination.  The Court must still determine, however, whether Mr. Adler's act of producing the four devices to Shareholder for inspection carries its own

11

testimonial value, thereby bringing it under the protection of the Fifth
Amendment.

Shareholder contends that the existence and location of the four electronic
devices is a "foregone conclusion" and that turning them over for inspection does
not require Mr. Adler to become a witness against himself nor provide
Shareholder with any new information.  Mr. Adler stated in his deposition that he
retains possession of the electronic storage device, as well as the desktop and
laptop acquired from CCBN in 2004, and that his attorney has the home computer.
This voluntary admission satisfies the requirement that producing the devices
would not compel Mr. Adler to communicate any previously unknown facts
regarding the existence, location, or authenticity of the devices, and would not,
therefore, carry any "testimonial" value.

The intent behind Shareholder's subpoenas, however, is not just to gain
possession of the computers and electronic storage device, but rather to obtain
documents and electronic records from the devices that may help to prove Mr.
Adler's alleged intrusions into Shareholder's systems.  Because the computers and
electronic storage device are simply repositories for information, their production
is the functional equivalent of producing the documents and data contained

therein. Accordingly, the key question is whether Mr. Adler's act of producing this type of information is covered under the Fifth Amendment privilege.

Shareholder contends that it has determined through discovery from the corporate defendants that Mr. Adler admitted to some of the intrusions into Shareholder's system. Mr. Adler, however, claims that he has made no such admission. From Shareholder's perspective, these alleged admissions, combined with the fact that Mr. Adler asserted his Fifth Amendment right when asked about his home Internet service providers and whether he used the computers to access Shareholder's systems, indicate that the devices are "potentially fertile sources of highly relevant information."

In Hubbell, the Court analyzed the Government's subpoena in assessing whether the defendant's production of documents amounted to a "testimonial" act. Hubbell, 530 U.S. 27, 41-42. The Court noted that there were "11 broadly worded subpoena categories" and that preparing materials in response to these wide-ranging requests would be the same as answering multiple interrogatories or questions at a deposition. Id. Furthermore, the "breadth of the description" within the subpoena demonstrated to the Court that the Government had to rely on the defendant to identify and produce certain sources of information. Id. at 41.

In comparison, Shareholder's subpoena, while it contains thirty-two categories, is targeted at a series of events, namely the CCBN intrusions into Shareholder's system, the use of Shareholder's proprietary information to lure away clients, the investigation by the Massachusetts Attorney General, and communications between CCBN and Thomson about the alleged incidents.  The discovery conducted to date, and what Shareholder has gleaned from that discovery, demonstrates that Mr. Adler's electronic devices may indeed contain information responsive to Shareholder's discovery requests and, further, that Mr. Adler's production of the devices for inspection will not be "testimonial" to the extent protected by the Fifth Amendment.

**Conclusion**

For these reasons, Mr. Adler's motion for a protective order or to quash Shareholder's subpoena to inspect his personal computers is DENIED.[4]

SO ORDERED.

1/4/2006                                    Joyce London Alexander

Date                                          United States Magistrate Judge

---

[4]Although the Court is denying Mr. Adler's motion, Shareholder's inspection of the computers and storage device must take place subject to a search protocol.  The Court is not aware to what extent, if any, Mr. Adler might be dissatisfied with the search protocol previously proposed by Shareholder.  Should the parties be unable to reach agreement as to the terms of the search protocol they may seek further guidance from the Court if necessary.

14